UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COMMONWEALTH OF MASSACHUSETTS *ex rel.* MYKEL POWELL and COMMONWEALTH SECOND AMENDMENT, INC.; and MYKEL POWELL, <br><br>Plaintiffs, <br><br>-against- <br><br>SGT. BRIAN HOLMES, in his Individual and Official Capacity as Sergeant of the Stoughton Police Department; JAMES O'CONNOR, in his Individual and Official Capacity as Deputy Chief of the Stoughton Police Department; DONNA M. McNAMARA, in her Individual and Official Capacity as Chief of the Stoughton Police Department; and VILLAGE GUN SHOP, INC. d/b/a VILLAGE VAULT, <br><br>Defendants. | UNDER SEAL <br><br> CIVIL ACTION NO. <br> 18-11336 FDS <br><br> COMPLAINT <br><br><br> JURY TRIAL DEMANDED |

Plaintiffs MYKEL POWELL and COMMONWEALTH SECOND AMENDMENT, INC., as and for their Complaint against Defendants BRIAN HOLMES; JAMES O'CONNOR; DONNA M. McNAMARA; and VILLAGE GUN SHOP, INC., allege as follows:

1. This case concerns the improper disposition of guns at the hands of police officials and a gun store in a manner that violates the Due Process Clause of the Fourteenth Amendment and the Massachusetts False Claims Act. The Defendants acted to conclusively deprive Plaintiff Mykel Powell of his property interests in two guns and some accessories without providing him notice or an opportunity to be heard. Furthermore, this deprivation occurred in the course of an ongoing agreement among the Defendants to improperly sell abandoned guns for their own benefit—instead of turning those guns over to State Police, for the benefit of the State Treasurer,

as the law mandates. Under the Defendants' agreement, the gun store provides the police officials with dollar-denominated "credits" in exchange for the gun and then sells them for its own benefit.

2. The Plaintiff Relators learned of this improper diversion of abandoned guns in the related matter *Powell v. Holmes, et al.*, no. 1:17-cv-10776-FDS (D. Mass. complaint filed May 3, 2017). Plaintiff Powell intends to voluntarily discontinue this action in short order. Plaintiff Relator Commonwealth Second Amendment, Inc. provided Plaintiff Powell with financial and technical assistance as to his claim that Defendants Sergeant Holmes and Deputy Chief O'Connor deprived him of property interests without providing due process of law. As a result of this assistance, the Plaintiff Relators learned of the factual bases for the False Claims Act (Count II) and civil conspiracy (Count III) claims asserted herein, alongside Plaintiff Powell's original claim for deprivation of due process (Count I).

3. The Plaintiff Relators file this Complaint under seal pursuant to M.G.L. c. 12, § 5C. The Plaintiff Relators will serve this Complaint on the Attorney General of Massachusetts pursuant to M.G.L. c. 12, § 5C(3).

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343 and 28 U.S.C. § 1367.

5. This Court has personal jurisdiction over each of the Defendants because, *inter alia*, they acted under the color of laws, policies, customs, and/or practices of the Commonwealth of Massachusetts and/or within the geographic confines of the Commonwealth of Massachusetts.

6. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1)-(2) because all defendants reside in the District of Massachusetts and because a substantial part of the events and omissions giving rise to the claims occurred in the District of Massachusetts.

7.      The Eastern Division is appropriate pursuant to LR 40.1(d)(1)(E) because the majority of parties reside in the Eastern Division and no other provision of LR 40.1(d)(1) designates another Division.

## PARTIES

8.      Plaintiff Mykel Powell is a citizen and resident of Rhode Island residing in the city and county of Providence.

9.      Plaintiff Commonwealth Second Amendment, Inc. ("Comm2A") is a non-profit corporation organized under Massachusetts law with its principal place of business in Natick, Middlesex County, Massachusetts.

10.     Defendant Brian Holmes is a member of the Police Department of Stoughton, Massachusetts who currently holds the rank of Sergeant.

11.     Defendant James O'Connor is a member of the Police Department of Stoughton, Massachusetts who currently holds the rank of Deputy Chief.

12.     Defendant Donna M. McNamara is a member of the Police Department of Stoughton, Massachusetts who currently holds the rank of Chief.

13.     Defendant Village Gun Shop, Inc. d/b/a Village Vault ("Village Vault") is a corporation organized under the laws of Massachusetts with its principal office in Northborough, Worcester County, Massachusetts.

## STATUTORY PROVISIONS GOVERNING THE SEIZURE, STORAGE AND SALE OF FIREARMS

14.     Massachusetts law generally prohibits individuals from possessing guns, ammunition, and certain ammunition magazines unless they hold appropriate licenses. A Firearms Identification Card ("FID") authorizes the possession of rifles and shotguns, while a License to Carry Firearms ("LTC") authorizes the possession of rifles, shotguns, handguns, and magazines holding more than 10 rounds of ammunition. See M.G.L. c. 140, § 129C; M.G.L. c. 269, § 10.

15. Police chiefs (or their designees) are the "licensing authorities" responsible for investigating FID and LTC applications and issuing or denying FIDs and LTCs, as well as for revoking or suspending FIDs and LTCs. See M.G.L. c. 140, §§ 121, 129B(4), 131(f).

16. If a licensing authority revokes, suspends or denies a FID or LTC, "the person whose application was so revoked, suspended or denied shall without delay deliver or surrender to the licensing authority where the person resides all firearms, rifles, shotguns and machine guns and ammunition which the person then possesses[.]" M.G.L. c. 140, § 129D.

17. After the person has delivered or surrendered their guns and ammunition, the licensing authority must permit the person to transfer the guns and ammunition to an eligible third party for a period of one year:

> The person or the person's legal representative shall have the right, at any time up to 1 year after the delivery or surrender, to transfer the firearms, rifles, shotguns and machine guns and ammunition to any licensed dealer or any other person legally permitted to purchase or take possession of the firearms, rifles, shotguns and machine guns and ammunition and, upon notification in writing by the purchaser or transferee and the former owner, the licensing authority shall within 10 days deliver the firearms, rifles, shotguns and machine guns and ammunition to the transferee or purchaser and the licensing authority shall observe due care in the receipt and holding of any such firearm, rifle, shotgun or machine gun and ammunition; provided, however, that the purchaser or transferee shall affirm in writing that the purchaser or transferee shall not in violation of section 129C transfer the firearms, rifles, shotguns or machine guns or ammunition to the former owner. The licensing authority shall at the time of delivery or surrender inform the person in writing of the authority's ability, within 1 year after delivery or surrender, to transfer the firearms, rifles, shotguns and machine guns and ammunition to any licensed dealer or other person legally permitted to purchase or take possession.

M.G.L. c. 140, § 129D.

18. After a year has passed, state law directs that guns and ammunition be auctioned by the Colonel of the State Police, with the proceeds remitted to the State Treasurer:

> Firearms, rifles, shotguns or machine guns and ammunition not disposed of after delivery or surrender according to the provisions of this section shall

-4-

be sold at public auction by the colonel of the state police to the highest bidding person legally permitted to purchase and possess said firearms, rifles, shotguns or machine guns and ammunition and the proceeds shall be remitted to the state treasurer.

M.G.L. c. 140, § 129D.

### THE SEIZURE OF PLAINTIFF MYKEL POWELL'S PROPERTY

19. On September 4, 2013, the Stoughton Police Department issued a LTC to Plaintiff Mykel Powell. The LTC had an expiration date of October 9, 2018. At the time, Plaintiff was a citizen and resident of Massachusetts.

20. On November 26, 2015, following an incident with a neighbor, the Stoughton Police Department arrested Plaintiff Mykel Powell and charged him with breaking and entering, assault and battery, and intimidation of a witness.

21. On November 29, 2015, the Stoughton Police Department suspended Plaintiff Powell's LTC light of his arrest and pending charges. On this same date, Defendant Sergeant Holmes came to Plaintiff Powell's home, provided him with a letter advising him of the suspension, and took custody of his LTC and the following items of property:

   a. Smith & Wesson model SD9 VE handgun, caliber 9mm Luger, serial no. HFN6346, with magazine;

   b. Bushmaster model XM15-E2S rifle, caliber 5.56x45mm NATO, serial no. BFI643914;

   c. Six (6) STANAG/AR15-pattern 30-round rifle magazines; and

   d. Blackhawk carrying bag (for rifle).

22. On March 4, 2016, Plaintiff Mykel Powell resolved the criminal charges against him by means of a Continuance Without Finding and a period of probation. On August 3, 2016, the Stoughton District Court dismissed the charges.

23. On August 5, 2015, Plaintiff Mykel Powell attempted to contact Defendant Sergeant Holmes to obtain information about obtaining the release of his guns and other property. By this point in time, Plaintiff had moved to his current residence in Providence, Rhode Island.

24. After repeated attempts at contact, Plaintiff Mykel Powell was able to speak with Defendant Sergeant Holmes on September 29, 2016. Defendant Sergeant Holmes told Plaintiff that he would not lift the suspension of Powell's LTC until he made "lifestyle changes," but that he would allow the release and transfer of the guns and other property to a licensed firearms dealer in Rhode Island if Plaintiff obtained an appropriate Rhode Island license.

25. On October 24, 2016, Plaintiff Mykel Powell obtained a Rhode Island Pistol/Revolver Safety Certificate from the Rhode Island Department of Environmental Management. This authorized Plaintiff to purchase pistols and revolvers per R.I. Gen. Stat. § 11-47-35. (In Rhode Island, no license is necessary to purchase or possess rifles or shotguns.)

26. Plaintiff Mykel Powell subsequently contacted Defendant Sergeant Holmes, who told him to contact Detective (now Deputy Chief) James O'Connor.

27. On November 14, 2016, Defendant Deputy Chief O'Connor advised Plaintiff Mykel Powell that his guns and other property had been sent out for "disposal" on October 3, 2016 and could not be returned to him.

### VILLAGE VAULT'S "CREDIT" ARRANGEMENT

28. Since at least 2013, Defendant Village Vault has had an arrangement with Defendants Deputy Chief O'Connor and Chief McNamara whereby Defendant Village Vault takes custody of guns and other items of related property after the one-year period mandated by § 129D has passed. Under this arrangement, Village Vault gives Deputy Chief O'Connor and Chief McNamara a "credit" in exchange for the guns and other items that it has taken. Each receipt lists

the make, model, and serial number of each gun that Village Vault is taking. At the bottom of each receipt an amount of "credit" is stated. This "credit" is stated as a monetary value.

29. After taking custody of guns and other items, Defendant Village Vault sells this property itself. Village Vault does not remit the proceeds of these sales to the State Treasurer.

30. Defendants Deputy Chief O'Connor and Chief McNamara use the "credit" that Defendant Village Vault has provided by contacting Village Vault to order equipment and other items for use by the Stoughton Police Department. Chief McNamara approves all proposed uses of the accumulated "credits."

31. On information and belief, Defendant Village Vault has this same basic arrangement with police departments and/or police department personnel throughout the Commonwealth of Massachusetts.

## VILLAGE VAULT'S ACTIONS HERE

32. On October 3, 2016, Defendant Village Vault took custody of 21 guns and other items that had been stored in the evidence room at the Stoughton Police Department, including the guns and property of Plaintiff Mykel Powell (detailed above).

33. Although the Stoughton Police Department had held the guns and other property of Plaintiff Mykel Powell for less than a year, the balance of the remaining guns had on information and belief been in the Police Department's custody for more than a year.

34. On October 3, 2016, when it was picking up the guns from the Police Department, Defendant Village Vault issued a receipt to "Stoughton P.D." that reflected a "credit" of $2,850.00 in exchange for the 21 guns. A true and correct copy of this receipt is attached as Exhibit 1.

35. Also on October 3, 2016, Defendant Village Vault took custody of

36. On or about November 28, 2016, Defendant Village Vault sold Plaintiff Mykel Powell's Smith & Wesson model SD9 VE handgun.

37. Defendant Village Vault has never sold Plaintiff Mykel Powell's Bushmaster model XM15-E2S rifle and continues to hold this gun in its custody.

## COUNT I
## 42 U.S.C. § 1983
Mykel Powell -v.- Sergeant Holmes, Deputy Chief O'Connor & Chief McNamara

38. The Fourteenth Amendment provides in pertinent part:

> No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV, § 1.

39. By exchanging the guns and other items of Plaintiff Mykel Powell for a "credit," the Defendants deprived Plaintiff of his property interests in the guns and other items.

40. Defendants Sergeant Holmes, Deputy Chief O'Connor and Chief McNamara did not provide Plaintiff Mykel Powell with any notice that his property interests in the guns and other items could be lost before they exchanged Plaintiff's property for "credits" on October 3, 2016.

41. Furthermore, Defendants Sergeant Holmes, Deputy Chief O'Connor, and Chief McNamara did not provide Plaintiff Mykel Powell with any opportunity to be heard before they exchanged Plaintiff's property for "credits" on October 3, 2016.

42. Plaintiff Mykel Powell has sustained damages for the value of the gun and other items that Defendant Village Vault sold and for loss of use. Furthermore, while Defendant Village Vault continues to hold Plaintiff's Bushmaster model XM15-E2S rifle in its custody, Defendant Deputy Chief O'Connor will not "approve" a transfer of this gun Village Vault to a third party designated by Plaintiff.

43. Plaintiff Mykel Powell does not have an adequate post-deprivation remedy because even though M.G.L. c. 140, § 129D directs police departments to notify gun owners of their ability

to transfer their property for a period of one year, the statute does not provide a right of action for a violation of its terms.

44.     Plaintiff Mykel Powell does not have an adequate post-deprivation remedy because Massachusetts law provides "a broad grant of immunity from claims originating from the 'lawful detention of any goods or merchandise by any law enforcement officer.'" *Vining v. Commonwealth*, 63 Mass. App. Ct. 690, 695 (App. Ct. 2005) (quoting M.G.L. c. 258, § 10(d)).

45.     Defendants have accordingly deprived Plaintiff Mykel Powell of his property without providing him due process of law.

## COUNT II
### False Claims Act, M.G.L. c. 12, §§ 5A-5O
Mykel Powell and Commonwealth Second Amendment ex rel. Commonwealth of Massachusetts –v.– Deputy Chief O'Connor, Chief McNamara & Village Vault

46.     Under M.G.L. c. 140, § 129D, Defendants Sergeant Holmes, Deputy Chief O'Connor and Chief McNamara all had the obligation to transmit any guns or other items that had been left in their custody for more than one year to the Colonel of the Massachusetts State Police for auction.

47.     Furthermore, under M.G.L. c. 140, § 129D all of the Defendants had an obligation to pay any proceeds from the sale of such guns or other items to the State Treasurer.

48.     In contravention of these obligations, Defendants Sergeant Holmes, Deputy Chief O'Connor and Chief McNamara have transmitted guns and other items of property to Defendant Village Vault, rather than to the Colonel of State Police.

49.     In contravention of these obligations, Defendants Sergeant Holmes, Deputy Chief O'Connor and Chief McNamara have retained the proceeds ("credits") derived from these transactions, rather than remitting said sums to the State Treasurer.

50. In contravention of these obligations, Defendant Village Vault has retained the proceeds of the guns and other items it sold, rather than remitting said sums to the State Treasurer.

51. Defendants are accordingly liable pursuant to M.G.L. c. 12, § 5B and related provisions of the Massachusetts False Claims Act.

## COUNT III
### Civil Conspiracy
Mykel Powell and Commonwealth Second Amendment ex rel. Commonwealth of Massachusetts –v.- Deputy Chief O'Connor, Chief McNamara & Village Vault

52. Defendants Deputy Chief O'Connor, Chief McNamara and Village Vault all knew that Village Vault was not the person designated by state law (*i.e.* the Colonel of the Massachusetts State Police) to auction guns and other related items pursuant M.G.L. c. 140, § 129D.

53. Defendants Deputy Chief O'Connor, Chief McNamara and Village Vault all knew that Deputy Chief O'Connor and Chief McNamara were not remitting the "credits" that Village Vault had provided in exchange for the guns and other related items to the State Treasurer, as required by M.G.L. c. 140, § 129D.

54. Defendants Deputy Chief O'Connor, Chief McNamara and Village Vault all knew that Village Vault was not remitting the proceeds it derived by selling the guns and other related items it received from Defendants Deputy Chief O'Connor and Chief McNamara to the State Treasurer, as required by M.G.L. c. 140, § 129D.

55. Notwithstanding their knowledge of the tortious acts identified above, Defendants Deputy Chief O'Connor, Chief McNamara and Village Vault all provided substantial assistance and encouragement to contribute to a common tortious plan. Specifically, without limitation, and subject to further discovery:

    a. Deputy Chief O'Connor agreed to turn over guns and other items to Village Vault in exchange for the provision of non-cash "credits";

b. Chief McNamara approved of the arrangement to exchange guns and other items for non-cash "credits" and was personally involved in making decisions about how to use the "credits" that Village Vault had provided; and

c. Village Vault agreed to take custody of the guns and other items from Deputy Chief O'Connor and to provide the non-cash "credits" in exchange for this property.

56. Defendants Deputy Chief O'Connor, Chief McNamara and Village Vault are accordingly jointly and severally liable for their tortious common plan to evade the requirements of M.G.L. c. 140, § 129D.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

i. Plaintiff Mykel Powell prays for a money damages judgment for the value of the property he lost, including for loss of use;

ii. Plaintiff Mykel Powell prays for an order directing Defendant Village Vault to transfer the Bushmaster XM15-E2S to an eligible transferee designated by him;

iii. Plaintiff Mykel Powell prays for a declaratory judgment that Defendants violated his right to due process of law when they agreed to and did transfer Plaintiff's guns and other property to Defendant Village Vault without providing notice or opportunity to be heard;

iv. Plaintiffs Mykel Powell and Commonwealth Second Amendment ex rel. Commonwealth of Massachusetts pray for a civil penalty and an award of treble damages pursuant to M.G.L. c. 12, § 5B;

v. all Plaintiffs pray for an award of attorney's fees and costs;

vi. all Plaintiffs pray for such other and further relief, including further and/or preliminary injunctive relief, as may be necessary to effectuate the Court's judgment or otherwise grant relief, or as the Court otherwise deems just and equitable; and

vii. all Plaintiffs demand a jury trial.

Dated: June 27, 2018

        Respectfully submitted,

        THE PLAINTIFFS,
        By their attorneys,

        <u>/s/ Margarita Smirnova</u>
        Margarita Smirnova, Esq.
        BBO No. 680429
        40 Wallingford Road, #567
        Brighton, MA 02135
        Telephone: (617) 875-9663
        margarita.smirnova@gmail.com

        David D. Jensen
        David Jensen PLLC
        111 John Street, Suite 420
        New York, New York 10038
        Tel: 212.380.6615
        Fax: 917.591.1318
        david@djensenpllc.com