# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COMMONWEALTH OF MASSACHUSETTS *ex rel.* MYKEL POWELL, COMMONWEALTH SECOND AMENDMENT, INC. and BRENT CARLTON; and MYKEL POWELL, | CIVIL ACTION NO. 1:18-cv-11336-FDS |
| Plaintiffs, | |
| -against- | **AMENDED COMPLAINT** |
| SGT. BRIAN HOLMES, in his Individual and Official Capacity as Sergeant of the Stoughton Police Department; JAMES O'CONNOR, in his Individual and Official Capacity as Deputy Chief of the Stoughton Police Department; DONNA M. McNAMARA, in her Individual and Official Capacity as Chief of the Stoughton Police Department; VILLAGE GUN SHOP, INC. d/b/a VILLAGE VAULT; and PETER DOWD, | JURY TRIAL DEMANDED |
| Defendants. | |

Plaintiffs MYKEL POWELL, COMMONWEALTH SECOND AMENDMENT, INC. and BRENT CARLTON, as and for their Amended Complaint against Defendants BRIAN HOLMES; JAMES O'CONNOR; DONNA M. McNAMARA; VILLAGE GUN SHOP, INC.; and PETER DOWD, allege as follows:

1.      This case concerns the improper disposition of guns at the hands of police officials and a gun store in a manner that violates the Due Process Clause of the Fourteenth Amendment, the Massachusetts False Claims Act and the RICO Act. The Defendants acted to deprive Plaintiff Mykel Powell of his property interests in two guns and some accessories without providing him notice or an opportunity to be heard. Furthermore, this deprivation occurred in the course of an ongoing agreement among the Defendants to improperly sell abandoned guns for their own

benefit—instead of turning those guns over to State Police, for the benefit of the State Treasurer, as the law mandates. Under the Defendants' agreement, the gun store and its owner provide the police officials with dollar-denominated "credits" in exchange for guns, and then sell those guns for their own benefit.

2.      The Plaintiff Relators learned of this improper diversion of abandoned guns in the related matter *Powell v. Holmes, et al.*, no. 1:17-cv-10776-FDS (D. Mass. complaint filed May 3, 2017). Since filing the instant action, Plaintiff Powell voluntarily discontinued the *Powell v. Holmes* action. Plaintiff Relator Commonwealth Second Amendment, Inc. provided Plaintiff Powell with financial and technical assistance as to his claim that Defendants Sergeant Holmes and Deputy Chief O'Connor deprived him of property interests without providing due process of law. As a result of this assistance, the Plaintiff Relators learned of the factual bases for the False Claims Act (Count II), civil conspiracy (Count III), and civil RICO (Count IV) claims asserted herein, alongside Plaintiff Powell's original claim for deprivation of due process (Count I).

3.      The Plaintiff Relators originally filed this Complaint under seal and served it upon the Attorney General of Massachusetts pursuant to M.G.L. c. 12, § 5C. The Attorney General has since declined to intervene.

<strong>JURISDICTION AND VENUE</strong>

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343 and 28 U.S.C. § 1367.

5.      This Court has personal jurisdiction over each of the Defendants because, *inter alia*, they acted under the color of laws, policies, customs, and/or practices of the Commonwealth of Massachusetts and/or within the geographic confines of the Commonwealth of Massachusetts.

6.       Venue is proper pursuant to 28 U.S.C. § 1391(b)(1)-(2) because all defendants reside in the District of Massachusetts and because a substantial part of the events and omissions giving rise to the claims occurred in the District of Massachusetts.

7.       The Eastern Division is appropriate pursuant to LR 40.1(d)(1)(E) because the majority of parties reside in the Eastern Division and no other provision of LR 40.1(d)(1) designates another Division.

**PARTIES**

8.       Plaintiff and Plaintiff Relator Mykel Powell is a citizen and resident of Rhode Island residing in the city and county of Providence.

9.       Plaintiff Relator Commonwealth Second Amendment, Inc. ("Comm2A") is a non-profit corporation organized under Massachusetts law with its principal place of business in Natick, Middlesex County, Massachusetts.

10.       Plaintiff Relator Brent Carlton is a citizen and resident of Massachusetts residing in the city of Boston and county of Suffolk. Plaintiff-Relator Carlton is the President of Comm2A and asserts claims in this action in the event and to the extent that Comm2A lacks standing to do so itself. Plaintiff Relator Carlton learned of the basis for the claims in this Complaint in his role as President of Comm2A.

11.       Defendant Brian Holmes is a member of the Police Department of Stoughton, Massachusetts who currently holds the rank of Sergeant.

12.       Defendant James O'Connor is a member of the Police Department of Stoughton, Massachusetts who currently holds the rank of Deputy Chief.

13.       Defendant Donna M. McNamara is a member of the Police Department of Stoughton, Massachusetts who currently holds the rank of Chief.

14.     Defendant Village Gun Shop, Inc. d/b/a Village Vault ("Village Vault") is a corporation organized under the laws of Massachusetts with its principal office in Northborough, Worcester County, Massachusetts.

15.     Defendant Peter Dowd is an individual believed to reside in Northborough, Worcester County, Massachusetts. Defendant Dowd is the whole or partial owner of Village Vault.

### STATUTORY PROVISIONS GOVERNING THE SEIZURE, STORAGE AND SALE OF FIREARMS

16.     Massachusetts law generally prohibits individuals from possessing guns, ammunition, and certain ammunition magazines unless they hold appropriate licenses. A Firearms Identification Card ("FID") authorizes the possession of rifles and shotguns, while a License to Carry Firearms ("LTC") authorizes the possession of rifles, shotguns, handguns and magazines holding more than 10 rounds of ammunition. *See* M.G.L. c. 140, § 129C; M.G.L. c. 269, § 10.

17.     Police chiefs (or their designees) are the "licensing authorities" responsible for investigating FID and LTC applications and issuing or denying FIDs and LTCs, as well as for revoking or suspending FIDs and LTCs. *See* M.G.L. c. 140, §§ 121, 129B(4), 131(f).

18.     If a licensing authority revokes, suspends or denies a FID or LTC, "the person whose application was so revoked, suspended or denied shall without delay deliver or surrender to the licensing authority where the person resides all firearms, rifles, shotguns and machine guns and ammunition which the person then possesses[.]" M.G.L. c. 140, § 129D; *see also Powell v. Holmes*, no. 1:17-cv-10776-FDS, 2018 U.S. Dist. LEXIS 16571, *7-8 (D. Mass. Feb. 1, 2018).

19.     After the person has delivered or surrendered their guns and ammunition, the licensing authority must permit the person to transfer the guns and ammunition to an eligible third party for a period of one year:

> The person or the person's legal representative shall have the right, at any time up to 1 year after the delivery or surrender, to transfer the firearms, rifles, shotguns and machine guns and ammunition to any licensed dealer or

any other person legally permitted to purchase or take possession of the firearms, rifles, shotguns and machine guns and ammunition and, upon notification in writing by the purchaser or transferee and the former owner, the licensing authority shall within 10 days deliver the firearms, rifles, shotguns and machine guns and ammunition to the transferee or purchaser and the licensing authority shall observe due care in the receipt and holding of any such firearm, rifle, shotgun or machine gun and ammunition; provided, however, that the purchaser or transferee shall affirm in writing that the purchaser or transferee shall not in violation of section 129C transfer the firearms, rifles, shotguns or machine guns or ammunition to the former owner. The licensing authority shall at the time of delivery or surrender inform the person in writing of the authority's ability, within 1 year after delivery or surrender, to transfer the firearms, rifles, shotguns and machine guns and ammunition to any licensed dealer or other person legally permitted to purchase or take possession.

M.G.L. c. 140, § 129D.

20.     After a year has passed, state law directs that guns and ammunition be auctioned by the Colonel of the State Police, with the proceeds remitted to the State Treasurer:

Firearms, rifles, shotguns or machine guns and ammunition not disposed of after delivery or surrender according to the provisions of this section shall be sold at public auction by the colonel of the state police to the highest bidding person legally permitted to purchase and possess said firearms, rifles, shotguns or machine guns and ammunition and the proceeds shall be remitted to the state treasurer.

M.G.L. c. 140, § 129D.

## THE SEIZURE OF PLAINTIFF MYKEL POWELL'S PROPERTY

21.     On September 4, 2013, the Stoughton Police Department issued a LTC to Plaintiff Mykel Powell. The LTC had an expiration date of October 9, 2018. At the time, Plaintiff was a citizen and resident of Massachusetts.

22.     On November 26, 2015, following an incident with a neighbor, the Stoughton Police Department arrested Plaintiff Mykel Powell and charged him with breaking and entering, assault and battery, and intimidation of a witness.

23.     On November 29, 2015, the Stoughton Police Department suspended Plaintiff Powell's LTC light of his arrest and pending charges. On this same date, Defendant Sergeant Holmes came to Plaintiff Powell's home, provided him with a letter advising him of the suspension, and took custody of his LTC and the following items of property:

      a.  Smith & Wesson model SD9 VE handgun, caliber 9mm Luger, serial no. HFN6346, with magazine;

      b.  Bushmaster model XM15-E2S rifle, caliber 5.56x45mm NATO, serial no. BFI643914;

      c.  Six (6) STANAG/AR15-pattern 30-round rifle magazines; and

      d.  Blackhawk carrying bag (for rifle).

24.     On March 4, 2016, Plaintiff Mykel Powell resolved the criminal charges against him by means of a Continuance Without Finding and a period of probation. On August 3, 2016, the Stoughton District Court dismissed the charges.

25.     On August 5, 2015, Plaintiff Mykel Powell attempted to contact Defendant Sergeant Holmes to obtain information about obtaining the release of his guns and other property. By this point in time, Plaintiff had moved to his current residence in Providence, Rhode Island.

26.     After repeated attempts at contact, Plaintiff Mykel Powell was able to speak with Defendant Sergeant Holmes on September 29, 2016. Defendant Sergeant Holmes told Plaintiff that he would not lift the suspension of Powell's LTC until he made "lifestyle changes," but that he would allow the release and transfer of the guns and other property to a licensed firearms dealer in Rhode Island if Plaintiff obtained an appropriate Rhode Island license.

27.     On October 24, 2016, Plaintiff Mykel Powell obtained a Rhode Island Pistol/Revolver Safety Certificate from the Rhode Island Department of Environmental Management. This authorized Plaintiff to purchase pistols and revolvers per R.I. Gen. Stat. § 11-47-35. (In Rhode Island, no license is necessary to purchase or possess rifles or shotguns.)

28.     Plaintiff Mykel Powell subsequently contacted Defendant Sergeant Holmes, who told him to contact Detective (now Deputy Chief) James O'Connor.

29.     On November 14, 2016, Defendant Deputy Chief O'Connor advised Plaintiff Mykel Powell that his guns and other property had been sent out for "disposal" and could not be returned to him.

30.     Powell subsequently learned that O'Connor had turned custody of the guns and other property over to Village Vault on October 3, 2016, and that Village Vault had sold the Smith & Wesson handgun on or about November 28, 2016, but retained custody of the Bushmaster rifle.

31.     On July 5, 2018, after Plaintiff Powell had discontinued the *Powell v. Holmes, et al.* action, O'Connor sent him a letter advising that the department "has re-acquired the above-referenced Bushmaster rifle" and "that, at no cost to you, you can sell or transfer the firearm to a person or entity with a valid firearm license (FID, LTC and/or FFL)."

### VILLAGE VAULT'S "CREDIT" ARRANGEMENT

32.     Since at least 2013, Defendants Dowd and Village Vault have had an arrangement with Defendants O'Connor and McNamara whereby Defendant Village Vault takes custody of guns and other items of related property after the one-year period mandated by § 129D has passed. Under this arrangement, Dowd and Village Vault give O'Connor and McNamara a "credit" in exchange for the guns and other items that it has taken. Each receipt lists the make, model, and serial number of each gun that Village Vault is taking. At the bottom of each receipt an amount of "credit" is stated. This "credit" is stated as a monetary value.

33.     After taking custody of guns and other items, Defendant Village Vault sells this property itself. Village Vault does not remit the proceeds of these sales to the State Treasurer.

34.     Defendants O'Connor and McNamara use the "credit" by contacting Village Vault to order equipment and other items for use by the Stoughton Police Department. McNamara approves all proposed uses of the accumulated "credits."

35.     On information and belief, Defendants Dowd and Village Vault have this same basic arrangement with police departments and/or police department personnel throughout the Commonwealth of Massachusetts.

### VILLAGE VAULT'S ACTIONS HERE

36.     On October 3, 2016, Defendant Village Vault took custody of 21 guns and other items that had been stored in the evidence room at the Stoughton Police Department, including the guns and property of Plaintiff Mykel Powell (detailed above).

37.     Although the Stoughton Police Department had held the guns and other property of Plaintiff Mykel Powell for less than a year, the balance of the remaining guns had on information and belief been in the Police Department's custody for more than a year.

38.     On October 3, 2016, when picking up the guns from the Police Department, Defendant Dowd issued a Village Vault receipt to "Stoughton P.D." that reflected a "credit" of $2,850.00 in exchange for the 21 guns. Exhibit 1 is a true and correct copy of this receipt.

39.     On or about November 28, 2016, Defendant Village Vault sold Plaintiff Mykel Powell's Smith & Wesson model SD9 VE handgun.

40.     Defendant Village Vault retained Plaintiff Mykel Powell's Bushmaster rifle for over a year, but apparently returned it to the custody of the Stoughton Police Department in approximately July 2018.

<u>COUNT I</u>
**42 U.S.C. § 1983**
*Mykel Powell –v.– Sergeant Holmes, Deputy Chief O'Connor & Chief McNamara*

41.     The Fourteenth Amendment provides in pertinent part:

> No state shall make or enforce any law which shall abridge the privileges
> or immunities of citizens of the United States; nor shall any state deprive
> any person of life, liberty, or property, without due process of law; nor
> deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV, § 1.

42.     By exchanging the guns and other items of Plaintiff Mykel Powell for a "credit,"
the Defendants deprived Plaintiff of his property interests in the guns and other items.

43.     Defendants Holmes, O'Connor and McNamara did not provide Plaintiff Powell
with any notice that his property interests in the guns and other items could be lost before they
exchanged Plaintiff's property for "credit" on October 3, 2016.

44.     Furthermore, Defendants Holmes, O'Connor, and McNamara did not provide
Plaintiff Powell with any opportunity to be heard before they exchanged Plaintiff's property for
"credit" on October 3, 2016.

45.     Plaintiff Powell has sustained damages for the value of the Smith & Wesson
handgun and other property that Defendant Village Vault sold, for loss of use of the guns and other
property, and for any damage that the Bushmaster rifle sustained.

46.     Plaintiff Powell does not have an adequate post-deprivation remedy because even
though M.G.L. c. 140, § 129D directs police departments to notify gun owners of their ability to
transfer their property for a period of one year, the statute does not provide a right of action for a
violation of its terms.

47.     Plaintiff Powell does not have an adequate post-deprivation remedy because
Massachusetts law provides "a broad grant of immunity from claims originating from the 'lawful

detention of any goods or merchandise by any law enforcement officer.'" *Vining v. Commonwealth*, 63 Mass. App. Ct. 690, 695 (App. Ct. 2005) (quoting M.G.L. c. 258, § 10(d)).

48.     Defendants have accordingly deprived Plaintiff Mykel Powell of his property without providing him due process of law.

**COUNT II**
**False Claims Act, M.G.L. c. 12, §§ 5A-5O**
*Mykel Powell, Commonwealth Second Amendment & Brent Carlton ex rel. Commonwealth of Massachusetts –v.– Deputy Chief O'Connor, Chief McNamara & Village Vault*

49.     Under M.G.L. c. 140, § 129D, Defendants O'Connor and McNamara had the obligation to transmit any guns or other items that had been left in their custody for more than one year to the Colonel of the Massachusetts State Police for auction.

50.     Furthermore, under M.G.L. c. 140, § 129D the Defendants had an obligation to pay any proceeds from the sale of such guns or other items to the State Treasurer.

51.     In contravention of these obligations, Defendants O'Connor and McNamara have transmitted guns and other items of property to Defendant Village Vault, rather than to the Colonel of State Police.

52.     In contravention of these obligations, Defendants O'Connor and McNamara have retained the proceeds ("credits") derived from these transactions, rather than remitting said sums to the State Treasurer.

53.     In contravention of these obligations, Defendant Village Vault has retained the proceeds of the guns and other items it sold, rather than remitting said sums to the State Treasurer.

54.     Defendants are accordingly liable pursuant to M.G.L. c. 12, § 5B and related provisions of the Massachusetts False Claims Act.

**COUNT III**
**Civil Conspiracy**
*Mykel Powell, Commonwealth Second Amendment & Brent Carlton ex rel. Commonwealth of Massachusetts –v.– Deputy Chief O'Connor, Chief McNamara & Village Vault*

55.　Defendants O'Connor, McNamara and Village Vault all knew that Village Vault was not the person designated by state law (*i.e.* the Colonel of the Massachusetts State Police) to auction guns and other related items pursuant M.G.L. c. 140, § 129D.

56.　Defendants O'Connor, McNamara and Village Vault all knew that O'Connor and McNamara were not remitting the "credits" that Village Vault had provided in exchange for the guns and other related items to the State Treasurer, as required by M.G.L. c. 140, § 129D.

57.　Defendants O'Connor, McNamara and Village Vault all knew that Village Vault was not remitting the proceeds it derived by selling the guns and other items it received from Defendants O'Connor and McNamara to the State Treasurer, as required by M.G.L. c. 140, § 129D.

58.　Notwithstanding their knowledge of these tortious acts, Defendants O'Connor, McNamara and Village Vault all provided substantial assistance and encouragement to contribute to a common tortious plan. Specifically, without limitation and subject to further discovery:

a.　Deputy Chief O'Connor agreed to turn over guns and other items to Village Vault in exchange for the provision of non-cash "credits";

b.　Chief McNamara approved of the arrangement to exchange guns and other items for non-cash "credits" and was personally involved in making decisions about how to use the "credits" that Village Vault had provided; and

c.　Village Vault agreed to take custody of the guns and other items from Deputy Chief O'Connor and to provide the non-cash "credits" in exchange for this property.

59.　Defendants O'Connor, McNamara and Village Vault are accordingly jointly and severally liable for their tortious common plan to evade the requirements of M.G.L. c. 140, § 129D.

**COUNT IV**
**Civil RICO, 18 U.S.C. § 1964(c)**
*Mykel Powell –v.– Peter Dowd*

60.     The RICO Act provides that it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity[.]" 18 U.S.C. § 1962(c). The RICO Act provides a civil cause of action in favor of "[a]ny person injured in his business or property by reason of a violation of section 1962[.]" 18 U.S.C. § 1964(c). The four basic elements of the cause of action are: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).

Conduct

61.     Defendant Peter Dowd is employed by and associated with Village Vault. On information and belief, Defendant Dowd is the owner-employee of Village Vault.

62.     Defendant Dowd is directly involved in the management and operation of Village Vault. Among other things, Defendant Dowd was personally and directly involved in the transfer of guns and other items from the Stoughton Police Department to Village Vault on October 3, 2016, including the provision of "credits" to the Police Department and its officers alleged above. On information and belief, Defendant Dowd has been personally and directly involved in transfers of guns and other items from the Stoughton Police Department to Village Vault on dates both before and after October 3, 2016, including the provision of "credits" to the Police Department and its officers on account of those transfers, and he has also been personally and directly involved in making and carrying out the same arrangement with personnel at other police departments.

Enterprise

63.     Village Vault is an "enterprise" as defined in 18 U.S.C. § 1961(4) because it is a "corporation, association, or other legal entity."

64.     Village Vault is engaged in and/or conducts activities that affect interstate commerce. On information and belief, and without limitation:

   a. Village Vault holds a federal license to engage in the business of dealing in firearms pursuant to 18 U.S.C. § 923;

   b. Most or all of the guns that Village Vault has obtained from the Stoughton Police Department have in fact traveled in interstate commerce;

   c. Village Vault sells guns that it has obtained from the Stoughton Police Department in interstate commerce by (*inter alia*) auctioning the guns in both online auctions and at auction houses located in other states; and

   d. Village Vault ships the guns to purchasers that are often located outside the Commonwealth of Massachusetts, including the Smith & Wesson handgun of Plaintiff Powell.

Racketeering Activity

65.     Either the Commonwealth or Plaintiff Powell held actual or beneficial title to the guns and other property that the Stoughton Police Department defendants transferred to Defendant Dowd and Village Vault. Specifically, the Commonwealth held beneficial title to the guns that had not been "disposed of" within one year pursuant to M.G.L. c. 140, § 129D, while Plaintiff Powell continued to hold title to his guns and other property. Pursuant to M.G.L. c. 140, § 129D, the Stoughton Police Department Defendants were obligated to "transfer" the guns of Plaintiff Powell "to any licensed dealer or any other person legally permitted to purchase or take possession of" them "at any time up to 1 year after the delivery or surrender," as directed by Plaintiff Powell, and they were obligated to turn over possession of the other guns to "the colonel of the state police" for sale at auction with "the proceeds . . . remitted to the state treasurer."

66.     By providing "credits" in exchange for the transfer of property that the Stoughton Police Department Defendants were legally obligated to turn over to others (either the State Police or the designees provided by the individual property owners), Defendant Dowd and Village Vault paid, and the Stoughton Police Department officials accepted, "anything of value" in violation of M.G.L. c. 268A, § 2(a)-(b). The "credits" were given and accepted with the intent of influencing the actions of the Stoughton Police Department officials and/or inducing them to act in violation of their official duties.

67.     Alternatively, the payment and acceptance of the "credits" in exchange for the transfer of property that the Stoughton Police Department Defendants were legally obligated to turn over to others constitutes a gift and acceptance of "anything of substantial value" in a manner "otherwise than as provided by law," in violation of, M.G.L. c. 268A, § 3(a)-(b). The "credits" were given and accepted for or because of, or with the intent of influencing, the official actions of the Stoughton Police Department Defendants.

68.     Violations of M.G.L. c. 268A, § 2 and M.G.L. c. 268A, § 3 are acts of "racketeering activity" within the meaning of 18 U.S.C. § 1961(1). *See United States v. Devin*, 918 F.2d 280, 285 (1st Cir. 1990).

Pattern

69.     Defendant Dowd and Village Vault have an established business practice of giving dollar-denominated "credits" in exchange for, and/or in order to influence, police officials to transfer guns to Village Vault notwithstanding those officials' obligation to transfer those guns to others—specifically, to the State Police or to the person the original owner has designated. This business practice is a "pattern of racketeering activity" within the meaning of 18 U.S.C. 1962(c).

70.     There is a "pattern of racketeering activity" as defined in 18 U.S.C. § 1961(5) because Defendant Dowd has committed at least two acts of racketeering activity within 10 years of the last act, and almost certainly more.

71.     <u>First Predicate Act.</u> On October 3, 2016 Defendant Dowd and Village Vault took custody of 21 guns from the evidence room of the Stoughton Police Department, located at 26 Rose Street in Stoughton, Massachusetts. As otherwise alleged in this Complaint, Defendant Dowd and Village Vault provided a dollar-denominated "credit" in the amount of $2,850, reflected on a receipt (Exhibit 1) that he issued and provided to O'Connor. Defendant Dowd gave this "credit," and O'Connor and McNamara accepted and used this "credit," because of or with the intent of influencing their official actions and/or inducing them to act in violation of their official duties.

72.     <u>Additional Predicate Acts—Stoughton.</u> Since at least 2013 and continuing to the present, Defendant Dowd and Village Vault have taken custody of guns and other items from the evidence room of the Stoughton Police Department, located at 26 Rose Street in Stoughton, Massachusetts, on multiple occasions (other than October 3, 2016). This has included guns that the Stoughton Police Department had a legal obligation to turn over to others—either the Massachusetts State Police or the person designated by the original owner. Defendant Dowd and Village Vault have provided the same terms as they provided on October 3, 2016, including a "credit" on a receipt issued to O'Connor, which O'Connor and McNamara have then used to purchase equipment and other items. The dates of these transfers, the specific guns and other property transferred, and the amounts of "credits" provided are matters within the knowledge of Defendant Dowd, O'Connor, McNamara and others, but not Plaintiffs. Plaintiffs can identify these details in discovery. *See Rotella v. Wood*, 528 U.S. 549, 560 (2000) (citing *Corley v. Rosewood Care Center, Inc. of Peoria*, 142 F.3d 1041, 1050-51 (7th Cir. 1998)). In these other transactions,

Defendant Dowd gave "credits," and O'Connor and McNamara accepted and used these "credits," because of or with the intent of influencing their official actions and/or inducing them to act in violation of their official duties.

73.    <u>Additional Predicate Acts—Other Municipalities.</u> Defendant Dowd and Village Vault have likewise taken custody of guns from other police departments in Massachusetts on multiple occasions, including guns that the police departments had the legal obligation to transfer to others. In doing so, Defendant Dowd has likewise given police officials dollar-denominated "credits" they can use to purchase equipment and other items. Defendant Dowd has testified that he performs the same services on the same terms for multiple other law enforcement agencies in Massachusetts, including but not limited to the Springfield Police Department. The dates of these transfers, the specific guns and other property transferred, and the amounts of "credits" provided are matters within the knowledge of Defendant Dowd, the involved police officials and others, but not Plaintiffs. Plaintiffs can identify these details in discovery. Again, Defendant Dowd gave "credits," and the police official(s) accepted these "credits," because of or with the intent of influencing their official actions and/or inducing them to act in violation of their official duties.

74.    The acts of racketeering described in this Complaint are related to each other so as to form a part of the same pattern of racketeering because they have the same purposes, results, participants, victims and methods. In all instances, Defendant Dowd is using Village Vault to provide "credits" to obtain custody of guns that should by law be transferred to others, and Defendant Dowd and Village Vault are doing so at the expense of the true beneficial owners (*i.e.* the Commonwealth or the original owner).

75.    The acts of racketeering described in this Complaint have closed-end continuity because Defendant Dowd has, on information and belief, provided "credits" to multiple police

officials to obtain the transfer of guns that beneficially belong to others on multiple occasions from at least 2013 to the present date. Further specific details are within the knowledge of Defendant Dowd and the involved police officials.

76.     The acts of racketeering described in this Complaint have open-end continuity because they amount to or pose a threat of continued criminal activity. By their nature, these acts of racketeering project into the future because they represent Defendant Dowd's and Village Vault's regular way of doing business.

Causation & Damages

77.     The act of racketeering that occurred on October 3, 2016 proximately and in-fact caused the loss of the guns and other items owned by Plaintiff Powell. But for the payment of the "credit," O'Connor would not have transferred the guns and other property of Plaintiff Powell to Village Vault, and thus, the guns and other property would have still been available for transfer in accordance with Plaintiff Powell's direction when he attempted to do just that.

78.     As alleged previously in this Complaint, Plaintiff suffered damages consisting of the fair market value of his Smith & Wesson handgun and other property, loss of use and damage to the Bushmaster rifle.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief:

    i.    Plaintiff Mykel Powell prays for a money damages judgment for the value of the property he lost, for loss of use and for property damage;

    ii.    Plaintiff Mykel Powell prays for a declaratory judgment that Defendants violated his right to due process of law when they agreed to and did transfer Plaintiff's guns and other property to Defendant Village Vault without providing notice or opportunity to be heard;

    iii.    Plaintiff Relators Mykel Powell, Commonwealth Second Amendment and Brent Carlton ex rel. Commonwealth of Massachusetts pray for a civil penalty and an award of treble damages pursuant to M.G.L. c. 12, § 5B;

iv.     Plaintiff Powell prays for treble damages pursuant to 18 U.S.C. § 1964(c);

v.      all Plaintiffs pray for an award of attorney's fees and costs;

vi.     all Plaintiffs pray for such other and further relief, including further and/or preliminary injunctive relief, as may be necessary to effectuate the Court's judgment or otherwise grant relief, or as the Court otherwise deems just and equitable; and

vii.    all Plaintiffs demand a jury trial.

Dated: February 25, 2019

Respectfully submitted,

THE PLAINTIFFS,
By their attorneys,


/s/ Margarita Smirnova
Margarita Smirnova, Esq.
BBO No. 680429
40 Wallingford Road, #567
Brighton, MA 02135
Telephone: (617) 875-9663
margarita.smirnova@gmail.com

David D. Jensen
David Jensen PLLC
111 John Street, Suite 420
New York, New York 10038
Tel:  212.380.6615
Fax:  917.591.1318
david@djensenpllc.com


**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)

and paper copies will be sent to those indicated as non-registered participants on Feb. 25, 2019.

/s/ Margarita Smirnova
Margarita Smirnova