# EXHIBIT 1

Case 1:18-cv-11336-FDS   Document 49-1   Filed 04/23/20   Page 2 of 10
Case 1:18-cv-11336-FDS   Document 46-1   Filed 04/09/20   Page 1 of 9

1

```
 1                  UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
 2

 3    COMMONWEALTH OF MASSACHUSETTS     )
      ex rel. MYKEL POWELL and          )
 4    COMMONWEALTH SECOND AMENDMENT,    ) Civil Action
      INC.; and MYKEL POWELL,           )
 5                                      ) No. 18-11336-FDS
                    Plaintiffs          )
 6                                      )
      vs.                               )
 7                                      )
      SGT. BRIAN HOLMES, in his         )
 8    Individual and Official           )
      Capacity as Sergeant of the       )
 9    Stoughton Police Department;      )
      JAMES O'CONNOR, in his            )
10    Individual and Official           )
      Capacity as Deputy Chiefofthe     )
11    Stoughton Police Department;      )
      DONNA M. McNAMARA, in her         )
12    Individual and Official           )
      Capacity as Chief of the          )
13    Stoughton Police Department;      )
      and VILLAGE GUN SHOP, INC.        )
14    D/b/a VILLAGE VAULT,              )
                    Defendants          )
15

16    BEFORE:  CHIEF JUDGE F. DENNIS SAYLOR, IV

17
             John Joseph Moakley United States Courthouse
18                      Courtroom No. 10
                        1 Courthouse Way
19                      Boston, MA 02210

20
                       STATUS CONFERENCE
21
                         March 5, 2020
22                         2:50 p.m.

23              Valerie A. O'Hara, FCRR, RPR
                    Official Court Reporter
24       John Joseph Moakley United States Courthouse
                        1 Courthouse Way
25                      Boston, MA 02210
                   E-mail: vaohara@gmail.com
```

Case 1:18-cv-11336-FDS Document 46-1 Filed 04/23/20 Page 3 of 10
Case 1:18-cv-11336-FDS Document 40-1 Filed 04/09/20 Page 2 of 9

2

```
 1   APPEARANCES:

 2   For The Plaintiffs:

 3        David Jensen PLLC, by DAVID D. JENSEN, ESQ.,
     111 John Street, Suite 420, New York, New York 10038;
 4
          Margarita Smirnova, Attorney at Law,
 5   7 Greenbriar Dr, Unit 109, North Reading, Massachusetts 01864;

 6   VIA TELEPHONE:

 7   For the Defendants:

 8        Brody, Hardoon, Perkins & Kesten, by THOMAS R. DONOHUE,
     ESQ., One Exeter Plaza, Boston, Massachusetts 02116;
 9
          Reardon, Joyce & Akerson, P.C., by ANDREW J. GAMBACCINI,
10   ESQ., 4 Lancaster Terrace, Worcester, Massachusetts 01609.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Case 1:18-cv-11336-FDS   Document 46-1   Filed 04/23/20   Page 4 of 10
Case 1:18-cv-11336-FDS   Document 40-1   Filed 04/09/20   Page 3 of 9

3

|  |  |
|---|---|
| 1 | PROCEEDINGS |
| 2 | THE CLERK: Thank you. You may be seated. Court is |
| 3 | now in session in the matter of Powell vs. Holmes, et al., |
| 4 | Civil Action 18-11336. |
| 5 | Would counsel please identify themselves for the |
| 6 | record, beginning with counsel on the phone. |
| 7 | MR. DONOHUE: Tom Donohue for the defendants, |
| 8 | Brian Holmes, James O'Connor and Donna McNamara. |
| 9 | Good afternoon. |
| 02:44PM 10 | THE COURT: Good afternoon. |
| 11 | MR. GAMBACCINI: Good afternoon, your Honor, |
| 12 | Andy Gambaccini for Defendants Peter Dowd and Village Vault. |
| 13 | THE COURT: Good afternoon. |
| 14 | MR. JENSEN: And, your Honor, David Jensen for the |
| 15 | plaintiffs. |
| 16 | MS. SMIRNOVA: Margarita Smirnova for the plaintiffs. |
| 17 | THE COURT: All right. Good afternoon. This is a |
| 18 | status conference in this case. Mr. Donohue and Mr. Gambaccini |
| 19 | are appearing by telephone. I'll ask the lawyers present in |
| 02:44PM 20 | the courtroom to please speak into the mic. to make sure that |
| 21 | they can hear you. |
| 22 | I have plaintiff's motion to amend the schedule. |
| 23 | Mr. Jensen, do you want to be heard on that? |
| 24 | MR. JENSEN: Your Honor, I apologize for our oversight |
| 25 | on this. We were working off of what our understanding of the |

Case 1:18-cv-11336-FDS Document 46-1 Filed 04/23/20 Page 5 of 10
Case 1:18-cv-11336-FDS Document 40-1 Filed 04/09/20 Page 4 of 9

4

1    schedule was, and, regardless, based on the dynamics of this
2    case or the needs of this case, I don't really see much of a
3    realistic choice aside from having written discovery take place
4    during a longer period.
5             THE COURT:  I guess I'm not sure, first off, what was
6    unclear about the order, and, second, what discovery needs to
7    occur in this case.  I mean, I'm somewhat familiar with it.
8    This is not a highly complex matter I don't think.  Well, I'll
9    let you respond to that.
02:45PM 10             MR. JENSEN:  Well, the No. 1 thing, frankly, is the
11    log books showing the firearms that went through this business
12    because that's pretty essential to quantifying the amount of
13    damages as well as identifying other parties who ought to be
14    brought into this case.
15             There are some other matters that were outstanding of
16    those requests to business records, police records that would
17    go to the same thing, but --
18             THE COURT:  And what was unclear about the order that
19    the written discovery shall be served by a particular date?
02:46PM 20             MR. JENSEN:  Your Honor, I do apologize, but I read
21    that -- I read it quickly, but I read it as being initial
22    discovery requests would be sent out by that date for the
23    purpose of getting the case moving, but that wouldn't be a
24    limitation on serving discovery later on.
25             THE COURT:  All right.  Who wants to respond?

Case 1:18-cv-11336-FDS Document 46-1 Filed 04/23/20 Page 6 of 10
Case 1:18-cv-11336-FDS Document 40-1 Filed 04/09/20 Page 5 of 9

5

1   Mr. Donohue.
2           MR. DONOHUE:  Thank you, your Honor.  The plaintiffs
3   missed the Court's deadline, the deadline was clear, and they
4   haven't established good cause to change the Court's order.  I
5   believe we were in a position that we could not respond to
6   discovery that was served after the Court's order.
7           The plaintiff certainly knew about the Court's order
8   because they served timely discovery, and this is not the type
9   of situation where they learned something through that first
10  round of paper discovery and then are following up on that.
11  They just seem to have missed the deadline and haven't
12  established any good cause for the Court to amend its order.
13          THE COURT:  Mr. Gambaccini, do you want to be heard?
14          MR. GAMBACCINI:  Nothing to add, your Honor.
15          THE COURT:  All right.  Well, it's not at all clear to
16  me that good cause has been shown to amend the discovery order,
17  but here's what I am going to do.  I'm going to cut the baby in
18  half, so to speak, and permit the late discovery requests that
19  ask for the acquisition and disposition of the log book of
20  Village Vault, and I'm going to leave it at that.
21          I'm going to otherwise deny the motion to amend the
22  schedule.  It's possible that some deposition or further
23  development leads to some second wave or need for a second wave
24  request, but I think I'd be within my rights to deny it
25  altogether.  On the other hand, the prejudice is not great

Case 1:18-cv-11336-FDS Document 40-1 Filed 04/03/20 Page 6 of 9

6

1 here, and I will handle it that way.

2 MR. GAMBACCINI: If I may, your Honor, this is

3 Andy Gambaccini.

4 THE COURT: Yes.

5 MR. GAMBACCINI: I had mentioned to Attorney Jensen

6 some time ago, the business of Village Vault no longer is in

7 operation. Mr. Dowd does not have the acquisition disposition

8 log. When we shut down the business, that went to an agency in

9 the Washington D.C. area, and that's where the log book

02:49PM 10 resides, so he does not have access to that material at this

11 point.

12 THE COURT: Meaning a federal agency, ATF or --

13 MR. GAMBACCINI: That is his understanding. I've

14 asked whether it's ATF or some other agency. He does not have

15 a memory as to where it went.

16 THE COURT: Okay. Does he have any documents showing,

17 like a transmittal letter or anything?

18 MR. GAMBACCINI: He tells me he does not.

19 THE COURT: All right. Mr. Jensen, how do you want to

02:49PM 20 respond? It seems to me that if this is -- well, you tell me.

21 Assuming that's correct for the moment, where does that leave

22 you?

23 MR. JENSEN: Well, there are still a couple of

24 categories of records that would go to this, and they are,

25 first of all, the receipts that were issued to the police

Case 1:18-cv-11336-FDS Document 46-1 Filed 04/23/20 Page 8 of 10
Case 1:18-cv-11336-FDS Document 40-1 Filed 04/09/20 Page 7 of 9

7

1     department in respect of the guns, assuming those still exist,

2     and, secondly, the inventory records from within the police

3     department, which would reflect transfers out to that company.

4         THE COURT: So the receipts would be in the normal

5     course, the gun shop would have the receipts, and the inventory

6     records would be the police department records?

7         MR. JENSEN: Well, presumably, the police department

8     would also have copies of the receipts since they received

9     them.

02:50PM 10         THE COURT: All right. Mr. Donohue.

11         MR. DONOHUE: I think for some limited time frame, it

12     may make sense. I can look and see what the police department

13     has for receipts from Village Vault.

14         THE COURT: All right. I'm going to expand my order

15     to include then any receipts or inventory records that reflect

16     the transfer to or from the Village Vault or Village Gun Shop,

17     Inc., whether it's in the custody of Mr. Dowd or the gun shop

18     or the police department, and we'll limit it to that.

19         And, of course, it has to have been specifically

02:51PM 20     requested. In other words, I'm not trying to trump a discovery

21     request, but whatever the time frame or other limitation is and

22     that's it, so to that extent, I will grant the motion to amend

23     the schedule, and it's otherwise denied.

24         In the meantime, I think the discovery is May 22nd. I

25     want to keep that in place. Anything else that we have to talk

Case 1:18-cv-11336-FDS Document 46-1 Filed 04/23/20 Page 9 of 10
Case 1:18-cv-11336-FDS Document 40-1 Filed 04/09/20 Page 8 of 9

8

        1    about?  Mr. Jensen.
        2         MR. JENSEN:  Your Honor, the one matter that I might
        3    suggest is the next status conference that we have in this
        4    matter is May 27.  I think it might behoove us to set that
        5    conference for next month.
        6         THE COURT:  And why is that?
        7         MR. JENSEN:  I think we may want to see where we're at
        8    in about 30 days or so.
        9         THE COURT:  Well, I guess I'm a believer in status
02:52PM 10   conferences, but I don't want to run up costs.  I guess no harm
       11    as long as I'm appearing people to appear by telephone.  All
       12    right.  So, how about Friday, April 10th at 3:00?  That's good
       13    Friday, if that makes a difference to anyone.  You can appear
       14    by phone.
       15         MR. DONOHUE:  It works for me.
       16         MR. GAMBACCINI:  This is Andy Gambaccini.  That also
       17    works for me.
       18         MR. JENSEN:  It works for us as well, your Honor.
       19         THE COURT:  Okay.  Mr. Jensen, you should feel free to
02:53PM 20   appear by phone.  I don't want you -- some of my most pleasant
       21    memories, of course, are taking the shuttle on a Friday
       22    afternoon.  It's always pleasant, but it's up to you.  Friday
       23    afternoon, April 10th at 3:00, further status.  Anything else,
       24    Mr. Donohue?
       25         MR. DONOHUE:  No, your Honor.

Case 1:18-cv-11336-FDS Document 49-1 Filed 04/23/20 Page 10 of 10
Case 1:18-cv-11336-FDS Document 46-1 Filed 04/03/20 Page 9 of 9

9

1     THE COURT: Mr. Gambaccini.

2     MR. GAMBACCINI: Nothing, your Honor.

3     THE COURT: Okay. Thank you.

4     MR. JENSEN: Thank you.

5     (Whereupon, the hearing was adjourned at 2:53 p.m.)

6     C E R T I F I C A T E

7 UNITED STATES DISTRICT COURT )

8 DISTRICT OF MASSACHUSETTS ) ss.

9 CITY OF BOSTON )

10     I do hereby certify that the foregoing transcript,

11 Pages 1 through 9 inclusive, was recorded by me

12 stenographically at the time and place aforesaid in Civil

13 Action No. 18-11336-FDS, COMMONWEALTH OF MASSACHUSETTS *ex rel.*

14 MYKEL POWELL and COMMONWEALTH SECOND AMENDMENT, INC.; and MYKEL

15 POWELL vs. SGT. BRIAN HOLMES, in his Individual and Official

16 Capacity as Sergeant of the Stoughton Police Department; JAMES

17 O'CONNOR, in his Individual and Official Capacity as Deputy

18 Chiefofthe Stoughton Police Department; DONNA M. McNAMARA, in

19 her Individual and Official Capacity as Chief of the Stoughton

20 Police Department; and VILLAGE GUN SHOP, INC. D/b/a VILLAGE

21 VAULT, and thereafter by me reduced to typewriting and is a

22 true and accurate record of the proceedings.

23     Dated April 8, 2020.

24     s/s Valerie A. O'Hara

25     _____
    VALERIE A. O'HARA
    OFFICIAL COURT REPORTER