## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COMMONWEALTH *ex rel.* POWELL, *et. al.*, <br><br> Plaintiffs, <br><br> -against- <br><br> HOLMES, *et al.*, <br><br> Defendants. | CIVIL ACTION NO. <br> 1:18-cv-11336-FDS <br><br> **PLAINTIFFS' MOTION TO EXTEND THE DEADLINE FOR PLEADING AMENDMENTS** |

Plaintiff-Relators hereby move the Court to extend the deadline for pleading amendments from June 24, 2020 to July 31, 2020. As we explain in this motion, the Plaintiffs have done everything realistically possible to move fact discovery forward as quickly as possible, notwithstanding substantial delays that were outside our control. The requested extension of 37 days is the minimum needed to permit the impleader of the additional defendants that the Plaintiffs have been able to identify.

### I)      Factual and Procedural Background

This case concerns the Defendants' illegal arrangement to sell guns and ammunition that were the beneficial property of the Commonwealth for their own benefit. Massachusetts law requires police departments to take custody of people's guns and ammunition under certain circumstances, such as the suspension or revocation of their gun licenses. *See* M.G.L. c. 140, § 129D. Police departments must store this property for the owner's benefit for a period of one year. *See id.* After that, any unclaimed property "shall be sold at public auction by the colonel of the state police to the highest bidding person . . . and the proceeds shall be remitted to the state treasurer." *Id.* Instead of doing this, the Stoughton Defendants (James O'Connor and Donna

McNamara) gave their "one year guns" to the Village Vault Defendants (Village Gun Shop, Inc. and Peter Dowd) in exchange for dollar-denominated "credits" that they then used to purchase equipment, services and other valuable consideration. The Village Vault Defendants, in turn, sold the guns and kept the remaining proceeds. The Defendants are accordingly liable for a "reverse" claim under the False Claims Act, which imposes liability on anyone who (among other things) "knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the commonwealth." M.G.L. c. 12, § 5B(a)(9); *see also, e.g., United States ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.*, 839 F. 3d 242, 253-54 (3d Cir. 2016).

The Plaintiff-Relators learned of this scheme when they took the deposition of James O'Connor in the prior related matter *Powell v. Holmes, et al.*, no. 1:17-cv-10776-FDS (D. Mass. filed May 3, 2017). The Plaintiff-Relators then took a deposition from the Village Vault Defendants, where they learned two significant facts. First, they learned that Village Vault was also taking custody of guns and ammunition from other police departments in Massachusetts, but they only learned the identity of one such department—Springfield.[1] Second, they learned that there were two circumstances under which the Village Vault Defendants took custody of guns and ammunition from police departments:

1. Storage—acting as a "bonded warehouse," the Village Vault Defendants stored guns and ammunition during the one year period that police departments were obliged to hold them for the benefit of their owners; and

2. Disposal—the Village Vault Defendants would purchase guns and ammunition that had been held for more than one year.

---

[1] At the time of this deposition, the Plaintiff-Relators were very concerned about asking questions that might reveal their awareness of the gun-diversion scheme. The concern was that the Village Vault Defendants would destroy their records.

Only the second circumstance gave rise to liability under the False Claims Act—meaning, among other things, that the mere knowledge that a police department did business with Village Vault did not necessarily mean that there was a claim. Further investigation was needed.

**II)   The Plaintiff-Relators Have Done Everything Possible to Identify Liable Police Departments as Expeditiously as Possible**

Plaintiffs' complaint alleged that "[o]n information and belief, Defendants Dowd and Village Vault have this same basic arrangement with police departments and/or police department personnel throughout the Commonwealth of Massachusetts." Complaint (Doc. No. 1) at ¶ 31; Amended Complaint (Doc. No. 11) at ¶ 35. Thus, when discovery commenced after the initial scheduling conference on October 23, 2019, a primary goal was to learn the identities of other police departments that had traded their "one year guns" to Village Vault. To do this, the Plaintiffs intended to rely upon the acquisition and disposition logbook ("A&D Log") that federal law required Village Vault to maintain. *See* 18 U.S.C. § 923(g)(1)(A); 27 C.F.R. § 478.125(e). Exhibit A is a page that Plaintiffs obtained at the previously referenced deposition. At this deposition, Village Vault's representative explained that "one year guns" would be recorded in the A&D Log as transfers from a police department. (In the case of "storage" guns, the A&D Log would reflect the original owner as the transferor.)

Unfortunately, the Plaintiffs learned at the March 5, 2020 hearing that the Village Vault Defendants had disposed of their A&D Log. *See* Transcript (Doc. No. 44) at 6:5-15. And while the Bureau of Alcohol, Tobacco and Firearms had a copy, federal law shields that copy from disclosure. *See generally Higgins v. U.S. Dep't of Justice*, 919 F. Supp. 2d 131, 144-45 (D.D.C. 2013). Thus, this development made it much more difficult to identify the other police departments that had been involved.

The Plaintiffs did know that Village Vault had done business with Springfield, so we served a subpoena on the Springfield police chief, seeking copies of any pertinent records. This took place right as the Covid-19 pandemic was beginning to unfold, which resulted in a small delay in getting the actual records (because the location where they were sent was closed). Once the Plaintiffs had the records, they found a document from Village Vault that identified 14 "Massachusetts Police Department references," as well as a bank. *See* Exhibit 2. In addition, the Plaintiffs scoured the internet for references to Village Vault, and as a result, were able to identify an additional 14 police departments that had a connection to Village Vault. Thus, between April 7 and April 9, 2020, Plaintiffs served subpoenas duces taceum on 28 police departments, as well as on the bank—notwithstanding that we were in the midst of the COVID-19 emergency shutdown orders.

Unfortunately, circumstances beyond the Plaintiffs' control resulted in substantial delays in obtaining responses to the subpoenas. First, many police departments took a *significant* amount of time to respond to the subpoenas, generally pointing to the ongoing pandemic. For example, one department told us that "due to the coronavirus pandemic all of the . . . municipal offices are closed and therefore the town is unable to respond to your subpoena." Some departments did not respond until over two months later in June—and this was only after being repeatedly contacted by Plaintiffs' counsel and threatened with contempt of court. A second issue that delayed Plaintiffs' receipt of responses was Village Vault's objection to the subpoena served on the bank. Village Vault told the bank not to respond to the subpoena on April 2, 2020 and filed a motion to quash on April 7, 2020 (Doc. No. 43). The Court largely rejected that

motion, but this did not take place until June 1, 2020 (Doc. No. 54).[2] The subpoena was delayed the entire time.

As the police departments (slowly) responded to the subpoenas, the Plaintiffs learned the identities of some additional departments from their responses. Most significantly, three of the departments had marketing materials from Village Vault, and those materials identified over 100 other police departments that had done business with Village Vault, and accordingly had potential liability. Exhibit 3. After carefully evaluating all of the available facts, the Plaintiffs prepared subpoenas for 56 of these police departments and, pursuant to Rule 45(a)(4), sent them to Defendants' counsel on June 8, 2020. The Plaintiffs then served those subpoenas beginning on June 11, 2020. The subpoenas required responses by June 19, 2020, but many police departments were late. As of the date of this motion, we have received responses from 51 of the 56 departments, and are actively working to get responses from the remaining five.

### III)   The Requested Extension

Although the Court extended all pretrial deadlines by 30 days in the conferences held in March, April and May, it declined to extend the pretrial deadlines at the conference held on June 8, 2020, instead directing Plaintiffs to submit a written motion. The Plaintiffs advised the Court that they were still waiting for subpoena responses that would identify additional defendants, and the Court indicated that the discovery of new information was generally a consideration that would support a grant of leave to amend. Because the deadline for amending pleadings was June 24, 2020, the Plaintiffs immediately prepared a proposed amended pleading two days after the June 8 hearing, on June 10, 2020, and send it to the proposed new defendants. While Plaintiffs

---

[2] The Court limited the scope of the subpoena to "account statements, checks, and deposit slips for the six-year period preceding the complaint"—which is essentially what the Plaintiffs had asked for in the first place.

intended to also send a copy of the motion, subpoena responses continued to come in, and the

Plaintiffs continued to identify additional new defendants right up until June 24, 2020. On that

date, the Plaintiffs filed a motion for leave to amend and an updated amended complaint, and

sent all of them to the new Defendants by U.S. Mail. *See* Doc. No. 59 at 5 & Doc. No. 62-1

(copy of Plaintiffs' letter).

      Plaintiffs currently plan to be ready to finalize an amended pleading—which impleads all

appropriate additional defendants—by Friday, July 17, 2020. To comply with LR 15.1, the

Plaintiffs will send the proposed amended pleading and motion to the new defendants on that

date, and will then file their motion with the Court 14 days later, on July 31, 2020. Ergo the

request for an extension to July 31, 2020.

### IV)    Conclusion

      The Plaintiff-Relators have done everything possible to move fact discovery as quickly as

possible, notwithstanding substantial delays that were outside our control. This case concerns

hundreds of thousands of dollars that were improperly diverted from the Commonwealth, and

substantial justice will not be served unless the liable parties are impleaded. Moreover, it is

impossible for the Plaintiffs to pursue these parties unless they are impleaded in this action. *See*

M.G.L. c. 12, § 5C(6). Thus, we respectfully request that the motion be granted.

Dated:  June 9, 2020

Respectfully submitted,

THE PLAINTIFFS,
By their attorneys,


/s/ David D. Jensen
David D. Jensen
David Jensen PLLC
33 Henry Street
Beacon, New York 12508
Tel:  212.380.6615
Fax:  917.591.1318
david@djensenpllc.com

Margarita Smirnova, Esq.
BBO No. 680429
7 Greenbriar Drive, Unit 109
North Reading, Massachusetts 01864
Telephone: (617) 875-8663
margarita.smirnova@gmail.com


## CERTIFICATION OF ATTEMPT TO CONFER

I hereby certify that, on June 9, 2020, I conferred with Defendants' counsel in a good

faith attempt to resolve the matter raised in this motion. The conference took place by telephone,

and the other parties present were Margarita Smirnova (representing the Plaintiffs), Thomas

Donohue (representing the Stoughton Defendants) and Andrew Gambaccini (representing the

Village Vault Defendants). The conference was unsuccessful.

/s/ David D. Jensen
David D. Jensen

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)

and paper copies will be sent to those indicated as non-registered participants on June 9, 2020.

 /s/ David D. Jensen
David D. Jensen