UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Docket No.: 1:18-cv-11336-FDS

COMMONWEALTH OF MASSACHUSETTS *ex rel.* MYKEL POWELL, COMMONWEALTH SECOND AMENDMENT, INC. and BRENT CARLTON; and MYKEL POWELL,

    Plaintiffs,

    v.

BRIAN HOLMES, in his Individual and his Official Capacity as the Sergeant of the Stoughton Police Department; JAMES O'CONNOR, in his Individual and his Official Capacity as Deputy Chief of the Stoughton Police Department; DONNA M. McNAMARA, in her Individual and his Official Capacity as Chief of the Stoughton Police Department; VILLAGE GUN SHOP, INC. d/b/a VILLAGE VAULT; and PETER DOWD.

    Defendants

### STOUGHTON DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT

Brian Holmes, James O'Connor and Donna M. McNamara ("Stoughton Defendants") oppose the Plaintiff's Motion for Leave to File a Third Amended Complaint (CM/ECF No. 69). The Plaintiffs seek to add a state false claims act claim against fourteen additional municipalities based on their firearms disposal arrangement with the Defendant, Village Vault gun shop.

The Stoughton Defendants oppose the Plaintiffs' motion for the following reasons: (1) the Plaintiffs failed to comply with both Local Rule 15.1 and Fed. R. Civ. P. 15, (2) the Plaintiffs fail to provide a basis for not seeking an extension of the amendment

deadline, (3) the futility of the proposed amendment of the state false claims act claims, and (4) further delaying the case by adding fourteen additional Defendants at this late time is unfairly prejudicial to the Stoughton Defendants, who will file for summary judgment by the deadline of September 30, 2020.

I.  **Plaintiffs' failure to comply with Local Rule 15.1 warrants denial of their Motion for Leave to File a Third Amended Complaint.**

The Plaintiffs failed to follow both Local Rule 15.1(a) and 15.1(b). Local Rule 15.1 sets forth additional restrictions on the ability of a party to amend a pleading to add a party. Local Rule 15.1(a) requires that amendments seeking to add a new party are to be sought as soon as an attorney reasonably can be expected to have become aware of the identity of the proposed new party. The Plaintiffs fail to meet this standard.

Additionally, according to Local Rule 15.1(b), a party moving to add a new party is to serve the motion to amend upon the proposed new party *at least* 14 days in advance of filing the motion, together with a separate document stating the date on which the motion will be filed. See Local Rule 15.1. Here, in a Declaration of Attorney Margarita Smirnova (CM/ECF No. 72), the Plaintiffs indicate they mailed copies of the motion for leave to amend the Complaint to the proposed fourteen municipal defendants on July 17, 2020. The motion was then filed 14 days later on July 31, 2020. Therefore, the Plaintiffs' own submissions show that they failed to provide the requisite full 14 days' notice inasmuch as the last day of a stated time period ends at midnight for electronic filing and at the close of the clerk's office for other filings. Fed. R. Civ. P. 6 (a)(4).

Failure to comply with the local rules of procedure is grounds for denial of a motion to amend. See McGee v. Benjamin 3000, No. 08-11818-DPW, slip op., 2012

WL 959377 at *11 n.12 (D. Mass. Mar. 20, 2012) (holding that compliance with local rules of procedure is *mandatory*, and noncompliance is grounds for denial of plaintiff's motion to amend complaint).

Therefore, the Plaintiffs' failure to comply with Local Rule 15.1 warrants denial of their Motion for leave to File a Third Amended Complaint.

## II.    **Plaintiffs fail to show "good cause" for seeking amendment after the Court's amendment deadline.**

The Plaintiffs have failed to establish "good cause" for failing to follow the Court's scheduling orders. The Plaintiffs' Motion for Leave to File a Third Amended Complaint was filed over thirty days *after* the deadline for amendment by the scheduling order. The purpose of limiting the period for amending the pleadings is to assure "that at some point both the parties and the pleadings will be fixed." Advisory Committee Notes to the 1983 Amendments to Fed. R. Civ. P. 16(b). A Scheduling Order thus is not "a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." Gestetner Corp. v. Case Equip. Co., 108 F.R.D. 138, 141 (D.Me. 1985). In this circumstance, the Plaintiffs have to establish "good cause" or excusable neglect for their late filing. Kropp v. School Union No. 44, 238 F.R.D. 329, 330-31 (D. Me. 2006). In the present case, the Plaintiffs have demonstrated neither and have not even attempted to do so.

A moving party may establish good cause by showing "(1) that [he or she] was diligent in assisting the court in creating a workable Rule 16 order; (2) that [his or her] noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding [his or her] diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling

3

conference; and (3) that [he or she] was diligent in seeking amendment of the Rule 16 order, once it became apparent that [he or she] could not comply with the order." Jackson v. Laureate, Inc., 186 F.R.D. 605, 608 (E.D.Cal.1999) (citations omitted). None of these apply here, as detailed more particularly in Defendants' Opposition to Plaintiffs' Motion to Extend the Deadline for Pleading Amendments (CM/ECF No. 66), which the Defendants incorporate herein by this reference. Notably, the Plaintiffs only filed their Motion to Extend after the Defendants had previously argued to the Court that the Plaintiffs did not to seek an extension of the Court's deadline for amendments. See Defendants' Opposition to Plaintiffs' Motion for Leave to File Second Amended Complaint (CM/ECF No. 62).

Moreover, as a result of their delay without good cause, the Plaintiffs' proposed amendment to add fourteen new parties unfairly prejudices the Stoughton Defendants by adding additional expense and time to the litigation. The Stoughton Defendants have been defending this action for years and are prepared to submit a dispositive motion by the deadline of September 30, 2020.

Because the Plaintiffs have not and cannot show good cause for seeking leave to file a Third Amended Complaint past the Scheduling Order deadline, their Motion for Leave to File a Third Amended Complaint should be denied.

**III.     Plaintiffs' proposed Third Amended Complaint is futile.**

The Plaintiffs' Motion for Leave to File a Third Amended Complaint should be denied because the proposed claims under the Massachusetts False Claims Act ("MFCA") are futile. In applying the MFCA, Massachusetts appellate courts have explained that courts must look to federal cases and treatises interpreting the similarly

4

worded Federal False Claims Act (FCA), 31 U.S.C.A. § 3729 et seq., because "[t]here is little decisional law interpreting the [Massachusetts False Claims Act], and its legislative history is scant." Scannell v. Attorney Gen., 70 Mass. App. Ct. 46, 48, n. 4 (2007). See Phone Recovery Servs., LLC v. Verizon of New England, Inc., 480 Mass. 224, 229 (2018) (assessing federal case law in interpreting the Massachusetts False Claims Act).

The Plaintiffs recently indicated that they are proceeding under § 5B(9) of the MFCA which provides liability for any person who "knowingly makes, uses or causes to be made or used a false record or statement material to an obligation to pay or to transmit money or property to the commonwealth or a political subdivision thereof, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the commonwealth or political subdivision thereof." The federal analog to this provision is contained at 31 U.S.C. § 3729(a)(1)(G). It is referred to as a "reverse false claim."

To make out a claim under this provision, a plaintiff must show: (1) "proof that the defendant made a false record or statement" (2) at a time that the defendant had a presently-existing "obligation" to the government—"a duty to pay money or property." Chesbrough v. VPA, P.C., 655 F.3d 461, 473 (6th Cir. 2011); see also Wood ex rel. U.S. v. Applied Research Assocs., Inc., 328 Fed.Appx. 744, 748 (2d Cir. 2009). Where a complaint "makes no mention of any financial obligation that the [defendants] owed to the government," and "does not specifically reference any false records or statements used to decrease such an obligation," there is no reverse false claim.

5

### A. Plaintiffs do not allege that any Defendant made a false record or statement.

There is no allegation that any Defendant made a false record of statement. "The [False Claims Act] is an anti-fraud statute .... As such, ... complaints brought under the FCA must fulfill the requirements of [Fed. R. Civ. P.] Rule 9(b)." Bly-Magee v. California, 236 F.3d 1014, 1018 (9th Cir. 2001). The First Circuit has observed that the existence of a false claim is at the heart of the FCA. United States ex rel. Karvelas v. Melrose–Wakefield Hosp., 360 F.3d 220, 232 (1st Cir.2004), *abrogated on other grounds*, Allison Engine Co. v. United States ex rel. Sanders, 553 U.S. 662 (2008). Claims under the MFCA are subject to the particularity requirements of Rule 9(b). See Sheppard v. 265 Essex Street Operating Co., LLC, No. 16-11514-PBS, 2018 WL 1335359, at *3 (Mar. 14, 2018) ("A *qui tam* action on behalf of the Commonwealth of Massachusetts alleging violations of the MFCA must meet the special pleading requirements of Fed. R. Civ. P. 9(b).").

The Plaintiffs here do not allege that any of the Stoughton Defendants or fourteen other proposed municipal Defendants made any false record or statement as required for a reverse false claim. Rather, the Plaintiffs only allege that the proposed municipal Defendants did not follow a portion of the state's statutory firearms licensure scheme under Mass. Gen. Laws c. 140, § 129D. According to the Plaintiffs, the municipalities did not transmit guns left in their custody for more than one year to the Massachusetts State Police for public auctioning by the colonel with proceeds remitted to the state treasurer in compliance with M.G.L. c. 140, § 129D. Instead, Plaintiffs' claim the municipalities had an arrangement where they would provide firearms to Village Vault in exchange for monetary credit or payment for police departments to use to purchase equipment and

6

supplies. Nowhere do they state that any municipal Defendant made a false record or statement. In addition, many of the Plaintiffs' allegations are made on "information and belief," which are insufficient as allegations of fraud. See City of New York v. Cyco.Net, Inc., 383 F.Supp.2d 526 (S.D.N.Y. 2005). Therefore, the Plaintiffs' motion should be denied as futile because they do not allege that any Defendant or proposed Defendant made a false record of statement.

>    **B.    No municipal Defendant had a presently existing obligation to pay money or provide property to the government.**

Under Mass. Gen. Laws c. 140, § 129D, firearms seized by law enforcement authorities, or surrendered to them, may be disposed of in two ways. The first, if the licensing authority, like a local police department, chooses to store the weapons it may do so for up to one year. The owner, within that year, may have them transferred to a person or dealer with a valid license or, if the owner regains his or her license, to regain them. After the year has passed, the colonel of the State Police is authorized to auction the guns. The second way provides that the authority may transfer the firearms to a "federally and state licensed dealer" who will store them on its premises. The dealer must (1) inspect each weapon, (2) issue a receipt to the owner indicating the particulars concerning each weapon and (3) store and maintain the weapons. The owner is liable to the dealer for reasonable storage charges. The owner may also dispose of the weapons in the same manner as if they were still being held by the licensing authority. If the owner falls in arrears in the payment of storage charges by 90 days the dealer is authorized to auction the weapons. In other words, (1) the statute authorizes police to transfer possession of lawfully confiscated firearms and associated property to licensed storage facilities, such as Village Vault and (2) the state garners proceeds from confiscated

property – if at all - only if the police abjure the use of a private storage facility, retain possession of the confiscated property, and the owner fails to transfer or reclaim the property within one year. See Jarvis v. Vill. Gun Shop, Inc., 805 F.3d 1, 9 (1st Cir. 2015).

As such, the firearms transmitted to Village Vault would not have been used by the state in a way to benefit the taxpayers. In fact, the Massachusetts State Police does not auction or sell firearms and therefore does not remit any proceeds to the state treasurer. **Exhibit 1 – State Police Response to Documents Only Subpoena, dated May 29, 2020.** Indeed, under the Plaintiffs' theory of the claim, the state is not deprived of any funds. Rather, the taxpayers of Massachusetts financially benefit from the arrangement between Village Vault and the local municipalities.

Furthermore, the Plaintiffs' allegations that the municipal Defendants did not follow all of the provisions of the Massachusetts firearms statute is insufficient to plead a claim under the false claims act. In other words, liability under the MFCA is not imposed for failing to follow a statute. "[M[erely alleging facts related to a defendant's alleged *misconduct* is not enough.... Rather, a [FCA complaint] must 'sufficiently establish that false claims were submitted for government payment' as a result of the defendant's alleged misconduct.'" United States ex rel. Ge v. Takeda Pharm. Co., 737 F.3d 116, 124 (1st Cir. 2013) (emphasis in original); see also United States ex rel. Hopper v. Anton, 91 F.3d 1261, 1266 (9th Cir. 1996) ("Violations of laws, rules, or regulations alone do not create a cause of action under the FCA."); Universal Health Servs. Inc. v. United States, 126 S.Ct. 1989, 2003 (2016) (False Claims Act is not a vehicle for punishing garden-variety breaches of contract or regulatory violations). Therefore, the Plaintiffs' motion for leave to file a Third Amended Complaint should be denied as futile.

### C. Plaintiffs' Third Amended Complaint presents issues regarding the statute of limitations.

The False Claims Act contains a six-year statute of limitations. See 31 U.S.C. § 3731(b)(1) (action "may not be brought [] more than 6 years after the date on which the violation of section 3729 is committed . . . ."). The Plaintiffs-Relators filed their original Complaint in this matter on June 27, 2018. While the original Complaint and Amended Complaint referenced conduct from 2013, the Plaintiffs' Third Amended Complaint now claims that various purported arrangements with Village Vault date back to 2001.

### IV. Plaintiffs lack standing and are not proper Relators under the False Claims Act.

The Plaintiffs are not proper Relators under the Massachusetts False Claims Act. Unlike the federal act, the MFCA places restrictions on who may bring such claims. In this action, the Plaintiffs are Commonwealth *ex. rel.* Mykel Powell, Commonwealth Second Amendment, Inc., Brent Carlton, and Mykel Powell.

Commonwealth Second Amendment, Inc., cannot be a Relator under the act because it is not an individual person. See Phone Recovery Servs., LLC, 480 Mass. at 227–29 (having determined that "individual" means an individual person, and that PRS is not such an individual, we conclude that PRS does not qualify as a relator for purposes of the act. PRS thus has no standing to bring this action, and we, in turn, have no jurisdiction to consider anything further.)[1]

---

[1] While the Federal FCA uses the word "person" in § 3729(a)(1), the MFCA provides that a relator must be an "individual" - i.e., a natural person, and not a corporate entity. See Mohamad v. Palestinian Auth., 132 S. Ct. 1702, 1707 (2012) ("'individual' ordinarily means 'a human being, a person,'" and not "a corporation"). Other than the Attorney General, only a relator, defined as "an individual," may bring an action under the statute. See M.G.L. c. 12, § 5A; M.G.L. c. 12, § 5C (2) ("An individual, hereafter referred to as relator, may bring a civil action in superior court ... on behalf of the relator and the

Mykel Powell and Brent Carlton[2] cannot be Relators under the act because they do not allege to possess any firsthand or "direct and independent knowledge" of any information regarding any false claims or acts. Rather, they only allege to have learned information thirdhand from an attorney who learned second-hand information from depositions taken in the case against the Stoughton Defendants. See Plaintiffs' Motion (CM/ECF No. 69 at 3). See U.S. ex rel. Barth v. Ridgedale Elec., Inc., 44 F.3d 699, 703 (8th Cir. 1995) ("a person who obtains secondhand information from an individual who has direct knowledge of the alleged fraud does not himself possess direct knowledge"). As a result, the Plaintiffs' motion to amend should be dismissed as futile because they lack standing and are not proper Relators under the MFCA.

## V.   Conclusion

For the foregoing reasons, the Stoughton Defendants request that this Court deny the Plaintiffs' Motion For Leave to File a Third Amended Complaint.

[signature on following page]

---

commonwealth ..."). Although the statute does not include a definition of the word "individual," it does define the word "person." Pursuant to the statute, a "person" is "a natural person, corporation, partnership, association, trust or other business or legal entity." M.G.L. c. 12, § 5A. By that definition, Commonwealth Second Amendment, Inc. is a "person." It is not, however, an "individual."

[2] Any claim is duplicative by Brent Carlton, who is a resident of the state of Oregon and the president of Commonwealth Second Amendment.

          Respectfully submitted,
          The Defendants,
          Brian Holmes, James O'Connor, and Donna A. McNamara,
          By their attorneys,


          */s/ Thomas R. Donohue*
          Thomas R. Donohue, BBO# 643483
          BRODY, HARDOON, PERKINS & KESTEN, LLP
          699 Boylston Street, 12th Floor
          Boston, MA 02116
          (617) 880-7100
          tdonohue@bhpklaw.com

DATED: August 14, 2020

## CERTIFICATE OF SERVICE

    I hereby certify that this document was filed through the ECF system and will therefore be sent electronically to the registered participants as identified on the Notice of Electric Filing (NEF) and paper copies will be sent this day to those participants indicated as non-registered participants.


          */s/ Thomas R. Donohue*
          Thomas R. Donohue, BBO# 643483

DATED: August 14, 2020