UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COMMONWEALTH OF MASSACHUSETTS *ex rel.* MYKEL POWELL, COMMONWEALTH SECOND AMENDMENT, INC. and BRENT CARLTON; and MYKEL POWELL,<br><br>    Plaintiffs,<br><br>    v.<br><br>BRIAN HOLMES, in his Individual and his Official Capacity as the Sergeant of the Stoughton Police Department; JAMES O'CONNOR, in his Individual and his Official Capacity as Deputy Chief of the Stoughton Police Department; DONNA M. McNAMARA, in her Individual and her Official Capacity of the Stoughton Police Department; VILLAGE GUN SHOP, INC. d/b/a VILLAGE VAULT; and PETER DOWD,<br><br>    Defendants. | Docket No. 1:18-cv-11336-FDS |

# CITY OF SPRINGFIELD'S MEMORANDUM OF LAW
# IN SUPPORT OF THEIR MOTION TO DISMISS

Now comes the Defendant City of Springfield (Springfield), and respectfully moves this Honorable Court to dismiss this civil action pursuant to Fed. R. Civ. Pro. 12(b)(6). As reasons therefore, the Plaintiffs fail to state a claim for which relief can be granted against Springfield because: 1) the State cannot sue itself; 2) Plaintiffs fail to plead facts sufficient to allege fraud; and 3) Plaintiffs cannot qualify as relators and, thus, do not have standing to bring this claim.

I. INTRODUCTION

This action arises from the surrender of Plaintiff Powell's (Powell) weapons to the Stoughton Police Department ("Stoughton PD") after he was arrested on November 26, 2015 and charged with assault and battery, breaking and entering, and intimidation of a witness. Compl. ¶25. The Stoughton PD suspended Powell's license to carry (LTC). Compl. ¶ 26. On November 29, 2015, Stoughton Police Sergeant Holmes went to Powell's home with an order to remove weapons, namely: a handgun, a rifle, six rifle magazines, and a rifle carrying bag. Compl. ¶ 26.

On August 3, 2016, the Stoughton District Court dismissed the charges against Powell. Compl. ¶38. On August 5, 2016, Powell attempted to retrieve his weapons from the Stoughton PD. Compl. ¶39. Powell, then residing in Rhode Island, obtained the equivalent of an LTC. Compl. ¶¶40-41. On October 3, 2016, the Stoughton PD transferred Powell's weapons to Village Vault. Compl. ¶44. Village Vault sold the handgun on November 28, 2016 but retained the rifle. Compl. ¶44. Unable to retrieve his weapons, Powell brought a lawsuit in Federal Court.

Powell filed a complaint based on these underlying facts on May 3, 2017. Powell v. Holmes, 2018 WL 662482 *2. On February 1, 2018, Judge Dennis Saylor, of the U.S. District Court for the District of Massachusetts, denied Stoughton Defendants' motion to dismiss and allowed Plaintiffs' due process claim to proceed. Id. Plaintiff Brent Carlton (Carlton) and his organization Commonwealth Second Amendment, Inc. ("Comm 2A"), provided Powell with assistance in pursuing his due process claim. Compl. ¶2. "As a result of this assistance, the Plaintiff Relators learned of the factual bases for the False Claims Act…." Id. Specifically, Powell learned that the Stoughton Police Department had an agreement to trade their "one year

guns" to the Village Vault Gun Shop, Inc. ("Village Vault"), pursuant to M. G. L. c. 140, §129D.[1] After learning this, Powell voluntarily discontinued his first action. Compl. ¶2.

Powell then filed a new complaint based on these facts, adding Carlton and Comm 2A as Plaintiffs. Compl. p. 1. Plaintiffs added new claims, including a claim under the Massachusetts False Claims Act (MFCA), and filed the Complaint under seal, on June 27, 2018. ECF Doc. 1. On October 24, 2018, the Attorney General of the Commonwealth of Massachusetts declined to intervene. ECF Doc. 6. On 8/17/20, this Court allowed Plaintiffs to amend this complaint for a third time. See ECF Docket Entry 79. Plaintiff's complaint now includes fifteen subdivisions of the State of Massachusetts, including Springfield. ECF Doc. 78.

Facts Regarding Springfield:

Two years after Powell's weapons were confiscated by the Stoughton Police Department, Springfield entered into a contract with Village Vault to dispose of certain firearms in the Springfield Police Department's ("SPD"). Compl. ¶59.[2] Between September 18 and November 1, 2017, Village Vault took custody of 1,291 guns from the SPD property room. Compl. ¶49. On November 13, 2017, Village Vault sent Springfield a check for $59,070. Compl. ¶60. On December 1, 2017, Springfield and Village Vault entered into another contract. On April 3, 2018, Village Vault paid Springfield $42,858.75. Compl. ¶61-62.

II.     ARGUMENT

    a. Standard of Review

---

[1] "[T]he licensing authority may 'in its discretion, trade or dispose of surplus, donated, abandoned, or junk firearms, rifles, shotguns, or machine guns and ammunition to properly licensed distributors and firearms dealer,' and the proceeds will go to the municipality in which the authority resides. M. G. L. c. 140, § 129D; Powell v. Holmes, 2018 WL 662482.

[2] Springfield notes that Powell suffered no personal harm from Springfield's contract with Village Vault.

Plaintiffs "fail to state a claim upon which relief may be granted." Fed. R. Civ. Pro. 12(b)(6). In evaluating this motion and testing its legal sufficiency, the complaint must be construed in the light most favorable to the plaintiff. All well-pleaded facts are to be taken as true. See Cooperman v. Individual Inc., 171 F.3d 43, 46 (1st Cir. 1999); Figueroa v. Rivera, 147 F.3d 77, 80 (1st Cir. 1998). Even when taking the facts as true, this Court must also evaluate whether the factual allegations "possess enough heft" to set forth a "plausible entitlement to relief." Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (citations omitted). If the answer is "no," the claim must be dismissed. Id.

Here, Plaintiffs allege that the SPD had a contract with Village Vault. Compl. ¶59. Plaintiffs further allege that the SPD transferred weapons via that agreement to Village Vault, that Village Vault sold those weapons, and that Village Vault compensated Springfield for those weapons. Compl. ¶¶60, 62. Because those facts, construed in the light most favorable to the plaintiff, fail to establish fraud under the MFCA, and for other reasons argued below, Plaintiffs' complaint against Springfield must be dismissed.

  b. Plaintiffs' claim fails because the State cannot sue itself.

The MFCA is intended to encourage whistleblowers to come forward and report any fraud against "the commonwealth or a political subdivision thereof." M. G. L. c. 12, §5B(a)(5)-(10).[3] A "[p]olitical subdivision" is defined as "a city…or other governmental entity authorized or created by law…." M. G. L. c. 5A. Springfield is a political subdivision of the Commonwealth

---

[3] The government's website explains, "[u]sing the Massachusetts False Claims Act, the False Claims Division conducts civil investigations and prosecutions against companies and individuals who mislead or defraud *state or municipal entities* through the use of false or fraudulent claims, records or statements." See https://www.mass.gov/service-details/attorney-generals-false-claims-division, last visited September 3, 2020 (emphasis added).

of Massachusetts organized as a city in 1852. See City of Springfield homepage, springfield-ma.gov/cos (last visited September 4, 2020). As such, Springfield is the intended beneficiary of the MFCA, rather than a permissible target.

Plaintiffs, in seeking to sue on behalf of the Commonwealth, misunderstand the purpose and protections provided by the MFCA. The purpose of the MFCA is to recover money fraudulently diverted *away* from the "commonwealth or a political subdivision thereof." M. G. L. c. 12 §5B. The money plaintiffs seek to recover has already accrued to Springfield, a "political subdivision" of the Commonwealth. Compl. ¶¶60, 62.

Plaintiffs claim fails because they cannot recover on behalf of themselves and the "commonwealth or a political subdivision thereof" money that has already accrued to the accounts of the political subdivision. The MFCA was never intended to benefit relators at the expense of the "commonwealth or a political subdivision," but to recover money stolen from them. Because Plaintiffs are, in effect, asking the State to sue itself and give them some of the proceeds, their claim fails under the MFCA and must be dismissed.

    c.   Plaintiffs fail to plead sufficient facts to meet the elements of fraud.

Plaintiffs allege that municipalities engaged in contracts that violated M. G. L. c. 140, § 129D by receiving compensation directly to the municipality rather than to the State Treasurer, but they fail to plead any facts that show the municipal defendants "knowingly" engaged in any conduct that was intended to defraud the municipality or the State. M. G. L. c. 12, § 5B(a)(1)-(10)("knowing"). With regard to Springfield, Plaintiffs allege that Village Vault paid Springfield, or "compensate[d] the City" for weapons transferred by the SPD to the Village Vault. Compl. ¶¶ 60, 61, 62. These facts, even viewed in the light most favorable to the Plaintiffs, fail to establish the requisite elements of fraud.

Claims brought under the MFCA are subject to the heightened pleading requirements of Mass.R.Civ.P. 9(b), which states that "in all averments of fraud, mistake, duress or undue influence, the circumstances constituting fraud...shall be stated with particularity." Mass. R. Civ. P. 9(b); Commonwealth ex rel. Riedel v. Quest Diagnostics, Inc., 30 Mass. L. Rep. 327 (2012). To establish a claim of fraud under the MFCA, Plaintiffs must show that 1) there was possession, custody, or control of property or money used, or to be used, by the government; 2) delivery of less property or money than the amount on a certificate or receipt; and 3) intent to defraud or willfully to conceal the property or money. See United States v. Dyncorp, 136 F.3d 676, 681 (10th Cir. 1998).[4]

Here, Plaintiffs assert that Springfield had contracts with Village Vault to sell weapons. Compl. ¶¶60, 62. Village Vault then reimbursed Springfield for the value of the weapons. Compl. ¶¶60, 62. There is no allegation that Village Vault submitted false invoices to Springfield, that Village Vault underpaid Springfield for the weapons, or that any member of Springfield government or the SPD personally or inappropriately benefitted from the contract. There is no allegation that the SPD sought to conceal any fraudulent behavior.

The closest Plaintiffs come to alleging fraud is in Compl. ¶168, when Plaintiffs describe that "Defendants City of Springfield and its representative accepted and used this payment, because of or with the intent of influencing their official actions and/or inducing them to act in violation of their official duties." Id. But, the "violation of their official duties" to which Plaintiffs refer is simply accepting money on behalf of the municipality, rather than transferring the guns to the State Treasurer to be auctioned. Id. There is no allegation that any entity or company aside from Springfield benefitted from the transaction.

---

[4] Due to the paucity of Massachusetts' cases concerning the MFCA, Massachusetts courts look to federal cases interpreting the Federal False Claims Act for guidance. Scannell v. Attorney Gen., 70 Mass. App. Ct. 46, 48, n. 4 (2007).

In other words, fraud would only exist if there were facts indicating an individual or entity conspired to receive a portion of the monies that should have been transferred to Springfield. Plaintiffs plead no such facts because that did not happen. Plaintiffs' claim of fraud amounts to a disagreement over how the SPD should have disposed of weapons in its custody. The fact that it sold the weapons by contract and Springfield received payment for the sale does not constitute fraud. For this reason, Plaintiffs' claim against Springfield must be dismissed.

      d. Comm. 2A is not an individual and, therefore, does not have standing as a relator under the MFCA.

The MFCA, unlike its Federal counterpart, allows only "individual[s]" to bring suit under the act. Phone Recovery Servs., LLC v. Verizon of New Eng., Inc., 480 Mass. 224, 228 (2015). The word "individual" under the MFCA requires that a relator be a natural person and not an organization or entity. See Id. at 228-230. Plaintiff Comm 2A is not a natural person, and therefore does not have standing to bring a claim under the MFCA. Therefore, Plaintiff Comm 2A's claim against the City of Springfield must be dismissed.

      e. Plaintiffs cannot qualify as relators because Plaintiffs have no "direct knowledge" of the alleged fraud, and their claim may be barred by the public-disclosure rule in the MFCA.

In order to qualify as a relator under the MFCA, plaintiffs must have direct knowledge of the alleged fraud. "[A] person who obtains secondhand information from an individual who has direct knowledge of the alleged fraud does not himself possess direct knowledge." U.S. ex rel. Barth v. Ridgedale Elec., Inc. 44 F.3d 699, 703 (8th Cir. 1995); see also Scannell v. Attorney General, 70 Mass. App. Ct. 46, 48 (2007)("The MFCA encourages individuals with *direct* and *independent* knowledge of information that an entity is defrauding the Commonwealth to come forward by awarding to such individuals a percentage of the Commonwealth's recovery from the defrauding entity. See G. L. c. 12, §§ 5A, 5C(2), 5F.")(emphasis added).

Powell learned of the Stoughton Police Department's contract with Village Vault through discovery in earlier litigation. Compl. ¶2. Comm 2A learned of that allegedly fraudulent contract through Powell, while providing "financial and technical assistance" in the course of that litigation. Id. Plaintiffs only learned of the municipal contracts that they now claim are fraudulent during the course of discovery in the instant case. Plaintiffs fail to plead facts to show that they had "direct" or "independent" knowledge of any alleged fraud prior to beginning litigation. Therefore, under the MFCA and related case law, Plaintiffs cannot qualify as relators and their claim against Springfield must be dismissed.

Further, because the underlying allegedly fraudulent contract, between Village Vault and the Stoughton Police Department, was publicly disclosed in former litigation that was not subject to seal, Plaintiffs claim violates the "public disclosure bar" of the MFCA. M. G. L. c. 12, § 5G. The "public disclosure bar," aims to "strike a balance between encouraging whistle-blowing and discouraging opportunistic behavior." United States ex rel. Hagerty v. Cyberonics, Inc., 95 F.Sup.3d 240, 254 (D.Mass. 2015). Commonwealth ex rel. Rosenberg v. JP Morgan Chase & Co., 36 Mass. L. Rep. 72 (2019). Although qui tam actions "can be powerful weapons for rooting out chicanery shrouded in darkness," the Act "forbids private suits once the sun has shone on the essential features of the alleged misconduct." United States ex rel. Winkelman v. CVS Caremark Corp., 827 F.3d 201, 203 (1st Cir. 2016); see also G.L.c. 12, §5G(c).

Here, although Plaintiffs filed a second complaint under seal, the first complaint and subsequent discovery was not shielded in any way from the public. To allow Plaintiffs to proceed on this basis would be to reward Plaintiffs for opportunistically adding as many plaintiffs as possible and seeking the largest possible amount of recovery, rather than providing incentive to root out fraud. Therefore, because Plaintiffs had no direct or independent knowledge of alleged

fraud, because they are barred by the public disclosure rule, and because their opportunistic claim is contrary to public policy, their claim against Springfield must be dismissed.

III.     CONCLUSION:

Instead of pursuing a due process claim based on the deprivation of his property, Plaintiff voluntarily dismissed that complaint and re-filed under a new theory that he may believe will allow significantly more financial recovery. This is exactly the type of opportunistic claim that the MFCA intends to avoid.

Further, Plaintiff cannot make the threshold showing of standing as a relator, fails to plead facts showing the State was defrauded, and fails to explain how a municipality is an appropriate defendant when the statute exists to protect the "commonwealth and political subdivisions thereof" from fraud.

For all of the foregoing reasons, Springfield respectfully requests that this Honorable Court dismiss Plaintiffs' claims against the City of Springfield.

Dated:  September 8, 2020

The Defendant City of Springfield,<br>
by and through its attorney,<br>
<br>
/s/ Kathryn G. Foster<br>
<br>
Kathryn G. Foster, BBO #676046<br>
City of Springfield Law Department<br>
1600 E. Columbus Ave., 2d Floor<br>
Springfield, MA 01103<br>
Tel: 413-787-6149<br>
kfoster@springfieldcityhall.com