UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Docket No.: 1:18-cv-11336FDS

| |
|---|
| COMMONWEALTH OF MASSACHUSETTS *ex rel*. MYKEL POWELL, COMMONWEALTH SECOND AMENDMENT, INC. and BRENT CARLTON; and MYKEL POWELL, <br><br>   Plaintiffs, <br><br>   v. <br><br> BRIAN HOLMES, in his Individual and his Official Capacity as Deputy Chief of the Stoughton Police Department; JAMES O'CONNOR, in his Individual and his Official Capacity as Sergeant of the Stoughton Police Department; DONNA M. McNAMARA, in her Individual and his Official Capacity as Chief of the Stoughton Police Department; VILLAGE GUN SHOP, INC. d/b/a VILLAGE VAULT; PETER DOWD; CITY OF SPRINGFIELD; TOWN OF PLYMOUTH; TOWN OF WINCHESTER; CITY OF CHICOPEE; TOWN OF DEDHAM; CITY OF MEDFORD; TOWN OF READING; TOWN OF WAKEFIELD; TOWN OF WILMINGTON; TOWN OF ANDOVER; TOWN OF FOXBOROUGH; CITY OF GARDNER; TOWN OF HUDSON; and TOWN OF SAUGUS, <br><br>   Defendants |

### **MEMOMORANDUM IN SUPPORT OF THE STOUGHTON DEFENDANTS' MOTION TO DISMISS COUNTS I AND III**

Brian Holmes, James O'Connor and Donna McNamara ("Stoughton Defendants")

submit this memorandum of law in support or their motion to dismiss Count I (Violation

1

of the Fourteenth Amendment under 42 U.S.C. § 1983) and Count III (Civil Conspiracy) of the Plaintiffs' Third Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

As to Count II (False Claims Act, M.G.L. c. 12 §§ 5A-5O), the Stoughton Defendants have moved to dismiss this claim via the motion to dismiss jointly filed by numerous Defendants. Document 100.

The Plaintiffs have named the Stoughton Defendants in both their individual and official capacities. The individual capacity claims fail because Holmes, O'Connor and McNamara are protected by qualified immunity. The official capacity claims fail because an official capacity claim against a municipal employee is the same as suing the municipality itself, and the Plaintiffs do not allege that any constitutional rights were violated due to a policy of the Town of Stoughton.

## I.    FACTUAL ALLEGATIONS IN THIRD AMENDED COMPLAINT

The Stoughton Police arrested Mykel Powell ("Plaintiff" or "Powell") on November 26, 2015 and charged him with breaking and entering, assault and battery, and intimidation of a witness. Third Amended Complaint, ¶ 36. By letter on November 29, 2015, the Stoughton Police Department suspended Powell's License to Carry ("LTC") in light of the arrest and criminal charges. Id., ¶ 37. (Powell does not challenge his arrest or the suspension of his LTC.)[1]

On March 4, 2016, Powell resolved the criminal charges against him by means of a Continuance without a Finding and a period of probation. Third Amended Complaint, ¶ 38. On August 3, 2016, the Stoughton District Court dismissed the charges. Id.

---

[1] "Upon revocation or suspension, the licensing authority shall take possession of such license and the person whose license is so revoked or suspended shall take all actions required under the provisions of section 129D." M.G.L. c. 140 § 131(f).

By August 2016, Powell had moved to Rhode Island. Third Amended Complaint, ¶ 39. After repeated attempts, Powell spoke with [Deputy Chief] Holmes on September 29, 2016. Third Amended Complaint, ¶ 40. Holmes told Powell that he would not lift the suspension of Powell's LTC until he made "lifestyle changes," but that he would allow the release and transfer of the guns and other property to a licensed firearms dealer in Rhode Island if Powell obtained an appropriate Rhode Island license. Id.

On October 24, 2016, Powell obtained a Rhode Island Pistol/Revolver Safety Certificate from the Rhode Island Department of Environmental Management. Third Amended Complaint, ¶ 41. This Certificate allows the Plaintiff to purchase a pistol or revolver. Id.; RI Gen. Stat. § 11-47-35.

Powell contacted [Deputy Chief] Holmes who told him to contact [Sergeant] James O'Connor. Third Amended Complaint, ¶ 42. (The Third Amend Complaint repeats the same errors as the previous three pleadings – in reality, Holmes is the deputy chief and O'Connor is a sergeant.)

On November 14, 2016, O'Connor told Powell that his guns and other property had been sent out for "disposal" and could not be returned to him. Third Amended Complaint, ¶ 43.

Powell says he subsequently learned that O'Connor had turned custody of the guns and other property over to Village Vault on October 3, 2016, and that Village Vault had sold the Smith & Wesson handgun on or about November 28, 2016, but not the rifle. Third Amended Complaint, ¶ 44.

On July 5, 2018, O'Connor sent Powell a letter advising him that the Department had the Bushmaster rifle and that the Plaintiff could sell or transfer the firearm to a

person or entity with a valid firearms license. Third Amended Complaint, ¶ 45. (Powell's assault rifle was later transferred to a gun dealer of his choosing.)

## II.     STANDARD OF REVIEW

In order to survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Dew v. City of Boston, 405 F. Supp. 3d 294, 300 (D. Mass. 2019), quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) and citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

When considering a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Decotiis v. Whittemore, 635 F.3d 22, 28-29 (1st Cir. 2011). However, that doctrine is not applicable to legal conclusions. Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.; see also Sanchez v. Pereira-Castillo, 590 F.3d 31, 48 (1st Cir. 2009) ("In other words, a plaintiff must offer 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation,' in order to claim a 'plausible entitlement to relief.'") A complaint does not state a claim for relief where the well-pleaded facts fail to warrant an inference of any more than the mere possibility of liability. Iqbal, 556 U.S. at 679.

4

Applying this standard to the factual allegations demonstrates that the Third Amended Complaint fails to state a claim against Holmes, O'Connor and McNamara.

### III.   COUNT I - PLAINTIFF FAILS TO STATE A CLAIM AGAINST THE STOUGHTON DEFENDANTS IN BOTH THEIR INDIVIDUAL AND OFFICIAL CAPACITIES UNDER § 1983

#### A.   The Stoughton Defendants are protected by qualified immunity

The individual Stoughton Defendants are protected by qualified immunity because they did not violate any clearly established constitutional rights and the Plaintiff cannot identify a factually similar case. Qualified immunity provides police officers protection from civil damages liability for actions taken under color of state law. Gray v. Cummings, 917 F.3d 1, 9–10 (1st Cir. 2019). This protection attaches "to all but the plainly incompetent or those who knowingly violate the law." Gray, 917 F.3d at 10, citing Malley v. Briggs, 475 U.S. 335, 341 (1986). Thus, a government official may invoke the defense of qualified immunity when his or her actions, though causing injury, did "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Conlogue v. Hamilton, 906 F.3d 150, 154 (1st Cir. 2018).

The qualified immunity analysis has two facets: (1) whether the defendant police officer violated the plaintiff's constitutional rights; and, if so, (2) whether the allegedly abridged right was "clearly established" at the time of the officer's alleged misconduct. Gray, 917 F.3d at 10. This second inquiry also has two facets. Id. First, the plaintiff must identify either controlling authority or a consensus of cases of persuasive authority sufficient to send a clear signal to a reasonable official that certain conduct falls short of the constitutional norm. Gray, 917 F.3d at 10, citing Alfano v. Lynch, 847 F.3d 71, 75 (1st Cir. 2017); Escalera-Salgado v. United States, 911 F.3d 38, 41 (1st Cir. 2018) (when

a defendant invokes qualified immunity, the burden is on the plaintiff to show that the defense is inapplicable). Second, the plaintiff must demonstrate that "an objectively reasonable official in the defendant's position would have known that his conduct violated that rule of law." Id. This latter step is designed to achieve a prophylactic purpose: it affords "some breathing room for a police officer even if he has made a mistake (albeit a reasonable one) about the lawfulness of his conduct." Conlogue, 906 F.3d at 155. The doctrine's protection applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Groh v. Ramirez, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting), quoting Butz v. Economou, 438 U.S. 478, 507 (1978).

Qualified immunity shields public officials from suit, it is not a mere defense to liability. Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). It is therefore important for the immunity question to be resolved at the earliest possible stage in litigation. Hunter v. Bryant, 502 U.S. 224, 227 (1991).

**B.     Plaintiffs cannot identify a case to defeat qualified immunity**

Taking the second inquiry first, the Plaintiff cannot show that any allegedly abridged right was "clearly established" at the time of the officers' alleged misconduct. Once an officer invokes qualified immunity, the Plaintiff bears the "heavy" burden of demonstrating that the law in the particular context of the Plaintiff's case was clearly established at the time of the alleged violation. Mitchell v. Miller, 790 F.3d 73, 77 (1st Cir. 2015). To defeat a police officer's qualified immunity defense, a plaintiff must "identify a case where an officer acting under similar circumstances was held to have violated the [Fourteenth] Amendment." See City of Escondido v. Emmons, 139 S.Ct.

500, 504 (2019) (per curiam), quoting District of Columbia v. Wesby, ⎯⎯ U.S. ⎯⎯, 138 S.Ct. 577, 590 (2018); see also Anderson v. Creighton, 483 U.S. 635, 639-40 (1987). The case must be sufficiently analogous to make crystal clear to an objectively reasonable officer the constitutional unlawfulness of his or her actions. Gray, 917 F.3d at 10, citing City of Escondido, 139 S.Ct. at 504; Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011).

Here, Holmes, O'Connor and McNamara are protected by qualified immunity because Powell cannot meet his heavy burden to identify a case of controlling authority with comparable facts that would put all reasonable officers in Holmes, O'Connor and McNamara's shoes on clear notice that their actions were objectively unreasonable.

Powell claims that the Stoughton Defendants violated rights pursuant to M.G.L. c. 140, § 129D. Powell, however, cannot recover against the Stoughton Defendants under 42 U.S.C. § 1983 even if they did not follow all of the terms of § 129D so long as they did not also violate Powell's rights under the due process clause of the Fourteenth Amendment to the United States Constitution. This is because § 1983 protects against the violation of Federal statutes and constitutional provisions. It does not protect against the violation of state statutes such as c. 140, § 129D, unless the statutory violation is also a violation of a Federal right. See Gutierrez v. Massachusetts Bay Transp. Authy., 437 Mass. 396, 401 (2002), and cases cited. See also Davis, 468 U.S. at 193–197 (officials of state highway department did not forfeit their qualified immunity from suit for violation of Federal constitutional rights merely because they failed to comply with clear state regulation in discharging employee of department). This absence of controlling authority

or a consensus of persuasive authority entitles the officers to qualified immunity and Count I should be dismissed.

### C. The Stoughton Defendants did not violate a constitutional right

Neither Holmes, O'Connor nor McNamara violated Powell's constitutional rights. Powell claims that the Stoughton Defendants violated his rights under the due process clause of the Fourteenth Amendment to the U.S. Constitution by (1) not providing him with notice that his guns and property could be lost before they exchanged them for "credit" with Village Vault on October 3, 2016 and (2) by not providing him with any opportunity to be heard before so exchanging the property. (He does not challenge his arrest, confiscation of firearms, or suspension of his LTC by Holmes.) Due process is not a fixed set of procedures, but "is flexible and calls for such procedural protections as the particular situation demands." Morrissey v. Brewer, 408 U.S. 471, 481 (1972). Claims of negligent deprivation of property by a law enforcement officer do not implicate the Due Process Clause. See Daniels v. Williams, 474 U.S. 327, 332, 335–36 (1986). A claim of intentional deprivation of property by an officer does not make out a constitutional due process claim where the plaintiff has access to an adequate post-deprivation remedy. Hudson v. Palmer, 468 U.S. 517, 533 (1984).

Here, the Third Amended Complaint does not allege any specific action taken by Chief McNamara. Therefore, the claims against her fail to state a claim and should be dismissed. Plaintiffs must plead facts to support that each government-official defendant, through his or her own individual actions, has violated the Constitution. Ashcroft v. Iqbal, 556 U.S. at 676. The Third Amended Complaint also fails to state claims against Holmes and O'Connor.

As to Deputy Chief Holmes, Powell merely alleges that Holmes delivered the letter of suspension of the LTC to Powell and took custody of Powell's Smith & Wesson handgun, with magazine, a Bushmaster rifle, six 30-round rifle magazines and a carrying bag for the rifle. Powell does not challenge these actions by Holmes. Thereafter, Powell alleges that he spoke with Holmes in September and October 2016 and that Holmes ultimately directed him to O'Connor. These allegations fail to state a claim against Holmes.

Powell alleges that O'Connor told him that his guns and other property had been sent out for "disposal" and could not be returned to him. O'Connor had turned custody of the guns over to Village Vault on October 3, 2016 and Village Vault sold the Smith & Wesson handgun on November 28, 2016, but later retained custody of the Bushmaster rifle. (This assault rifle was later transferred by Stoughton Police to a gun dealer of Powell's choosing.)

Powell's procedural due process claim based on inadequate notice fails as a matter of law because Powell was informed in writing of the required surrender of his guns and that suffices for purposes of due process. See City of West Covina v. Perkins, 525 U.S. 234, 241 (1999). On November 29, 2015, Holmes notified Powell by letter that the Stoughton Police Department had suspended his LTC due to his arrest and criminal charges. Third Amended Complaint, ¶ 37. Id. at 241 (owner who has been informed that his property has been seized "can turn to [published, generally available state statutes and case law] to learn about the remedial procedures available to him," and due process requires nothing more). A heightened presumption of notice attaches to a plaintiff's status as a firearms owner and person licensed to carry firearms under a comprehensive

9

licensing and regulatory scheme. As a licensed gun owner, a person is expected to know the laws and regulations governing gun possession, use, and ownership. See Gun Owners' Action League, Inc. v. Swift, 284 F.3d 198, 207 (1st Cir. 2002) (person licensed to carry firearms is presumed to know and be familiar with the laws governing their responsibilities as licensed persons); Opinion of the Justices to the House of Representatives, 408 Mass. 1215, 1220 (1990) (persons owning property within a state are charged with knowledge of relevant statutory provisions affecting the control or disposition of such property.")

### 1. Procedural due process claim fails because Powell had adequate post-deprivation remedies.

The Plaintiff's procedural due process claim also fails against Holmes, O'Connor and McNamara because he had sufficient post-deprivation remedies. The availability of a lawsuit has been held to be adequate post-deprivation process. See Powell v. Holmes, 2018 WL 662482, at *8 (D. Mass. Feb. 1, 2018), citing Parratt v. Taylor, 451 U.S. 527, 543 (1981). Where a plaintiff sues under § 1983 for deprivation of property without due process of law, the inquiry as to whether he has been deprived of due process includes an examination of the available state-law remedies. Powell, 2018 WL 662482, at *5, citing Parratt, 451 U.S. 543-44. Even if actions taken under color of state law resulted in deprivation of property, if pre-deprivation process would have been impracticable (and therefore not constitutionally required) and post-deprivation process under state law would provide an adequate remedy, then plaintiff has no claim for violation of due process. Id.; see also Hudson v. Palmer, 468 U.S. 517, 533 (1984) (expanding Parratt to intentional deprivations of property); Zinermon v. Burch, 494 U.S. 113, 139 (1990); San

10

Gerónimo Caribe Project, Inc. v. Acevedo-Vila, 687 F.3d 465, 478-81 (1st Cir. 2012) (*en banc*) (reviewing Supreme Court precedents on this issue).[2]

Here, Powell could have brought an action against the individual officers for conversion or replevin. See Baker v. Gray, 57 Mass. App. Ct. 618, 625 (2003). Conversion is an intentional interference with another's chattel which is so substantial as to be inconsistent with ownership in another person and to require the defendant to pay the owner the full value of the chattel. Meanwhile, under Massachusetts law, the elements of replevin are satisfied where (1) the goods in question have a value greater than twenty dollars, (2) the goods are unlawfully taken or detained, and (3) the owner or person entitled to possession is deprived of the goods. Mass. Gen. Laws c. 247, § 7. Replevin and conversion are similar intentional torts; essentially, they both require that a defendant wrongfully possess or detain a plaintiff's tangible property. See Portfolioscope, Inc. v. I-Flex Sols. Ltd., 473 F. Supp. 2d 252, 256 (D. Mass. 2007) (treating conversion and replevin claims together because they "require an allegation of wrongful possession of tangible property").

Law enforcement officers may be liable for conversion for the retention of personal property. See Damon v. Hukowicz, 964 F. Supp. 2d 120, 143 (D. Mass. 2013) (jury could find that police officer, in individual capacity, is liable for conversion of

---

[2] It is well settled that where a public employee commits a random act of the type involved in this case, the existence of adequate state remedies for the possible wrongful deprivation of property becomes "highly relevant" to the issue of whether a violation of procedural due process has occurred. Amsden v. Moran, 904 F.2d 748, 755 (1st Cir. 1990), citing Zinermon v. Burch, 494 U.S. at 125–126. This is because "[t]he constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process." Zinermon, at 126.

plaintiff's camera). See also E.J. Strickland Constr., Inc. v. Dep't of Agric. & Consumer Servs. of Fla., 515 So.2d 1331, 1335 (Fla.Dist.Ct.App.1987). Courts have recognized that "a civil cause of action for wrongful conversion of personal property" under state law is a sufficient post-deprivation remedy when it extends to unauthorized seizures of personal property by state officers. Lindsey v. Storey, 936 F.2d 554, 561 (11th Cir. 1991). (These cases demonstrate grounds for the officers to be protected by qualified immunity.)

      Powell claims that he does not have an adequate post-deprivation remedy because Massachusetts law provides "a broad grant of immunity from claims originating from the 'lawful detention of any goods or merchandise by any law enforcement officer.'" Vining v. Commonwealth, 63 Mass. App. Ct. 690, 695 (App. Ct. 2005), quoting M.G.L. c. 258, § 10(d). Third Amended Complaint, § 129. However, with less factual pleading from the Plaintiff, this Court has previously held that any claim for immunity from suit by the Defendants under Section 2 of the Massachusetts Tort Claims Act would likely fail. Powell v. Holmes, 2018 WL 662482, at *7 (D. Mass. Feb. 1, 2018) (plain language of the statute makes clear that Section 10 does not grant immunity to officers; it merely retains the sovereign immunity of the Commonwealth with respect to certain actions by officers). Section 2 provides that tort suits for deprivation of property must ordinarily be brought against the Commonwealth, to the extent the state officials were acting within the scope of their employment, and individual employees are immunized. Id. But Section 10 of the MTCA further provides that Section 2 "shall not apply to ... any claim arising in respect of ... the lawful detention of any goods or merchandise by any law enforcement officer." Id., quoting M.G.L. c. 258, § 10(d); see Vining v. Commonwealth, 63 Mass.

App. Ct. 690, 691-96 (2005). That same section provides that the Commonwealth has not waived its sovereign immunity for claims arising from intentional torts. Mass. Gen. Laws ch. 258, § 10(c); Mason v. Mass. Dep't of Envtl. Prot., 774 F. Supp. 2d 349, 356 (D. Mass. 2011) (explaining that conversion is an intentional tort for which the Commonwealth cannot be held liable).

Thus, the Commonwealth has explicitly declined to waive its sovereign immunity with respect to claims arising out of the lawful detention of goods by a law enforcement officer, such as the conversion claim contemplated here. Powell, 2018 WL 662482, at *7. By providing that Section 2 "shall not apply" to the listed types of claims, Section 10 also negates the part of Section 2 that absolves public employees from liability, thereby exposing employees to suits for such claims. In other words, Section 10(d) does not provide immunity to individual defendants—it only provides immunity to the Commonwealth. Id., citing Nelson v. Salem State College, 446 Mass. 525, 536-37 (2006) (explaining that, because the MCTA does not waive sovereign immunity for intentional torts, a public employee may be personally liable for an intentionally tortious act); Baker v. Gray, 57 Mass. App. Ct. 618, 625 (2003) (explaining that a post-deprivation action for conversion against a state official who had confiscated plaintiff's motorboat dealer certificate of number was available and in fact had been brought); see also Kelley, 288 F.3d at 11-13 (1st Cir. 2002) (discussing the tort of conversion in connection with confiscated property). As this Court has explained, sovereign immunity would likely not bar a claim for conversion against the individual Defendants here. Powell, 2018 WL 662482, at *7. Therefore, the Plaintiff has an adequate state court post-deprivation remedy.

The Plaintiff also had a sufficient post-deprivation remedy through his criminal case in the Stoughton District Court. In Bumps v. Trasavage, 2020 WL 1083425, at *6 (D. Mass. Mar. 6, 2020), the Court held that the Plaintiff had access to process through the criminal proceedings and therefore granted summary judgment for the Defendant Town on the Plaintiff's 14th Amendment post-deprivation procedural due process claim. See generally Mass. R. Super. Ct. 61 (governing "Motions for Return of Property and to Suppress Evidence"); Mun. Ct. Sp. R. Crim. P. Rule 11 (motions for return of property and motions to suppress evidence shall be made in writing and shall specifically set forth the facts upon which the motions are based, shall be verified by affidavit).

These post-deprivation remedies demonstrate that Holmes, O'Connor and McNamara are protected by qualified immunity. In light of these remedies, reasonable police officers in the shoes of the individual Stoughton Defendants reasonably could believe that they were not depriving the Plaintiff of property without due process. These Defendants thus are entitled to qualified immunity to the extent that the § 1983 claim is based on an alleged violation of Powell's right to procedural due process. See Amsden, supra at 754–757 (state officials entitled to qualified immunity on procedural due process claims where adequate remedies were available for their alleged improper deprivation of plaintiff's license). Powell's procedural due process argument appears to be a state law claim dressed up in due process clothing. Such suits are rarely favored, for the Fourteenth Amendment is not meant to be "a font of tort law." County of Sacramento v. Lewis, 523 U.S. 833, 848 (1998). Therefore, Count I should be dismissed as to Holmes, O'Connor and McNamara.

### D.      Plaintiff's "official capacity" claims fail against Stoughton Defendants

Powell's official capacity claims fail because he does not allege facts to support an inference that a policy by the Town of Stoughton caused his alleged constitutional injury. A §1983 suit brought against a police officer or chief of a municipal police department in his or her official capacity is a suit against the municipality itself. Stuart v. City of Gloucester, 2019 WL 3082830, at *13 (D. Mass. July 15, 2019), citing Murphy v. Town of Natick, 516 F. Supp. 2d 153, 158 (D. Mass. 2007); see also Brandon v. Holt, 469 U.S. 464, 471–72 (1985) ("[A] judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents....").

To establish municipal liability, in addition to the existence of a policy, a plaintiff must also demonstrate that (1) the municipal policy or custom actually caused the plaintiff's injury, and (2) the municipality possessed the requisite level of fault, which is generally labeled in these sorts of cases as 'deliberate indifference.'" Dyer v. City of Bos., 2018 WL 1513568, at *6 (D. Mass. Mar. 27, 2018), citing Young v. City of Providence, 404 F.3d 4, 26 (1st Cir. 2005). Deliberate indifference will be found only if it would be obvious to any reasonable official that his or her conduct would very likely violate an individual's constitutional rights. Pineda v. Toomey, 533 F.3d 50, 54 (1st Cir. 2008). As explained by the First Circuit, the Supreme Court, in an effort to prevent municipal liability from "collaps[ing] into de facto *respondeat superior* has set a very high bar for assessing municipal liability under Monell." Young, 404 F.3d 4 at 26.[3]

---

[3] It is well settled that "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Monell, 436 U.S. 658, 691 (1978). Instead, it must be shown that the "the municipality itself cause[d] the constitutional violation at issue." City of Canton v. Harris, 489 U.S. 378, 385 (1989); Collins v. City of Harker Heights, 503 U.S. 115, 122

15

Here, the Third Amended Complaint does not contain any allegations to support the existence of a Town policy or custom, or that any such policy actually caused his alleged constitutional injury. The Plaintiff also does not allege facts to show that any Town policy makers acted with deliberate indifference. Rather, the Plaintiff merely alleges that O'Connor did not allow him the period of one year to transfer his guns to a third party pursuant to M.G.L. c. 140, § 129D.[4] Instead, O'Connor disposed of Powell's firearms to Village Vault on October 3, 2016 instead of waiting the statutory year to November 29, 2016. Third Amended Complaint, ¶¶ 43-44. As a result, Powell's official capacity claims fail because he does not allege facts to support an inference that a policy by the Town of Stoughton caused his alleged constitutional injury

### IV.     COUNT III - PLAINTIFFS FAIL TO STATE A CLAIM AGAINST O'CONNOR AND MCNAMARA FOR CIVIL CONSPIRACY

The Plaintiffs' conspiracy claim in Count III fails as a matter of law. The Plaintiffs allege that O'Connor and McNamara conspired with Village Vault to evade the requirements of the Massachusetts firearms statute, M.G.L.140, § 129D. Massachusetts law "recognizes two types of civil conspiracy," Taylor v. Am. Chemistry Council, 576 F.3d 16, 34 (1st Cir. 2009), and neither is sufficiently alleged here. The first type, an

---

(1992) ("The city is not vicariously liable under § 1983 for the constitutional torts of its agents: It is only liable when it can be fairly said that the city itself is the wrongdoer.")
[4] Under § 129D, although the person no longer has the right to possess the firearms himself upon surrender, he may, within a year, give or sell them to another person who does have the right to possess them, whereupon the licensing authority must deliver the firearms to the transferee. Mass. Gen. L. c. 140, § 129D. The licensing authority must give the person whose license was suspended written notice at the time the firearms are surrendered of his right to transfer them within one year.

independent conspiracy, is a very limited cause of action; the second type requires an underlying tort.

The first type of civil conspiracy is drawn from the common law, and it "amounts to 'a very limited cause of action in Massachusetts' for civil conspiracy based on the defendants' allegedly unique ability to exert a "peculiar power of coercion" when acting in unison." Snyder v. Collura, 812 F.3d 46, 52 (1st Cir. 2016). This "requires that a plaintiff allege that defendants, acting in unison, had some peculiar power of coercion over plaintiff that they would not have had if they had been acting independently." McCrohan v. Sandulli Grace, P.C., 369 F. Supp. 3d 3234, 332 (D. Mass. 2019). Here, the Plaintiffs make no such allegations in the Third Amended Complaint.

Massachusetts' second type of civil conspiracy, which is "'based on section 876 of the Restatement [(Second) of Torts], is a form of vicarious liability for the tortious conduct of others.' ... The plaintiff is thus required to prove an underlying tort." Snyder, 812 F.3d at 52 (alteration in original). Here, the factual allegations in the Third Amended Complaint do not establish the existence of an underlying tort by O'Connor or McNamara. The Plaintiffs' conspiracy claim is merely based on the allegation that O'Connor did not comply with M.G.L. c. 140, § 129D. There are no such factual allegations against McNamara. A violation of the statute does not constitute a tort, nor does it create a private right of action. Therefore, the conspiracy claim fails as a matter of law as to both O'Connor and McNamara.

The Plaintiffs' official capacity conspiracy claim against O'Connor and McNamara fails as a matter of law because municipalities are immune from suit for the intentional torts of its employees under the Massachusetts Tort Claims Act (MTCA).

17

M.G.L. c. 258 § 10(c); Wentworth Precious Metals, LLC v. City of Everett, 2013 WL 441094, at * 14 (D. Mass. Feb. 4, 2013) (under Massachusetts law municipalities are immune to claims of conspiracy); Leatham v. Donell, 1996 WL 1251390, at * 2 (Mass. Super. 1996) (holding that M.G.L. c. 258 § 10(c) does not specifically enumerate conspiracy, but still contemplates such claims "by the language of § 10(c) in that the essence of a civil conspiracy claim is the intent to act in concert with another to the detriment of a third party"). See also Fiske v. North Attleboro, 2007 WL 809785, at * 7 (Mass. Super. 2007) (conspiracy barred by MTCA), *rev'd on other grounds*, 2008 WL 3913994 (Mass.App.Ct.2008) (Rule 1:28 decision). Therefore, Count III should be dismissed as to O'Connor and McNamara in both their individual and official capacities.

V.     **CONCLUSION**

For the foregoing reasons, Brian Holmes, James O'Connor and Donna McNamara respectfully request that this Honorable Court dismiss Count I (Fourteenth Amendment under 42 U.S.C. § 1983) and Count III (Civil Conspiracy) of the Plaintiffs' Third Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

        Respectfully submitted,
        The Defendants,
        Brian Holmes, James O'Connor and Donna McNamara,
        By their attorneys,

        */s/ Thomas R. Donohue*
        Thomas R. Donohue, BBO# 643483
        Deidre Brennan Regan, BBO# 552432
        BRODY, HARDOON, PERKINS & KESTEN, LLP
        699 Boylston Street, 12th Floor
        Boston, MA 02116
        (617) 880-7100
        tdonohue@bhpklaw.com
        dregan@bhpklaw.com

DATED: September 21, 2020

**CERTIFICATE OF SERVICE**

      I hereby certify that this document was filed through the ECF system and will therefore be sent electronically to the registered participants as identified on the Notice of Electric Filing (NEF) and paper copies will be sent this day to those participants indicated as non-registered participants.

                                            */s/ Thomas R. Donohue*
                                            Thomas R. Donohue, BBO# 643483

DATED: September 21, 2020