## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

COMMONWEALTH OF MASSACHUSETTS
*ex rel.* MYKEL POWELL,
COMMONWEALTH SECOND
AMENDMENT, INC. and BRENT
CARLTON; and MYKEL POWELL,

       Plaintiffs,

    -against-

SGT. BRIAN HOLMES, in his Individual and
Official Capacity as Deputy Chief of the
Stoughton Police Department; JAMES
O'CONNOR, in his Individual and Official
Capacity as Sergeant of the Stoughton Police
Department; DONNA M. McNAMARA, in her
Individual and Official Capacity as Chief of the
Stoughton Police Department; VILLAGE GUN
SHOP, INC. d/b/a VILLAGE VAULT; PETER
DOWD; CITY OF SPRINGFIELD; TOWN OF
PLYMOUTH; TOWN OF WINCHESTER;
CITY OF CHICOPEE; TOWN OF DEDHAM;
CITY OF MEDFORD; TOWN OF READING;
TOWN OF WAKEFIELD; TOWN OF
WILMINGTON; TOWN OF ANDOVER;
TOWN OF FOXBOROUGH; CITY OF
GARDNER; TOWN OF HUDSON; and
TOWN OF SAUGUS,

       Defendants.

CIVIL ACTION NO.
1:18-cv-11336-FDS

## PLAINTIFFS' CORRECTED OPPOSITION TO THE MOTIONS TO DISMISS FILED BY THE CITY OF SPRINGFIELD, THE CITY OF CHICOPEE AND THE REMAINING JOINT DEFENDANTS

**TABLE OF CONTENTS**

I)    **Introduction** ..................................................................................................... 1

II)   **The complaint states a valid reverse false claim against the Defendants** ................... 2

III)  **The Public Disclosure Bar does not apply** ................................................... 8

IV)   **The False Claims Act expressly contemplates liability on the part of governmental entities** .......................................................................... 16

V)    **Conclusion** ................................................................................... 19

## TABLE OF AUTHORITIES

**<u>Cases</u>**

*Bankers Life & Cas. Co. v. Comm'r of Ins.*, 427 Mass. 136, 691 N.E.2d 929 (1998)..................19

*Chin v. City of Baltimore*, 241 F. Supp. 2d 546 (D. Md. 2003) .......................................17

*Commonwealth ex rel. Rosenberg v. JPMorgan Chase & Co.*,
 36 Mass. L. Rptr. 72 (Sup. Ct. 2019) .................................................................8-10

*Cook County v. United States ex rel. Chandler*, 538 U.S. 119 (2003) ........................................17

*Dingle v. BioPort Corp.*, 388 F.3d 209 (6th Cir. 2004)......................................................10

*Federal Recovery Servs., Inc. v. United States*, 72 F.3d 447 (5th Cir. 1996) ............................12

*Hoyte v. Am. Nat'l Red Cross*, 518 F.3d 61 (D.C. Cir. 2008).......................................................2

*Kane ex rel. United States v. Healthfirst, Inc.*, 120 F. Supp. 3d 370 (S.D.N.Y. 2015) .................6

*Minn. Ass'n of Nurse Anesthetists v. Allina Health Sys. Corp.*,
 276 F.3d 1032 (8th Cir. 2002) ..................................................................................16

*Murphy v. Town of Natick*, 516 F. Supp. 2d 153 (D. Mass. 2007)..............................................18

*Phone Recovery Services, LLC v. Verizon of New England, Inc.*, 480 Mass. 224,
 102 N.E.3d 968 (2015) ...............................................................................................20

*Scannell v. Attorney General*, 70 Mass. App. Ct. 46, 872 N.E.2d 1136 (2007) ...................15-16

*United States ex rel. Bain v. Ga. Gulf Corp.*, 386 F.3d 648 (5th Cir. 2004)..................................2

*United States ex rel. Barrick v. Parker-Migliorini Int'l, LLC*,
 878 F.3d 1224 (10th Cir. 2017).....................................................................................6

*United States ex rel. Barth v. Ridgedale Electric, Inc.*,
 44 F.3d 699 (8th Cir. 1995) .........................................................................................15

*United States ex rel. D'Agostino v. Ev3, Inc.*,
 153 F. Supp. 3d 519 (D. Mass. 2015).........................................................................10

*United States ex rel. Estate of Cunningham v. Millennium Labs. of Cal., Inc.*,
 713 F.3d 662 (1st Cir. 2013)........................................................................................11

*United States ex rel. Hagerty v. Cyberonics, Inc.*, 95 F. Supp. 3d 240
 (D. Mass. 2015), *aff'd*, 844 F.3d 26 (1st Cir. 2016)...........................................8-9, 15

*United States ex rel. Harper v. Muskingum Watershed Watershed Conserv. Dist.*,
 842 F.3d 430 (6th Cir. 2016) .........................................................................................2

*United States ex rel. Hixson v. Health Mgmt. Sys., Inc.*,
 613 F.3d 1186 (8th Cir. 2010) .......................................................................................8

*United States ex rel. LeBlanc v. Raytheon Co.*, 913 F.2d 17 (1st Cir. 1990)................................8

*United States ex rel. Matthews v. Bank of Farmington*,
 166 F.3d 853 (7th Cir. 1999) .......................................................................................12

*United States ex rel. Maxwell v. Kerr-McGee Oil Gas Corp.*,
   540 F.3d 1180 (10th Cir. 2008)............................................................................11

*United States ex rel. McKenzie v. Bellsouth Telecomms., Inc.*,
   123 F.3d 935 (6th Cir. 1997) ..............................................................................12

*United States ex rel. Morsell v. Symantec Corp.*, 130 F. Supp. 3d 106 (D.D.C. 2015)..................2

*United States ex rel. Ondis v. City of Woonsocket*, 582 F. Supp. 2d 212 (D.R.I. 2008),
   *aff'd*, 587 F.3d 49 (1st Cir. 2009)....................................................................13-14

*United States ex rel. Ondis v. City of Woonsocket*, 587 F.3d 49 (1st Cir. 2009) ............... 8, 13, 15

*United States ex rel. Paranich v. Sorgnard*, 396 F.3d 326 (3d Cir. 2005) ...................................16

*United States ex rel. Poteet v. Bahler Medical, Inc.*, 619 F.3d 104 (1st Cir. 2010)...............10-11

*United States ex rel. S. Prawer & Co. v. Fleet Bank of Me.*,
   24 F.3d 320 (1st Cir. 1994).................................................................................10

*United States ex rel. Siller v. Becton Dickinson Co.*, 21 F.3d 1339 (4th Cir. 1994) ...................12

*United States ex rel. Springfield Terminal Ry. v. Quinn*,
   14 F.3d 645 (D.C. Cir. 1994)........................................................................10, 12

*United States ex rel. Willette v. Univ. of Mass.*, 80 F. Supp. 3d 296 (D. Mass. 2015),
   *aff'd*, 812 F.3d 35 (1st Cir. 2016)........................................................................17

*United States ex rel. Willette v. Univ. of Mass.*, 812 F.3d 35 (1st Cir. 2016) .............................17

*United States ex rel. Winkelman v. CVS Caremark Corp.*,
   827 F.3d 201 (1st Cir. 2016)............................................................................8, 10

*United States v. Dyncorp, Inc.*, 136 F.3d 676 (10th Cir. 1998)....................................................6

*United States v. Raymond Whitcomb Co.*, 53 F. Supp. 2d 436 (S.D.N.Y. 1999)..........................6

*Wheatley v. Mass. Insurers Insolvency Fund*, 456 Mass. 594, 925 N.E.2d 9 (2010)..................18

*Wilkins ex rel. United States v. Ohio*, 885 F. Supp. 1055 (S.D. Ohio 1995) ...............................6

*Wolfe v. Gormally*, 440 Mass. 699, 802 N.E.2d 62 (2004).........................................................18

## Statutes

1968 Mass. Acts c. 737 ..................................................................................................4

1969 Mass. Acts c. 799 ..................................................................................................5

1973 Mass. Acts. c. 892 .................................................................................................5

1986 Mass. Acts c. 481 ..................................................................................................5

1996 Mass. Acts c. 151 ..................................................................................................5

1998 Mass. Acts c. 180 ..................................................................................................5

2012 Mass. Acts c. 139 ..................................................................................................6

2014 Mass. Acts c. 284 ...............................................................................................5, 7

31 U.S.C. § 3729 .................................................................................................... 2-3, 6, 16

31 U.S.C. § 3730 .................................................................................................... 15

M.G.L. c. 4, § 7 ...................................................................................................... 17

M.G.L. c. 12, § 5A ................................................................................................. *passim*

M.G.L. c. 12, § 5B ................................................................................................. 2-3, 6, 17

M.G.L. c. 12, § 5G ................................................................................................. 8-9, 14, 18

M.G.L. c. 93A, § 1 ................................................................................................. 18

M.G.L. c. 131, § 40 ............................................................................................... 18

M.G.L. c. 132B, § 2 ............................................................................................... 18

M.G.L. c. 140, § 129D ........................................................................................... *passim*

M.G.L. c. 214, § 7A ............................................................................................... 18

Pub. L. No. 111-21, 123 Stat. 1617 (2009) ........................................................... 5

## I)        Introduction

Plaintiffs' complaint states a valid claim under the Massachusetts False Claims Act because it identifies an "obligation" that the Police Defendants[1] had to turn over property (seized guns and ammunition) to the Commonwealth, and then explains how, in contravention of that obligation, the Police Defendants instead sold the guns and ammunition to the Village Vault Defendants.[2] Contrary to Defendants' claims, the Plaintiffs do not need to plead the existence of a false statement or record in order to state a claim. Indeed, many of the Defendants' fail-to-allege arguments amount to nothing more than ignoring the grounds that the Plaintiffs have actually pleaded, postulating other grounds that could give rise to False Claims Act liability, and then explaining why those other grounds do not apply. In addition, the 2014 amendment to M.G.L. c. 140, § 129D by its terms does not impact the claim advanced in this case, as that amendment only concerned guns for which the owner was unknown.

After addressing these preliminary points, the Plaintiffs explain that the public disclosure bar does not apply because there has been no public disclosure. The bar does not apply by its terms, since the prior litigation was not in a Massachusetts court, and in any event, the Commonwealth was not a party to it. Setting this aside, there is nothing in the prior litigation that disclosed the essential elements of the False Claims Act that the Plaintiffs assert here. Because there has been no prior public disclosure, the question of whether the Plaintiffs are "original" sources is irrelevant. (And, contrary to Defendants' assertions, there is no longer a requirement that an original source have "direct" knowledge.)

---

[1] Brian Holmes, Donna McNamara, City of Springfield, Town of Plymouth, Town of Winchester, City of Chicopee, Town of Dedham, City of Medford, Town of Reading, Town of Wakefield, Town of Wilmington, Town of Andover, Town of Foxborough, City of Gardner, Town of Hudson and Town of Saugus.
[2] Village Gun Shop, Inc. d/b/a Village Vault and Peter Dowd.

-1-

Finally, the Plaintiffs rebut the Defendants' claim that "the Commonwealth is, essentially, suing itself." Rather, the Commonwealth is suing municipal corporations that sold the Commonwealth's property, instead of carrying out their obligation to turn the property over. The Massachusetts False Claims Act is largely coextensive with the federal False Claims Act, and like the federal Act, the Massachusetts Act also imposes liability on any "person." It has long been understood that a municipal corporation (but not a state or a state agency) is liable as a "person" under the federal False Claims Act. Accordingly, municipalities are also subject to liability under the Massachusetts Act. Nothing reflects an intent to constrain the Massachusetts Act's reach to something less than what the federal Act reaches.

**II)      The complaint states a valid reverse false claim against the Defendants**

In a "reverse" false claim, "the defendant's action does not result in improper payment by the government to the defendant, but instead results in no payment to the government when a payment is obligated." *United States ex rel. Bain v. Ga. Gulf Corp.*, 386 F.3d 648, 653 (5th Cir. 2004); *accord Hoyte v. Am. Nat'l Red Cross*, 518 F.3d 61, 67 (D.C. Cir. 2008). In its current form, the False Claims Act provides, pertinently, that "anyone who 'knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government' is civilly liable." *United States ex rel. Harper v. Muskingum Watershed Watershed Conserv. Dist.*, 842 F.3d 430, 436 (6th Cir. 2016) (*quoting* 31 U.S.C. § 3729(a)(1)(G)); *see also United States ex rel. Morsell v. Symantec Corp.*, 130 F. Supp. 3d 106, 125-26 (D.D.C. 2015). This same language is present in the Massachusetts False Claims Act. *See* M.G.L. c. 12, § 5B(a)(9).

When an officer or employee of a subdivision has an obligation to transmit property to the Commonwealth, but instead sells that property to another, two provisions of the False Claims Act are particularly implicated. They place liability on "[a]ny person who":

> (7) knowingly buys, or receives as a pledge of an obligation or debt, public property from an officer or employee of the commonwealth or a political subdivision thereof, who may not lawfully sell or pledge such property; [or]

> \* \* \*

> (9) knowingly makes, uses or causes to be made or used a false record or statement material to an obligation to pay or to transmit money or property to the commonwealth or a political subdivision thereof, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the commonwealth or a political subdivision thereof[.]

M.G.L. c. 12, § 5B(a); *see also* 31 U.S.C. § 3729(a)(1)(F)-(G).

Thus, the buyer is liable if he or she, among other things, "knowingly buys . . . public property from [the] officer or employee . . ., who may not lawfully sell . . . such property." M.G.L. c. 12, § 5B(a)(7). And, the officer or employee is liable if he or she, among other things, "knowingly conceals or knowingly and improperly avoids or decreases an obligation to transmit money or property to the commonwealth." *Id.* § 5(B)(a)(9). Finally, the employer of the officer or employee is liable if the officer or employee acted within the scope of apparent authority:

> A corporation, partnership or other person shall be liable to the commonwealth under sections 5B to 5O, inclusive, for the acts of its agent where the agent acted with apparent authority, regardless of whether the agent acted, in whole or in part, to benefit the principal and regardless of whether the principal adopted or ratified the agent's claims, representation, statement or other action or conduct.

*Id.* § 5B(c).

The False Claims Act defines an "obligation" as, pertinently, "an established duty, whether or not fixed, arising . . . from statute or regulation[.]" *Id.* § 5A. And as the Third Amended Complaint (¶ 121) explains, the Police Defendants all had an "obligation," pursuant to M.G.L. c. 140, § 129D, to transmit certain guns they had held for more than one year to the Massachusetts State Police. This comes from § 129D's mandate that guns "not [otherwise]

disposed of after [their] delivery or surrender . . . be sold at public auction by the colonel of the

state police . . . and the proceeds . . . be remitted to the state treasurer." M.G.L. c. 140, § 129D.

This aspect of § 129D dates back to the General Court's original enactment of the statute

in 1968, when it was first adopting universal gun owner licensing. *See* 1968 Mass. Acts c. 737.

The original statute provided, in full:

> Upon revocation, suspension or denial of an application for any firearms license, or firearm identification card, the person whose application was so denied shall without delay deliver or surrender, to the licensing authority where he lives or resides, all firearms, rifles and shotguns which he then possesses unless an appeal is pending. Such person, or his legal representative, shall have the right, at any time up to one year after said delivery or surrender, to transfer such firearms, rifles and shotguns to any licensed dealer or any other person legally permitted to purchase or take possession of such firearms, rifles and shotguns and upon notification in writing by the purchaser or transferee and the former owner, the licensing authority shall within ten days deliver such firearms, rifles and shotguns to the transferee or purchaser and due care shall be observed by the licensing authority in the receipt and holding of any such firearm, rifle or shotgun.
>
> *Firearms, rifles or shotguns not disposed of after delivery or surrender according to the provisions of this section shall be sold by the commissioner to the highest bidding licensed dealer and the proceeds shall be remitted to the state treasurer.*
>
> The commissioner may make and promulgate such rules and regulations as are necessary to carry out the provisions of this section.

*Id.* sec. 7, § 129D (emphasis added). Thus, the essential framework required people to turn in

their guns to the police (the "licensing authority") if their gun licenses were denied, suspended or

revoked, and it then required the police to hold those guns for a year, during which time the

owners could reclaim them. After the year was up, any guns "not disposed of after delivery or

surrender according to the provisions of this section [would] be sold by the commissioner . . .

and the proceeds . . . remitted to the statute treasurer." *Id.* The General Court has amended §

129D several times since 1968, but these essential aspects of the statute have remained the same.

*See* 2014 Mass. Acts c. 284, sec. 42-44; 1998 Mass. Acts c. 180, sec. 37; 1996 Mass. Acts c. 151, sec. 323-24; 1986 Mass. Acts c. 481, sec. 1; 1973 Mass. Acts. c. 892, sec. 6; 1969 Mass. Acts c. 799, sec. 9.

The Third Amended Complaint (¶¶ 123-25) explains that contrary to their obligations, the Police Defendants transferred guns to the Village Vault Defendants in exchange for consideration, and that the Village Vault Defendants then sold the guns and retained the proceeds for themselves. The Third Amended Complaint then (¶¶ 50-112) details 28 specific transactions that took place between the Village Vault Defendants and each of the Police Defendants, including the dates, locations and amounts paid or promised.

The Joint Defendants[3] argue (pp. 4-5) that Plaintiffs have failed to state a claim because they do not allege (1) that the Joint Defendants "made, used or caused to be used a record or statement" and (2) that the statement or record was "false." But this argument is nothing but an attempt to ignore the claim actually pleaded and take things off on an irrelevant diversion. First, the two decisions that the Joint Defendants cite both concerned versions of the federal False Claims Act that were in place before Congress substantially amended the reverse false claims provisions of the False Claims Act in 2009. *See* Pub. L. No. 111-21, sec. 4(a), 123 Stat. 1617, 1621-22 (2009). At the time, with respect to "obligations," the False Claims Act imposed liability on anyone who "knowingly makes, uses, or causes to be made or used, *a false record or statement* to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government." *See United States v. Raymond Whitcomb Co.*, 53 F. Supp. 2d 436, 444 (S.D.N.Y.

---

[3] The Defendants on the brief filed as Doc. No. 100-1 are the Town of Saugus, Town of Wilmington, City of Gardner, Town of Winchester, Town of Foxborough, Town of Andover, Town of Plymouth, Town of Reading, Town of Wakefield, City of Medford, James O'Connor and Donna McNamara.

1999) (*quoting* 31 U.S.C. § 3729(a)(7) (amended)) (emphasis added); *see also Wilkins ex rel. United States v. Ohio*, 885 F. Supp. 1055, 1059 (S.D. Ohio 1995) (same). The 2009 amendment expanded this provision of the False Claims Act to its current language, which imposes liability not only on people who use false records or statements, but *also* on anyone who "knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government," but without any requirement of a false record or statement. *See* 31 U.S.C. § 3729(a)(1)(G); *see also United States ex rel. Barrick v. Parker-Migliorini Int'l, LLC*, 878 F.3d 1224, 1230 (10th Cir. 2017) (discussing amendment to § 3729(a)(1)(G)); *Kane ex rel. United States v. Healthfirst, Inc.*, 120 F. Supp. 3d 370, 380 (S.D.N.Y. 2015) (same). Since 2012, the Massachusetts False Claims Act has included parallel language. *See* M.G.L. c. 12, § 5B(a)(9); 2012 Mass. Acts c. 139, sec. 22.

Similarly faulted is Springfield's citation (p. 6)[4] to *United States v. Dyncorp, Inc.*, 136 F.3d 676 (10th Cir. 1998), and their claim that the Plaintiffs have failed to state a claim because they have not alleged "delivery of less property or money than the amount on a certificate or receipt." Aside from relying on a provision that does not appear to apply here (because Springfield did not return *any* property to the Commonwealth), the *Dyncorp* decision and Springfield's argument both also rely on a previous version of the False Claims Act that, unlike the current version, required one to "receive[] a certificate or receipt." *Compare id.* at 681, *with* M.G.L. c. 12, § 5B(a)(5) (no requirement of "a certificate or receipt") *and* 31 U.S.C. § 3729(a)(1)(D) (same).

The City of Springfield claims (p. 5) that Plaintiffs "fail to plead any facts that show the municipal defendants 'knowingly' engaged in any conduct that was intended to defraud the

---

[4] The City of Springfield's memorandum of law, filed as Doc. No. 93.

municipality or the State," but this argument just ignores the facts that the Plaintiffs have in fact pleaded. Moreover, it is a particularly bizarre argument for the City of Springfield to make. When Springfield contracted with the Village Vault Defendants, it included provisions in its contracts that recognized the need to "comply with the requirements of MGL c. 140, sec. 129D, including the disposition of such weapons by auction or otherwise. . . ." *See* Third Amended Complaint at ¶¶ 59, 61. "Knowing" conduct is done with "actual knowledge of relevant information"  or  "deliberate ignorance" or "reckless disregard of . . . truth or falsity," and significantly, "*no proof of specific intent to defraud shall be required*." M.G.L. c. 12, § 5A (emphasis added). Certainly, the Third Amended Complaint raises a plausible inference that the City of Springfield was aware not only that it was transferring guns it had held under the authority of § 129D, but also that § 129D might not leave it free to do so.

Finally, and contrary to the Joint Defendants' claim (pp. 6-7), the 2014 amendment to § 129D does not absolve the Defendants of liability. In 2014, the General Court amended § 129D to provide that "[i]f the licensing authority *cannot reasonably ascertain a lawful owner* within 180 days," then the licensing authority can "trade or dispose of" guns and ammunition as it sees fit. M.G.L. c. 140, § 129D (emphasis added); *see* 2014 Mass. Acts c. 284, sec. 44. By its terms, this applies only when the police department "cannot reasonably ascertain a lawful owner," a circumstance that does not arise in the situation § 129D normally concerns—where a known, licensed gun owner has a license suspended, revoked or denied. The Joint Defendants assert (p. 7) that the Plaintiffs had an obligation to "allege that the firearms at issue do not fall subject to the provision," but provide no authority to support this claim. Moreover, the claim ignores what the Third Amended Complaint actually says, which is that the "guns and other items [at issue] had not been 'disposed of after delivery or surrender according to the provisions of' § 129D and

were accordingly to be auctioned by the State Police for the benefit of the Treasurer." *See* Third

Amended Complaint at ¶¶ 50, 52, 54, 60, 62, 64-65, 67, 69, 71, 74, 76-77, 79, 81, 83, 85, 87, 89,

91, 93-94, 96-97, 99, 101-02, 104, 106, 108, 110. To the extent any unknown-owner guns were

caught up in the transactions with the Village Vault Defendants, they can be fleshed out in

discovery.

### III)    The Public Disclosure Bar does not apply

The public disclosure bar precludes a claim "if substantially the same allegations or

transactions . . . were publicly disclosed" in one of three places:

(1)     in a Massachusetts criminal, civil or administrative hearing in which the
commonwealth is a party;

(2)     in a Massachusetts legislative, administrative, auditor's or inspector
general's report, hearing, audit or investigation; or

(3)     from the news media, unless the action is brought by the attorney general,
or the relator is an original source of the information.

M.G.L. c. 12, § 5G(c). This provision does not bar claims "based on disclosures other than those

specified." *United States ex rel. LeBlanc v. Raytheon Co.*, 913 F.2d 17, 20 (1st Cir. 1990); *see*

*also Commonwealth ex rel. Rosenberg v. JPMorgan Chase & Co.*, 36 Mass. L. Rptr. 72, 77

(Sup. Ct. 2019) (disclosure must occur "through one of the statutorily prescribed methods")

(*quoting United States ex rel. Winkelman v. CVS Caremark Corp.*, 827 F.3d 201, 208 (1st Cir.

2016)). Furthermore, for the bar to apply, there must be public disclosure of "the essential

elements exposing the particular transaction as fraudulent." *Rosenberg*, 36 Mass. L. Rptr. at 77

(*quoting United States ex rel. Ondis v. City of Woonsocket*, 587 F.3d 49, 54 (1st Cir. 2009)). If an

essential element of the claim has not been exposed, then the bar does not apply. *See United*

*States ex rel. Hagerty v. Cyberonics, Inc.*, 95 F. Supp. 3d 240, 258 (D. Mass. 2015) (*citing*

*United States ex rel. Hixson v. Health Mgmt. Sys., Inc.*, 613 F.3d 1186 (8th Cir. 2010)), *aff'd*,

844 F.3d 26 (1st Cir. 2016). Furthermore, a public disclosure that makes the existence of a fraud merely "possible" is not sufficient. *See id.* at 259 ("While it may be possible that the replacement of a battery for a VNS device is covered by one or more government health-care programs and that such programs were billed for those surgeries, such allegations were not made until the original complaint in this case and facts supporting those allegations were not disclosed prior to the amended complaint.").

Both the City of Springfield (p. 8) and the Joint Defendants (p. 11) argue that the public disclosure bar applies because (according to them) the underlying arrangement between Village Vault and the Stoughton Police Department was disclosed in the previous action. Setting aside the obvious—that the Plaintiffs needed to file this action and then use subpoenas to learn of the other Defendants and their actions—this argument fails for at least two reasons.

The first is that the prior action was not "a Massachusetts criminal, civil or administrative hearing in which the commonwealth [was] a party." M.G.L. c. 12, § 5G(c). Rather, the prior litigation was in this Court, not a court of the Commonwealth of Massachusetts, and in any event, the Commonwealth was not a party. Not surprisingly, the cases that Springfield and the Joint Defendants cite do not actually support their claim that the previous action gives rise to the public disclosure bar. Both rely on the Superior Court's decision in *Rosenberg*, but that case did not concern disclosures that were alleged to have taken place in previous litigation. Rather, the disclosures in that case had been posted to "readily accessible websites," which the court concluded were within the definition of "news media." *See Rosenberg*, 36 Mass. L. Rptr. At 78 (*citing Hagerty*, 95 F. Supp. 3d at 257 n.7). Indeed, while the case quotes the statutory language addressed to "a Massachusetts criminal, civil or administrative hearing in which the commonwealth is a party," it does not do anything to explain what this language means or when

it would apply. *See id.* at 77. This is also true of *United States ex rel. Winkelman v. CVS Caremark Corp.*, 827 F.3d 201 (1st Cir. 2016), which the Joint Defendants attempt to rely upon (p. 11). There, public disclosure had occurred when an advocacy group published a report identifying many of the essential facts underlying the claim, which resulted in congressional hearings, an investigation by the Connecticut Attorney General and a press release providing even more of the essential facts. *See id.* at 204-05. Again, setting other issues aside, that case simply did not address disclosure "in a Massachusetts criminal, civil or administrative hearing," nor do any of the other cases the Defendants cite.

Second, and independent of this, the Defendants make no showing of how the prior litigation actually disclosed the essential elements of the claims to the public. Significantly, the public disclosure bar "must be analyzed in the context of [the] twin goals of rejecting suits which the government is capable of pursuing itself, while promoting those which the government is not equipped to bring on its own." *United States ex rel. S. Prawer & Co. v. Fleet Bank of Me.*, 24 F.3d 320, 326 (1st Cir. 1994) (*quoting United States ex rel. Springfield Terminal Ry. v. Quinn*, 14 F.3d 645, 650 (D.C. Cir. 1994)). The public disclosure bar is "designed to preclude qui tam suits based on information that would have been equally available to strangers to the fraud transaction had they chosen to look for it." *United States ex rel. D'Agostino v. Ev3, Inc.*, 153 F. Supp. 3d 519, 531 n.25 (D. Mass. 2015) (*quoting United States ex rel. Poteet v. Bahler Medical, Inc.*, 619 F.3d 104, 110 (1st Cir. 2010)). "The ultimate inquiry, of course, is whether the government has received fair notice, prior to the suit, about the potential existence of the fraud." *Winkelman*, 827 F.3d at 208-09 (*citing Dingle v. BioPort Corp.*, 388 F.3d 209, 214 (6th Cir. 2004)).

The Defendants do not cite to entries on the Court's Pacer docket showing that the prior litigation made the essential elements of the claim available to the public. They do not point to disclosures on the docket indicating that the Stoughton Police Department, or any other police departments, were selling guns that they had held for more than one year to Village Vault, nor do they point to any disclosures indicating that these defendants instead were obliged to transfer them to the State Police. Rather, the central allegation in that case was that the Stoughton Defendants had "sent for disposal" the guns of Plaintiff Powell on October 3, 2016, *less* than one year after taking custody of them, at a point in time when M.G.L. c. 140, § 129D still promised Powell "the opportunity to transfer his property." *See* Complaint (Doc. No. 2) ¶¶ 24, 27 in *Powell v. Holmes, et al.*, No. 1:17-cv-10776 (D. Mass. filed May 3, 2017). Nothing in that case even identified Village Gun Shop, Inc. or Peter Dowd. *See id.*

Certainly, it is true that the Plaintiffs learned about the existence of the arrangement between Village Vault and the Stoughton Police Department during discovery in that case, but aside from the fact that this prior case was not a Massachusetts civil hearing in which the Commonwealth was a party—a fatal defect—the Defendants do not otherwise make any showing that this information was disclosed to the public. The public disclosure bar applies when information "is generally available to members of the public." *Poteet*, 619 F.3d at 111; *see also United States ex rel. Estate of Cunningham v. Millennium Labs. of Cal., Inc.*, 713 F.3d 662, 670 (1st Cir. 2013) ("A prior public disclosure may occur through any public document available on the docket in a civil hearing." (*citing Poteet*, 619 F.3d at 111)). This is the same rule that most courts follow. *See United States ex rel. Maxwell v. Kerr-McGee Oil Gas Corp.*, 540 F.3d 1180, 1186 (10th Cir. 2008) ("Information revealed to another party during discovery is likewise a public disclosure only when those materials are filed with the court." (citations omitted)); *United*

*States ex rel. Matthews v. Bank of Farmington*, 166 F.3d 853, 860 (7th Cir. 1999) (same)

(citations omitted); *United States ex rel. McKenzie v. Bellsouth Telecomms., Inc.*, 123 F.3d 935,

939 (6th Cir. 1997) ("'Public disclosure' also includes documents that have been filed with a

court, such as discovery documents and a plaintiff's complaint." (citations omitted)); *Federal*

*Recovery Servs., Inc. v. United States*, 72 F.3d 447, 450 (5th Cir. 1996) (citation omitted); *United*

*States ex rel. Siller v. Becton Dickinson Co.*, 21 F.3d 1339, 1349 (4th Cir. 1994) ("any

information disclosed through civil litigation and on file with the clerk's office should be

considered a public disclosure" (citations omitted)); *Springfield Terminal Ry.*, 14 F.3d at 652

(bar only applies to "discovery material . . . which is *actually* made public through filing, as

opposed to discovery material which has not been filed with the court and is only *theoretically*

available upon the public's request" (emphasis in source)). The matters that Plaintiffs learned in

discovery in that case were not disclosed to the public until the unsealing of the complaint in the

case at bar because—as the Court is already aware—the Plaintiffs responded to the information

they had learned by discontinuing the previous action and immediately filing the present action

under seal.

The Joint Defendants also argue (pp. 11-12) that the essential elements of the claims

against them were "readily available and provided upon request" because they provided this

information after they were served with subpoenas issued in the case at bar. The very premise of

this argument is incredulous, as the initial complaint in this case alleged that "[o]n information

and belief, Defendant Village Vault has this same basic arrangement with police departments

and/or police department personnel throughout the Commonwealth of Massachusetts," but never

identified any of those police departments. *See* Complaint (Doc. No. 1) at ¶ 31; *see also*

Amended Complaint (Doc. No. 11) at ¶ 35. Someone reading over the original pleadings in this

case might have known about potential False Claims Act claims against some other police departments in Massachusetts, but it would have had no means of knowing which police departments had improperly transferred guns, or how many, or when—all of which are essential details needed to state a viable claim. Indeed, if the information was indeed "readily available and provided upon request," then why did the Plaintiffs need to serve subpoenas in order to identify the implicated police departments and acquire the details of the transactions at issue?

To make their argument, the Joint Defendants rely on *United States ex rel. Ondis v. City of Woonsocket*, 582 F. Supp. 2d 212 (D.R.I. 2008), *aff'd*, 587 F.3d 49 (1st Cir. 2009), but this is readily distinguished. There, the court concluded that a Freedom of Information Act response was a public disclosure because it was an "administrative . . . report" or a response in an "administrative . . . investigation." *See id.* at 217-18 (*quoting* 31 U.S.C. § 3730(e)(4) (2006)). On appeal, the First Circuit agreed that a response to a FOIA request was an "act of disclosure to the public outside of the government" in the form of an "administrative . . . report" that gave rise to the bar. *See United States ex rel. Ondis v. City of Woonsocket*, 587 F.3d 49, 55-56 (1st Cir. 2009). Of course, the plaintiffs did not learn of the information underlying their claim through FOIA requests they submitted before filing this action, but instead, through responses to subpoenas they issued after they had filed this action, the contents of which were not filed with the Court until the Plaintiffs sought leave to amend their claims. The *Ondis* decision is essentially inapposite to the situation presented here, as it contains only a brief reference stating that some of the information (not specified) had been "disclosed during a state court suit," but does not otherwise address the issue of whether there was a disclosure in a prior "criminal, civil or administrative hearing," or whether that disclosure even had any importance. *See Ondis*, 582

F. Supp. 2d at 215-16. Rather, the bulk of the case addressed the question of whether a response to a FOIA request was an administrative "hearing" or "investigation." *See id.* at 217-18.

One final argument merits brief discussion. Both Springfield (p. 7) and the Joint Defendants (p. 10) argue that the Plaintiffs must have "direct" and "independent" knowledge in order to maintain a False Claims Act action. Springfield argues (p. 8) that Plaintiffs' knowledge is not direct and independent because they learned of the relationship between Village Vault and Stoughton "through discovery in earlier litigation" and of the claims against the other municipalities "during the course of discovery in the instant case." The Joint Defendants, on the other hand, argue (p. 10) that the Plaintiffs lack direct and independent knowledge because "it was their counsel that learned of these alleged acts."

This entire line of argument is misguided. First, this issue arises only if there has been a public disclosure that would give rise to the public disclosure bar. If so, then the question that arises is whether the Plaintiffs can meet the exception provided where "the relator is an original source of the information." M.G.L. c. 12, § 5G(c). A person can be an "original source" in two scenarios: (1) where they "voluntarily disclose[] . . . information on which allegations or transactions to a claim are based" to the Commonwealth or a subdivision before the act of public disclosure takes place; or (2) where they have "knowledge that is independent of and materially adds to the publicly-disclosed allegations or transactions," which they provide to the Commonwealth or a subdivision "before filing a false claims action." *See id.* § 5A. Previously, before 2010, the federal False Claims Act used a more restrictive definition, which defined an "original source" as "an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information." *See* 31

U.S.C. § 3730(e)(4)(B) (2006); *see also United States ex rel. Hagerty v. Cyberonics, Inc.*, 95 F. Supp. 3d 240, 259 (D. Mass. 2015), *aff'd*, 844 F.3d 26 (1st Cir. 2016). Thus, in the context where information has been publicly disclosed prior to the filing of a False Claims Act case—which, again, is not the case here—the amendment eliminated the requirement of "direct" knowledge and instead required that a relator's information "materially adds to" what has been publicly disclosed. The Massachusetts Act includes the same "original source" exception as the revised federal Act. *See* M.G.L. c. 12, § 5A. Notably, the decision in *United States ex rel. Barth v. Ridgedale Electric, Inc.*, 44 F.3d 699 (8th Cir. 1995), which the Defendants rely upon to make their argument about "secondhand knowledge," concerned the pre-2010 language. *See id.* at 702-03. And, the other decision that the Defendants rely upon, *Scannell v. Attorney General*, 70 Mass. App. Ct. 46, 872 N.E.2d 1136 (2007), is essentially unrelated, as it concerned an individual's claim for a False Claims Act "bounty" even though the individual had not filed a False Claims Act action. *See id.* at 51. Presumably, the Defendants have only cited this decision because it contains the statement, in dicta, that the False Claims Act "encourages individuals with direct and independent knowledge of information that an entity is defrauding the Commonwealth to come forward." *See id.* at 49.

Finally, the First Circuit has rejected the Defendants' claim that the Plaintiffs cannot be original sources of information because they learned of information by means of their attorneys. Rather, the First Circuit ruled in *Ondis* that "[a] relator is not disqualified as an original source merely because his agents assisted in the investigation into the alleged fraud." *Ondis*, 587 F.3d at 59. The court specifically disagreed with the district court's conclusion that a relator's use of employees would prevent him from being an original source, explaining that "[m]erely because a person acts through agents does not necessarily render his knowledge indirect." *Id.* at 59 n.5

(*citing Minn. Ass'n of Nurse Anesthetists v. Allina Health Sys. Corp.*, 276 F.3d 1032, 1049 (8th Cir. 2002)). Thus, even before the 2010 amendments eliminated the requirement of "direct" knowledge, there was a substantial claim that a relator had direct knowledge where his attorney had participated in the investigation that revealed the fraud. *See United States ex rel. Paranich v. Sorgnard*, 396 F.3d 326, 331 (3d Cir. 2005). Now, in light of the amendment removing the requirement of "direct" knowledge from the original source definition, the issue has been laid to rest.

## IV)   The False Claims Act expressly contemplates liability on the part of governmental entities

The Massachusetts False Claims Act includes a municipal corporation within its definition of "person." Defendants' argument to the contrary simply ignores the actual actions that the General Court took when it adopted the federal False Claims Act into Massachusetts law, with slight revisions. Defendants' argument, if accepted, would have the effect of nullifying the General Court's deliberate inclusion of a broad definition of "person" and would render language in the Massachusetts Act that addresses claims against Commonwealth officials superfluous. Significantly, and tellingly, Defendants cite no cases whatsoever to directly support their argument, relying instead on their interpretation of the Massachusetts Act—one that is untenable.

Given the close relationship between the federal False Claims Act and the Massachusetts Act, we begin by looking to the federal Act and its understood meaning and application at the time the General Court took action. *See generally Scannell*, 70 Mass. App. Ct. at 49 n.4. The federal Act imposes liability on "any person" who commits an enumerated act. *See* 31 U.S.C. § 3729(a)(1). The federal Act does not define the term "person," but the U.S. Supreme Court has ruled, unanimously, that the term includes both "municipal corporations and private ones," meaning that local government entities are subject to suit under the federal Act. *See Cook County*

-16-

*v. United States ex rel. Chandler*, 538 U.S. 119, 126 (2003) (citations omitted). Indeed, the interest of both Congress and the Commonwealth in "fighting false claims" is equally applicable to those made by municipalities as to those made by natural persons. *See id.* at 134-35. Because the Eleventh Amendment protects states from being hailed into federal court, the operative question is whether a local government entity "is an arm of the state entitled to share Eleventh Amendment immunity." *See United States ex rel. Willette v. Univ. of Mass.*, 812 F.3d 35, 38 (1st Cir. 2016). And, significantly, municipalities and their police departments are not regarded as arms of the state, meaning that they are subject to suit in federal court. *See, e.g., Chin v. City of Baltimore*, 241 F. Supp. 2d 546, 548 (D. Md. 2003).

The liability-imposing provision in the Massachusetts Act uses the same substantive language as the liability-imposing provision of the federal Act, imposing liability on "[a]ny person" who commits an enumerated act. *See* M.G.L. c. 12, § 5B(a). Presumptively, the General Court intended the Massachusetts Act to apply to the same scope of "people" that the federal Act applies to. *See United States ex rel. Willette v. Univ. of Mass.*, 80 F. Supp. 3d 296, 299 n.4 (D. Mass. 2015), *aff'd*, 812 F.3d 35 (1st Cir. 2016). In any event, the Massachusetts Act includes a definition for "person," which is: "a natural person, corporation, partnership, association, trust or other business or legal entity." M.G.L. c. 12, § 5A. Significantly, this definition is *broader* than the statutory definition that generally defines a "person" to "include corporations, societies, associations and partnerships." *See* M.G.L. c. 4, § 7.[5] Thus, when the General Court enacted the False Claims Act in Massachusetts, it used the same operative "person" language that the federal Act uses, which federal courts had interpreted to include municipal corporation within its purview. *See Chandler*, 538 U.S. at 126. Then, the General Court provided a new definition of

_____

[5] The general definition does not apply if "a contrary intention clearly appears." M.G.L. c. 4, § 7.

"person" that went further than the one that applies by default under Massachusetts by also

including a "trust *or other business or legal entity*." *See* M.G.L. c. 12, § 5A (emphasis added).

The term "legal entity" is a broad one that includes not-for-profit organizations that the General

Court creates. *See Wheatley v. Mass. Insurers Insolvency Fund*, 456 Mass. 594, 607, 925 N.E.2d

9 (2010) (construing "person" definition in M.G.L. c. 93A, § 1(a)). And indeed, other

Massachusetts statutes reflect the understanding that the term "other legal entity" encompasses

(among other things) "the commonwealth or political subdivisions thereof" and a "public or

quasi-public corporation or body." *See* M.G.L. c. 131, § 40; *id.* c. 132B, § 2; *id.* c. 214, § 7A.

Even if the statutory language were ambiguous—and it is not—at least one other aspect

of the Massachusetts False Claims Act makes it clear that the General Court understood that it

was subjecting political subdivisions of the Commonwealth to liability. Specifically, the

Massachusetts Act contains a provision that provides that a court does not have jurisdiction over

a claim "against the governor, the lieutenant governor, the attorney general, the treasurer, the

secretary of state, the auditor, a member of the general court, the inspector general or a member

of the judiciary," unless the claim is based on information that the Commonwealth was not aware

of at the time of filing. *See* M.G.L. c. 12, § 5G(1). Of course, an action against the head of a

government agency is generally the same as an action against the agency itself. *See, e.g., Murphy

v. Town of Natick*, 516 F. Supp. 2d 153, 158 (D. Mass. 2007). Thus, if the Act's use of the term

"person" did *not* include a political subdivision to begin with, then this provision of the

Massachusetts Act would be rendered superfluous—which would violate the cardinal principle

"that a statute 'be construed so that effect is given to all its provisions, so that no part will be

inoperative or superfluous.'" *Wolfe v. Gormally*, 440 Mass. 699, 704, 802 N.E.2d 62 (2004)

(*quoting Bankers Life & Cas. Co. v. Comm'r of Ins.*, 427 Mass. 136, 140, 691 N.E.2d 929 (1998) (internal quotation omitted)).

### V)      Conclusion

The Plaintiffs have stated a valid reverse false claim against the Police Defendants (who have moved to dismiss) and the Village Vault Defendants (who have not). Plaintiffs do not dispute that *Phone Recovery Services, LLC v. Verizon of New England, Inc.*, 480 Mass. 224, 102 N.E.3d 968 (2015), precludes organizational standing—but the issue is basically moot. Brent Carlton has knowledge of the facts, and since there has been no public disclosure, his status as an original source is not dispositive. Finally, should the Court find some aspect of the Plaintiffs' pleading defective, then Plaintiffs do respectfully request the opportunity to examine whether an amendment would cure the deficiency. While we are currently on the third amended complaint, this is the first time that all of the Defendants have been joined (given that Plaintiffs had to first identify them), and it is also the first time that any party has filed a motion to test the sufficiency of Plaintiffs' allegations.

Dated: October 13, 2020

Respectfully submitted,

THE PLAINTIFFS,
By their attorneys,


 /s/ David D. Jensen
David D. Jensen
David Jensen PLLC
33 Henry Street
Beacon, New York 12508
Tel:  212.380.6615
Fax:  917.591.1318
david@djensenpllc.com

Margarita Smirnova, Esq.
BBO No. 680429
7 Greenbriar Drive, Unit 109
North Reading, Massachusetts 01864
Telephone: (617) 875-8663
margarita.smirnova@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)

and paper copies will be sent to those indicated as non-registered participants on Oct. 20, 2020.

   /s/ David D. Jensen_____
David D. Jensen