UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COMMONWEALTH OF MASSACHUSETTS *ex rel.* MYKEL POWELL, COMMONWEALTH SECOND AMENDMENT, INC. and BRENT CARLTON; and MYKEL POWELL,<br><br>Plaintiffs,<br><br>v.<br><br>BRIAN HOLMES, et al.,<br><br>Defendants. | Docket No. 1:18-cv-11336-FDS |

**REPLY IN SUPPORT OF THE TOWN DEFENDANTS'
<u>JOINT MOTION TO DISMISS</u>**

Defendants the Town of Saugus, the Town of Wilmington, the City of Gardner, the Town of Winchester, the Town of Foxborough, the Town of Andover, the Town of Plymouth, the Town of Reading, the Town of Wakefield, the City of Medford, the City of Springfield, James O'Connor (in his Individual and Official Capacity as the Chief of the Stoughton Police Department), and Donna McNamara (in her Individual and Official Capacity as the Chief of the Stoughton Police Department) (collectively, the "Town Defendants"), jointly submit this Reply in support of their Motion to Dismiss claims against them pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

**<u>INTRODUCTION</u>**

In their Opposition, Plaintiffs either ignore or try to re-write sections of the Massachusetts False Claims Act ("MFCA") and/or related Massachusetts caselaw. These attempts must fail. The plain language of the MFCA imposes no liability on towns and cities,

and Plaintiffs' attempts to contort the clear intent of the Massachusetts Legislature violate multiple canons of construction.  Even if towns and cities could be liable for violations of the statute, Plaintiffs fail to plead the element that such violations were done "knowingly" with the specificity required by Fed. R. Civ. P. 9(b).  Finally, despite the cases cited in their Opposition, Plaintiffs are and never can be sufficiently involved with the alleged underlying facts to have the "direct and independent knowledge" required to be relators.  For these reasons, and those articulated in the Town Defendants' initial Memorandum (Dkt. 100-1), Count II of Plaintiffs' Third Amended Complaint must be dismissed.

## ARGUMENT

**I.  THE PLAIN LANGUAGE OF THE MFCA DOES NOT IMPOSE LIABILITY ON POLITICAL SUBDIVISIONS.**

**A.  The MFCA Holds "Persons" Liable, Not "Political Subdivisions" Like Towns and Cities.**

The plain language of the MFCA clearly avoids imposing any liability upon political subdivisions, including towns and cities like the Town Defendants, and Plaintiffs offer no persuasive law to the contrary.

M.G.L. c. 12, § 5B explicitly and solely imposes liability upon "any person" who violates the statute.  "Person" is defined in § 5A as "a natural person, corporation, partnership, association, trust or other business or legal entity" and does not include cities or towns.  Instead, cities and towns are explicitly included in the separate definition for "political subdivisions," which include: "a city, town, county or other governmental entity authorized or created by law, including public corporations and authorities."[1]  (Emphasis added.)  Cities and towns are,

---

[1] The definition of "political subdivisions" also includes governmental entities and authorities.  This would include police departments.  See Kalter v. Wood, 67 Mass. App. Ct. 584, 587 (2006) (acknowledging police department as a "governmental entity").  According to Plaintiffs, "an action against the head of a governmental agency is generally the same as an action against the agency itself."  (Opp. p. 18.)  Therefore, under Plaintiffs' logic, their claims against

2

therefore, not included in the definition of "person" and are not to be held liable for any alleged violation of the MFCA.

      **B.**      **"Towns and Cities" Are Explicitly Excluded from the Definition of "Persons."**

Multiple canons of construction support this conclusion. For example, the fundamental maxim of *expressio unius est exclusio alterius* dictates that the inclusion of one thing implies the exclusion of others, and when particular language is used in one section of a statute but is omitted in another, it is presumed that the legislature acted intentionally and purposely in that omission. Rusello v. U.S., 464 U.S. 16, 23 (1983); Gallo Motor Ctr. Corp. v. Mazda Motor of Am., Inc., 172 F.Supp.2d 292, 294 (2001) (finding omission of a particular class from a section, despite specific reference to that particular class in another, meant the section did not apply to that class). Here, the Massachusetts Legislature could have included cities and towns in the definition of "person," but it did not. Nor did the Legislature identify "political subdivisions" as a class that, along with "persons," could be held liable under § 5B. The Massachusetts Legislature therefore had at least <u>two</u> opportunities through which it could impose liability on cities and towns, but did not. This demonstrates that the Legislature had no intent to hold cities and towns liable under the MFCA, and there is no reason to assume otherwise.

      **C.**      **The Specific Reference to Towns and Cities as "Political Subdivisions" Prevails Over the General Terms Used to Define "Persons" and That Specific Reference Cannot Be Relegated to Surplusage.**

Further, "the specific governs the general," meaning that when a statute specifically addresses an issue or definition, that specific provision prevails. RadLAX Gateway Hotel LLC v. Amalgamated Bank, 566 U.S. 639, 645 (2012). Here, though "cities and towns" could

---

individual "persons" -- the Police Chief, Deputy Chief, and Sergeant -- should be considered claims against the Police Department itself, which is a governmental entity, included in the definition of "political subdivisions," and therefore not subject to liability.

arguably be captured in the general concept of "legal entity" included in the definition of "person," *they are specifically referenced* in the definition of "political subdivisions." This specific reference squarely places cities and towns solely within that definition, and prevails over any attempted application of the more general term of "legal entities" included under "persons."

The fact that the Massachusetts Legislature specifically and separately included cities and towns in the definition of "political subdivisions" cannot be ignored. When interpreting statutes, courts should do so in a manner that does not treat terms as surplusage. Board of Trustees of Leland Stanford Jr. Univ. v. Roche Molecular Sys., Inc., 563 U.S. 776, 788 (2011). Ignoring the separate definition of "political subdivisions" and what those include relegates those terms to surplusage—which must be avoided.

> **D.      Plaintiffs' Arguments Ignore the Plain Language and Remaining Provisions of the MFCA and Attempt to Impose Inapposite Terms from the Federal FCA.**
>
> > 1.      The Plain Language of Each and Every Provision of the MFCA Makes Clear That Towns and Cities Are Not to Be Held Liable.

Plaintiffs present no facts, law, or argument that overcomes the plain language of the MFCA and these maxims of statutory interpretation. First, Plaintiffs argue that the Massachusetts Legislature intended for a "broad definition of 'person,'" but this ignores the specific reference to cities and towns in the definition of "political subdivisions" and how the specific prevails over the general. As explained above, the Legislature had multiple opportunities to explicitly impose liability on cities and towns, and it chose not to in each instance.

Plaintiffs' next argument is that the Massachusetts Legislature would have included towns and cities in the list found at § 5G(a) if it meant to exempt them from liability. This again ignores the plain text of the statute. The list at § 5G(a) includes "the governor, the lieutenant

4

governor, the attorney general, the treasurer, the secretary of state, the auditor, [] member[s] of the general court, the inspector general [and] member[s] of the judiciary." These are all "natural persons" captured within the definition of "person" in § 5A. Had they not been exempted; they could have been found liable as "persons" under § 5B. In contrast, because towns and cities were not included in the definition of "person," (which seems obvious in the first instance, see fn.1, supra) they did not need language providing a redundant and unnecessary exemption.

If anything, the other provisions of the MFCA and their specific use of the term "political subdivisions" demonstrates that the Massachusetts Legislature intended the statute to protect cities and towns, not expose them to new liability. For example, § 5B repeatedly refers to both "the commonwealth *or a political subdivision*" when identifying the *victim* of a false claim. § 5C says that "the attorney general shall investigate violations . . . involving state funds *or funds from any political subdivision,*" that civil actions may be brought "*on behalf of . . . any political subdivision,*" and that the attorney general "may elect to intervene . . . on behalf of the commonwealth *or political subdivision.*" § 5F discusses collecting "civil penalties and damages on behalf of the commonwealth *or any political subdivision.*" § 5G prohibits an individual from bringing a suit with allegations similar to one already brought in the name of the commonwealth or political subdivision. Finally, § 5K explains when the attorney general may clarify and/or add claims "with respect to which the commonwealth or *a political subdivision thereof contends it is entitled relief.*" These repeated and explicit references demonstrate how "political subdivisions" were to be treated differently from "persons" under the MFCA: they were intended to be beneficiaries of the statute's protections and not exposed to liability.

2.  Guidance from Federal Caselaw Concerning the Federal FCA Is Inappropriate Where the Massachusetts Legislature Has Explicitly Distinguished the MFCA.

Second, Plaintiffs attempt to re-write the MFCA with the terms of the Federal FCA have no place in this matter.  Though, as noted in Scannell v. Attorney General, 70 Mass. App. Ct. 46, 49 n. 4 (2007), Massachusetts courts will look towards federal caselaw for guidance when interpreting the MFCA, such guidance is unnecessary when the terms of the MFCA are clear and unambiguous.  Here, it is not only unnecessary, but improper, as the provisions of the MFCA and the Federal FCA conflict.  Specifically, unlike the MFCA, the Federal FCA does not contain a separate definition for "political subdivisions" or even define "person."

The inclusions of the explicit definitions discussed above demonstrates that the Massachusetts Legislature intended to distinguish the MFCA from the Federal FCA.  The Massachusetts Legislature could have easily incorporated the same definitions as the U.S. Congress—indeed, much of the language in § 5B mirrors the language in 31 U.S.C. § 3729.  But that only emphasizes that, when drafting the definitions identifying who could be liable under the MFCA, the Massachusetts Legislature purposefully opted *not* to adopt the same provisions and assumptions established by federal statute and caselaw.  The same is true for the other state statutes cited by Plaintiffs where the Massachusetts Legislature purposefully included "political subdivisions" *explicitly within* the definition of "person."  (M.G.L. c. 131, § 40 ("Removal, fill, dredging or altering of land bordering waters"); id. c. 132B, § 2 (the Massachusetts Pesticide Control Act); id. c. 214, § 7A ("Damage to the environment; temporary restraining order as additional remedy; definitions; requisites; procedure").)  Put another way:  when it concerns a claim under the MFCA, the specific and contrary language of the MFCA prevails over the

general and inapposite language of the Federal FCA or conflicting language of irrelevant state statutes.

Thus, for the reasons above, the plain language text of the MFCA does not establish liability for any alleged violations thereof upon "political subdivisions" of the Commonwealth, including towns and cities such as the Town Defendants. The Plaintiffs therefore cannot state a claim against the Town Defendants, Count II of the Third Amended Complaint must be dismissed on these grounds alone.

## II. THERE IS NO INDICATION THAT SOVEREIGN IMMUNITY HAS BEEN WAIVED FOR THE PURPOSES OF THE MFCA.

Municipal liability such as that being sought by the Plaintiffs here implicates the doctrine of sovereign immunity, which prohibits liability against the Commonwealth and its instrumentalities (e.g., political subdivisions like towns and cities) except where the Commonwealth has consented to a waiver. See Todino v. Town of Wellfleet, 448 Mass. 234, 238 (2007). The rules of construction governing such waivers are "stringent." C&M Const. Co., Inc. v. Com., 396 Mass. 390, 392 (1985). Further, such waivers should be express and clear. See, e.g., Bain v. City of Springfield, 424 Mass. 758, 762-63 (1997) (immunity was expressly waived by statute that specifically included "Commonwealth and all political subdivisions" in the definitions of "person" and "employer").

To the extent there is any ambiguity that the absence of cities and towns from the definition of "person" in M.G.L. c. 12, § 5A precludes imposing liability upon cities and towns—which the Town Defendants do not concede—then that ambiguity should be resolved in favor of retaining sovereign immunity. See Lane v. Pena, 518 U.S. 187, 192 (1996). Had the Massachusetts Legislature actually sought to waive that immunity, it had a duty to do so with clear language, as it has done in other statutes. See id.; see also Sheriff of Suffolk County v. Jail

7

Officers and Employees of Suffolk County, 465 Mass. 584, 598 (2013) (absent an "unequivocal" waiver, entities entitled to sovereign immunity cannot be held liable). Lacking that, and "stringently" applying the rules of construction, there can be no finding that sovereign immunity was waived and that the MFCA can be applied against political subdivisions such as towns and cities.

### III. PLAINTIFFS FAIL TO ESTABLISH THE NECESSARY ELEMENTS FOR THEIR CLAIM.

Plaintiffs do not dispute that one of the necessary elements for their claim is that the violation must have been done "knowingly." (Opp. p. 2, 3, 5, 6.) But Plaintiffs fail to establish this crucial element. They argue that an alleged contract between the City of Springfield and Village Vault is sufficient to establish a "plausible inference" that Springfield knowingly violated the MFCA, but Plaintiffs fail to allege that any similar contract existed with any other Town Defendants, and even if they did, this would not be sufficient.

As explained in U.S. ex rel. Harper v. Muskingum Watershed Conservancy District, 842 F.3d 430, 436-38 (6th Cir. 2016)—a case cited by Plaintiffs—a "person" commits a reverse false claim violation only when he knows that he *both* had an obligation to the government *and* violated that obligation. To successfully plead a reverse false claim violation as is being sought by Plaintiffs here, a plaintiff must allege sufficient facts showing that the defendant knew that he was "involved in conduct that violate[d] a legal obligation" or otherwise acted in deliberate ignorance or reckless disregard of such. Id. at 437. This scienter requirement is strictly enforced, as mere breaches of contract or violations of statute are not to be converted into false claims liability. See U.S. v. Science Applications Intern. Corp., 626 F.3d 1257, 1271 (D.C. Cir. 2010); Harper, 842 F.3d at 437. That a defendant simply misinterpreted a legal obligation is insufficient to meet this requirement. Harper, 842 F.3d at 437.

8

Further, as explained in the Town Defendants' Memorandum (Dkt. 100-1, Sec. I) and not contested by the Plaintiffs, Plaintiffs are subject to a higher pleading standing for their claims. This requires the Plaintiffs to plead facts that explicitly demonstrate that the Town Defendants knew their actions violated the statute or acted in deliberate ignorance or reckless disregard of that fact. Alleging facts that only suggest the *possibility* that the Town Defendants had that necessary knowledge is insufficient. Harper, 842 F.3d at 438 (citing Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)).

Plaintiffs fail to meet this burden. Generally speaking, Plaintiffs allege little more than the fact that a statute existed and conclude that the Town Defendants did not follow it. Such conclusory allegations, lacking specific details, do not meet the pleading standard required for fraud claims.

In particular, with the sole exception of Mr. Powell's firearms, Plaintiffs fail to allege with particularity the facts necessary to establish that the firearms at issue even needed to be tendered to the Colonel of the State Police. M.G.L. c. 140, § 129D is a lengthy, multi-part statute that contemplates many different scenarios concerning the surrender and disposition of firearms. Plaintiffs assume that the firearms at issue fall under one provision, but fail to allege how, and fail to allege how the Town Defendants knew that the firearms at issue fell under that specific provision.

For example, Plaintiffs only allege, in conclusory fashion, that the firearms at issue had not been "disposed of after delivery or surrender according to the provisions of § 129D." But those firearms could have easily been disposed of as provided by the second-to-last paragraph of the statute that allows the Town Defendants to dispose of firearms by tendering them to properly licensed dealers such as Village Vault. Plaintiffs do not allege that, aside from Mr. Powell's

9

firearms, the Town Defendants had any knowledge as to who the lawful owners of the firearms might have been, or that the firearms had not been abandoned or donated, or that they were not "junk." Nor can they, as Plaintiffs have no direct and independent knowledge of these firearms and the related transactions.

Plaintiffs therefore have not alleged, with the specificity required for a fraud claim under Fed. R. Civ. P. 9(b), the facts necessary to show anything more than a possibility that the Town Defendants knowingly violated M.G.L. c. 140, § 129D. Mere possibility is insufficient, and for that reason, Plaintiffs have failed to state a claim and Count II of their Third Amended Complaint must be dismissed. Harper, 842 F.3d at 437.

### IV. CHIEF MCNAMARA AND SERGEANT O'CONNOR ARE PROTECTED BY COMMON LAW IMMUNITY.

Common law immunity protects Chief McNamara and Sergeant O'Connor from the Plaintiffs' claim under the MFCA. Under common law immunity, government employees acting within their discretion as public officials and in good faith are shielded from liability. Nasir v. Town of Foxborough, 2020 WL 1027780, at *8 (D. Mass. Mar. 3, 2020), citing Nelson v. Salem State Coll., 446 Mass. 525, 537–38 (2006); Najas Realty, LLC v. Seekonk Water Dist., 821 F.3d 134, 145–146 (1st Cir. 2016) (affirming dismissal of intentional tort claims, where "a public official, exercising judgment and discretion, is not liable for negligence or other error in the making of an official decision if the official acted in good faith, without malice, and without corruption" quoting Nelson, 446 Mass. at 537; Duarte v. Healy, 405 Mass. 43, 50 n.5 (1989).

The common law immunity takes "every presumption in favor of the honesty and sufficiency of the motives actuating public officers in actions ostensibly taken for the general welfare." S. Bost. Betterment Trust Corp. v. Bost. Redev. Auth., 438 Mass. 57, 69 (2002), quoting Foster from Gloucester, Inc. v. City Council of Gloucester, 10 Mass. App. Ct. 284, 294

(1980). "Bad faith has been defined to suggest a 'breach of a known duty through some motive of interest or ill will." Brothers v. Town of Millbury, 2014 WL 4102436, at *11 (D. Mass. Aug. 14, 2014), quoting Spiegel v. Beacon Participations, 297 Mass. 398, 416 (1937). "Malice means a wrongful act, done intentionally, without just cause or excuse." Brothers, 2014 WL 4102436, at *11, quoting McGurk v. Cronenwett, 199 Mass. 398, 416 (1937). To overcome a claim of common law immunity, Plaintiffs must allege facts to establish that McNamara and O'Connor acted with bad faith or malice. See Echavarria v. Roach, 2017 WL 3928270, at *14 (D. Mass. Sept. 7, 2017).

Here, the Third Amended Complaint contains no allegations to support an inference that either Chief McNamara or Sergeant O'Connor acted with malice or bad faith. Rather, Plaintiffs merely allege that Sergeant O'Connor did not comply with M.G.L. c. 140, § 129D when disposing of firearms. Plaintiffs' allege "[a]t the direction of McNamara and O'Connor Village Vault used 'credit' proceeds to pay third parties for the purchase of equipment, supplies and other things. On May 31, 2008, Village Vault issues a check for $4,994.99, payable to 'Stoughton Police Dept.'" Third Amended Complaint, ¶ 58. Even on the most liberal reading of these alleged facts, Plaintiffs' allegations do not overcome the presumption that Chief O'Connor and Sergeant O'Connor were acting in good faith in carrying out their official duties. Nasir, 2020 WL 1027780, at *8 (D. Mass. Mar. 3, 2020), citing Najas Realty, LLC, 821 F. 3d at 145–146 (affirming the dismissal of a tort claim because "conclusory allegations" of bad faith or malice "are not enough" to overcome Massachusetts' common law immunity); Lee v. Quincy Hous. Auth., 2017 WL 402972, at *2 (D. Mass. Jan. 30, 2017) (dismissing tort claims because the plaintiff put forth "no facts to suggest that [the defendant's] actions fell short" of the common law immunity standard). As such, based on the Plaintiffs' allegations a reasonable jury could not

infer that either Chief McNamara or Sergeant O'Connor acted in a corrupt manner or with improper motives so that they would lose protection of common law immunity. Plaintiffs have therefore failed to state a claim and Count II of their Third Amended Complaint must be dismissed.

V. **PLAINTIFFS DO NOT HAVE DIRECT AND INDEPENDENT KNOWLEDGE, UNDERMINING THE INTENT OF THE MFCA RELATOR PROVISION AND PROHIBITING STANDING TO BRING THE IMMEDIATE CLAIMS.**

The MFCA "provides an incentive for an individual, referred to as a relator, *with direct and independent knowledge of information* that an entity is defrauding the Commonwealth to come forward by awarding to such individuals a percentage of the Commonwealth's recovery from the defrauding entity." Phone Recovery Services, LLC v. Verizon of New England, Inc., 480 Mass. 224, 228 (2018) (emphasis added).  Plaintiffs argue that this requirement was stricken by amendments in 2010, but those were amendments to the *Federal* FCA, and Phone Recovery is a *2018* case by the *Supreme Judicial Court of Massachusetts* that continued to recognize this requirement.  Id. at 228.  Consequently, absent a ruling to the contrary by the Supreme Judicial Court of Massachusetts, or amendment by the Massachusetts Legislature, there is no reason to believe this requirement does not still apply to the MFCA.

Plaintiffs then argue that a relator can have "direct and independent knowledge" even if that knowledge was only gained through discovery conducted by his attorney.  The cases cited are easily distinguished from the facts at hand.  In U.S. ex rel. Ondis v. City of Woonsocket, 587 F.3d 49, 59-60 (1st Cir. 2009), the relator had *directed* his *employees* to conduct a *private* investigation.  Because the resulting knowledge then came from publicly disclosed documents, it could not be considered "direct."  And because the relator only actually learned of the alleged

12

misrepresentations through his document requests, despite what he may have suspected, his knowledge could not be "independent."

Here, whatever knowledge the Plaintiffs have, it did not arise from a *private* investigation. Instead, it only arose from their attorneys first filing a complaint and then using the tools of discovery to request otherwise publicly available documents. This up-ends the purpose of the relator provisions, which are intended to encourage individuals to provide government authorities with potentially incriminating and otherwise unavailable information so that those authorities may then, if necessary, bring suit. By first filing their complaint, then conducting discovery, then adding the Town Defendants as parties, Plaintiffs have put the cart before the horse.

The second case cited by Plaintiffs, U.S. ex rel. Paranich v. Sorgnard, 396 F.3d 326, 336-37 (3rd Cir. 2005) expressly demonstrates the distinguishing fact that Plaintiffs lack. In Paranich, the trial court found that the relator lacked direct and independent knowledge. On appeal, the Third Circuit offered "comment" on the requirement without making a ruling. In doing so, the Third Circuit acknowledged how the relator was directly involved in the fraudulent billing scheme put in place by the defendants. See and compare id. at 336 ("one very important fact: [Relator] did have direct knowledge of the billing scheme because he was *involved* in it"). Here, in contrast, Plaintiffs have had no direct contact with any of the Town Defendants save for Stoughton. Without that immediate involvement, they cannot have direct and independent knowledge, and cannot qualify as relators.

## CONCLUSION

For the reasons above, and those articulated in the initial Memorandum in Support (Dkt. #100-1), the Town Defendants' Joint Motion to Dismiss should be granted and Count II of Plaintiffs' Third Amended Complaint should be dismissed with prejudice.

Respectfully submitted,

By Defendants:

| | |
|---|---|
| THE TOWN OF SAUGUS | THE TOWN OF WAKEFIELD, |
| By its attorneys, | By its attorneys, |
| /s/ William F. McGonigle_____<br>Raymond P. Ausrotas, Esq. (BBO #640315)<br>RAusrotas@arrowoodllp.com<br>William F. McGonigle, Esq. (BBO #569490)<br>wmcgonigle@arrowoodllp.com<br>ARROWOOD LLP<br>10 Post Office Square,<br>7th Floor South<br>Boston, MA 02109<br>T: 617-849-6200 | /s/ Bradford N. Louison_____<br>Bradford N. Louison (BBO# 305755)<br>blouison@lccplaw.com<br>Douglas I. Louison (BBO# 545191)<br>dlouison@lccplaw.com<br>LOUISON, COSTELLO, CONDON &<br>PFAFF, LLP<br>101 Summer Street, 4th Floor<br>Boston, MA 02110<br>(617) 439-0305 |
| | THE CITY OF MEDFORD |
| | By its attorney, |
| | /s/ David S. Monastersky___<br>David S. Monastersky  (BBO #624961)<br>Howd & Ludorf<br>65 Wethersfield Avenue<br>Hartford, CT 06114-1190<br>860-249-1361<br>Email: dmonastersky@hl-law.com |

| | |
|---|---|
| THE TOWN OF WILMINGTON, THE TOWN OF GARDNER, THE TOWN OF WINCHESTER, THE TOWN OF FOXBOROUGH, THE TOWN OF ANDOVER, THE TOWN OF PLYMOUTH, THE TOWN OF READING, JAMES O'CONNOR, and DONNA McNAMARA | THE CITY OF SPRINGFIELD |
| By their attorneys, | By its attorney, |
| /s/ Thomas R. Donohue<br>Thomas R. Donohue (BBO #643483)<br>BRODY, HARDOON, PERKINS & KESTEN<br>699 Boylston Street, 12th Floor<br>Boston, Massachusetts 02116<br>(617) 880-7100 phone<br>(617) 880-7171 fax<br>tdonohue@bhpklaw.com<br>lkesten@bhpklaw.com | /s/ Kathryn G. Foster<br>Kathryn G. Foster (BBO #676046)<br>City of Springfield Law Department<br>1600 E. Columbus Ave.<br>2d Floor Springfield, MA 01103<br>Tel: 413-787-6149<br>kfoster@springfieldcityhall.com |

October 20, 2020

## **CERTIFICATE OF SERVICE**

    I hereby certify that on October 20, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                                              /s/ William F. McGonigle