UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COMMONWEALTH OF MASSACHUSETTS *ex rel.* MYKEL POWELL, COMMONWEALTH SECOND AMENDMENT, INC. and BRENT CARLTON; and MYKEL POWELL,<br><br>Plaintiffs,<br><br>-against-<br><br>SGT. BRIAN HOLMES, in his Individual and Official Capacity as Deputy Chief of the Stoughton Police Department; JAMES O'CONNOR, in his Individual and Official Capacity as Sergeant of the Stoughton Police Department; DONNA M. McNAMARA, in her Individual and Official Capacity as Chief of the Stoughton Police Department; VILLAGE GUN SHOP, INC. d/b/a VILLAGE VAULT; PETER DOWD; CITY OF SPRINGFIELD; TOWN OF PLYMOUTH; TOWN OF WINCHESTER; CITY OF CHICOPEE; TOWN OF DEDHAM; CITY OF MEDFORD; TOWN OF READING; TOWN OF WAKEFIELD; TOWN OF WILMINGTON; TOWN OF ANDOVER; TOWN OF FOXBOROUGH; CITY OF GARDNER; TOWN OF HUDSON; and TOWN OF SAUGUS,<br><br>Defendants. | CIVIL ACTION NO.<br>1:18-cv-11336-FDS |

**PLAINTIFFS' OPPOSITION TO THE STOUGHTON
<u>DEFENDANTS' MOTION TO DISMISS</u>**

-i-

**TABLE OF CONTENTS**

| | | |
|---|---|---:|
| I) | Introduction................................................................................................................. | 1 |
| II) | As the Court has Already Ruled, Plaintiff Powell did not have Adequate Post-Deprivation Remedies................................................................................................................... | 2 |
| III) | *Monell* Precludes a Claim Against the Town of Stoughton—Not Against Defendants Holmes and O'Connor................................................................................................ | 9 |
| IV) | Qualified Immunity Does Not Apply........................................................................ | 12 |
| V) | Count III States a Valid Claim for Civil Conspiracy ................................................. | 15 |
| VI) | Conclusion ................................................................................................................ | 17 |

**I)** **Introduction**

The Stoughton Defendants' motion to dismiss Counts I and III is unexpected, as it was not something addressed at the conference held on September 9, 2020. It is also untimely. Rule 12(b) provides that "[a] motion asserting any of these defenses must be made *before* pleading if a responsive pleading is allowed." Fed. R. Civ. Proc. 12(b) (emphasis added). Moreover, a motion for judgment on the pleadings—which is not the motion the Stoughton Defendants filed—can only be made "[a]fter the pleadings are closed." *Id.* 12(c). The Stoughton Defendants already answered these exact same claims when they filed their answer to the (First) Amended Complaint, *see* Answer (Doc. No. 24) at ¶¶ 41-48, 55-59, and the pleadings have not closed because other defendants have filed pre-answer motions. Thus, this unexpected motion is not properly before the Court.

That aside, it is also ill founded. As we explain, the remedy of a post-deprivation tort claim under state law would not be adequate process for the deprivation at issue here. The deprivation at issue here was not "unauthorized" because it resulted from the Commonwealth's broad grant of authority to take property, combined with the lack of any standards or procedures to return it. The injury was foreseeable, and it would not have been impractical to have provided a pre-deprivation remedy, so the *Parratt-Hudson* doctrine is inapplicable.

Next, the Stoughton Defendants' claim that *Monell v. Department of Social Services*, 436 U.S. 658 (1978), immunizes, as individuals, them from liability is meritless. That decision might immunize the Town of Stoughton from a claim under § 1983, but the Plaintiffs have not asserted such a claim.

Then, qualified immunity is not an issue because the right to receive due process before being conclusively deprived of a property interest is clearly established. Moreover, argument or

uncertainty about whether *Parratt-Hudson* applies doesn't change the fact that the right to due process protections for conclusive deprivations of personal property is clearly established.

Finally, while the issue is somewhat academic (given parallel liability under the False Claims Act), Plaintiffs' civil conspiracy claim is viable because it derives from their tort-based claim under the False Claims Act.

In short, to the extent the Court considers this motion at all, it should deny it.

**II)     As the Court has Already Ruled, Plaintiff Powell did not have Adequate Post-Deprivation Remedies**

This Court has already rejected the Stoughton Defendants' claim that the complaint fails to state a claim "because the state tort of conversion is an adequate remedy to compensate him for the loss of his guns." *See* Motion to Dismiss (Doc. No. 10) in *Powell v. Holmes, et al.*, No. 1:17-cv-10776 (D. Mass. filed Aug. 17, 2017). There are several reasons that this is the case, but we begin with the reasons already provided by this Court.

In their previous motion, as here, the Stoughton Defendants asserted that their actions were "random and unauthorized" such that post-deprivation tort remedies were sufficient. The Court rejected the argument, observing that the rationale of *Parratt v. Taylor*, 451 U.S. 527 (1981), is questionable when there is no guidance that governs the return of property taken under statutory authority. *See* Memorandum and Order (Doc. No. 25) at p. 11 in *Powell v. Holmes, et al.*, No. 1:17-cv-10776 (D. Mass. filed Feb. 1, 2018) ("it is also unclear whether a police officer's actions can be considered 'random and unauthorized' within the meaning of *Parratt* if there is no procedure or policy in place for the officer to violate"). Reaching the merits of the *Parratt* argument anyway, the Court ruled that it was "doubtful" that Plaintiff Powell had an adequate post-deprivation remedy "for at least three reasons." *Id.*

First, it was unclear whether the Defendants had acted intentionally, but to recover for conversion, Plaintiff Powell would need to prove intentional conduct. *See id.* In other words, if the Defendants' claim that they "accidentally" got rid of Plaintiffs' property were accepted as true, then Plaintiff would not have a remedy.

The second reason the Court rejected the Stoughton Defendants' claim was that the Massachusetts Tort Claim Act exempts claims "arising in respect of . . . the lawful detention of any goods or merchandise by any law enforcement officer" from its reach. *See id.* at pp. 11-12 (*quoting* M.G.L. c. 258, § 10(d)) (other citation omitted). It also exempts "claims arising from intentional torts." *Id.* at p. 12 (*citing* M.G.L. c. 258, § 10(c); *Mason v. Mass. Dep't of Envtl. Prot.*, 774 F. Supp. 2d 349, 356 (D. Mass. 2011)). Thus, there was no waiver of sovereign immunity, meaning that an action for the tort of conversion was unavailable.

Third, and finally, the Court declined to accept the Stoughton Defendants' claim that a tort claim for damages—even if it was available—would be an adequate remedy. *See id.* at pp. 13-14 (*citing Richer v. Parmalee*, 189 F. Supp. 3d 334 (D.R.I. 2016)). The Court observed that "[t]here is certainly some force in the argument that if the only remedy is a lawsuit for an intentional tort—that is, a remedy that requires a person to hire a lawyer, file suit, pay a filing fee, litigate, and prove that he was wronged—the due-process clause has not been satisfied." *Id.* at p. 14. But, the Court declined to conclusively decide the matter, explaining that the issues "appear[] to depend to a significant degree on the facts," meaning that "[t]he issues are therefore not appropriate for resolution on a motion to dismiss." *Id.*

In our view, the Court has already adequately responded to the Stoughton Defendants' arguments. Out of an abundance of caution, we offer some additional guidance.

It is elemental that "[d]ue process normally requires notice and opportunity for 'some kind of hearing,' prior to a final deprivation of liberty or property." *Herwins v. City of Revere*, 163 F.3d 15, 18 (1st Cir. 1998) (*quoting Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 19 (1978); *citing Parratt*, 451 U.S. at 540). "Where feasible, the opportunity (for obvious reasons) is expected to be pre-deprivation, but this is not always feasible." *Id.* (*citing Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985)). Generally stated, pre-deprivation remedies are not feasible when there is "the necessity of quick action by the State or the impracticality of providing any meaningful predeprivation process." *Id.* (*quoting Parratt*, 451 U.S. at 539). *Parratt* concerned the claim that a prison official had negligently lost an item of mail, while *Hudson* concerned the claim that a prison guard had intentionally destroyed the plaintiff's property. *See Hudson v. Palmer*, 468 U.S. 517, 520 (1984); *Parratt*, 451 U.S. at 530-31. In these types of situations, "[t]he very nature" of the injury makes it "impossible for the State to predict such deprivations and provide predeprivation process." *See Zinermon v. Burch*, 494 U.S. 113, 129 (1990).

The en banc First Circuit's decision in *San Gerónimo Caribe Project, Inc. v. Acevedo-Vilá*, 687 F.3d 465 (1st Cir. 2012), concerned different facts, but provides instructive guidance on the interplay between *Parratt*, *Hudson* and *Zinermon*. Most significantly, the court explained that the *Parratt-Hudson* doctrine had not applied in *Zinermon* for three reasons. *See San Gerónimo*, 687 F.3d at 480. First, the risk of deprivation in *Zinermon* was foreseeable. *See id.* "There, it was perfectly obvious that some individuals seeking non-emergency admission at a mental health facility would not be competent to give consent to admission." *Id.* at 487 (*citing Zinermon*, 494 U.S. at 133). Second, it was not a situation where "predeprivation process was impossible." *Id.* at 480 (*quoting Zinermon*, 494 U.S. at 136). On the facts presented there, it was

-4-

significant that Florida had a procedure for the involuntary admission of mental health patients. *See id.* Finally, the conduct complained of was not "unauthorized" in the sense that it had been in *Parratt* and *Hudson*. *See id.* Rather, the conduct took place under the auspices of statute that provided "broadly delegated, uncircumscribed power" to deprive protected (liberty) interests, but without providing standards. *See id.* Finally, the en banc court affirmatively rejected the claim that the *Parratt-Hudson* doctrine applies "whenever an official's conduct violates state law." *Id.* at 490.

This analysis, applied to the facts asserted here, make it clear that the post-deprivation remedy of a tort action is inadequate. Here, the Stoughton Defendants acted pursuant to a state law that authorized them to take custody of firearms and ammunition in the event of a gun license "revocation, suspension or denial." *See* M.G.L. c. 140, § 129D. That law provides for the "transfer" of the property to a "licensed dealer or any other person legally permitted," as directed by the owner, for a period of one year. *See id*. But, it never addresses the *return* of the property to its original owner. *See id.* Once the year is up, title goes to the Commonwealth. *See id.*

Here, as in *Zinermon*, the risk of deprivation is foreseeable. When the police take property from people, it is predictable that people will want to get their property back. And, in the absence of any standards or guidance to govern the property's return, it is foreseeable that people will suffer deprivations. What if the police refuse to return the property? What if they can't find it? What if they damage it? What if the property actually belongs to someone else, who says the police should return it to him or her?

And, unlike in *Parratt* and *Hudson*, there's no real room for dispute that protections are possible. While the necessity of quick action might justify taking custody of guns and ammunition without providing pre-deprivation remedies (at least in some circumstances), that's

not the situation presented here, where the police already have custody of the guns and ammunition. Here, nothing would make it impractical to enact procedures governing the return of firearms and requiring the provision of notice and an opportunity to be heard before the owner conclusively loses title. A requirement of prior notice would have put Plaintiff Powell on alert that the Stoughton Defendants were about to "dispose of" his property.

Finally, the conduct at issue here is not "unauthorized" like it was in *Parratt* and *Hudson*. Rather, the Stoughton Defendants acted pursuant to a statutory scheme that authorized them to take custody of Plaintiff's property, and ultimately, to deprive him of it. Regardless of whether they accidentally or intentionally sent the Plaintiff's property to Village Gun Shop, Inc. early, the injury would not have happened in the absence of the statutory authority to take the property that § 129D provides—and the existence of notice and hearing requirements would have likely prevented it.

The Stoughton Defendants' arguments to the contrary are unavailing. The Eleventh Circuit's decision in *Lindsey v. Storey*, 936 F.2d 554 (11th Cir. 1991), may stand for the proposition cited—that (p. 12) a state-law tort "is a sufficient post-deprivation remedy when it extends to unauthorized seizures of personal property by state officers"—but that is neither here not there. In that case, the defendant police officer had taken personal property from the plaintiffs during the course of a traffic stop and subsequent investigation. *See Lindsey*, 936 F.2d at 557. Unlike in *Zinermon*, which concerned a statutory scheme that gave officials the power to deprive people of liberty interests, and the matter at bar, which concerns a statutory scheme that gives officials the power to deprive people of property interests, the decision in *Lindsey* did not concern a statutory scheme that authorized deprivations to occur. So in that context, "[e]ven assuming the continued retention of plaintiffs' personal property is wrongful, no procedural due

process violation has occurred 'if a meaningful postdeprivation remedy for the loss is available.'" *Id.* at 561 (*quoting Hudson*, 468 U.S. at 533). But, that's not the circumstance presented here.

Finally, the fact is that even if post-deprivation remedies were adequate for the deprivation at issue here, the Stoughton Defendants' case citations do not undercut the conclusion this Court already reached—that sovereign immunity may bar a conversion or replevin action from proceeding. As the Court observed, the Massachusetts Tort Claims Act provides that there is no waiver of sovereign immunity for "any claim arising out of an intentional tort" or "any claim arising in respect of . . . the lawful detention of any goods or merchandise by any law enforcement officer." *See* M.G.L. c. 258, § 10(c)-(d).

The Stoughton Defendants attempt to rely (p. 11) on *Baker v. Gray*, 57 Mass. App. Ct. 618, 785 N.E.2d 395 (2003), but this doesn't help them. That action was grounded in 42 U.S.C. § 1983, not Massachusetts law, and the court expressly recognized that "the plaintiffs cannot recover against Gray under 42 U.S.C. § 1983 even if he did violate their rights under [state law], in seizing their certificate of number, so long as he did not also violate their rights under the due process clause of the Fourteenth Amendment to the United States Constitution." *Id.* at 624. (Generally stated, states are not free to refuse to hear § 1983 claims. *See Haywood v. Drown*, 556 U.S. 729, 735-36 (2009).) So, this case did not concern the scope of waiver under the Massachusetts Tort Claim Act at all, and indeed, it does not cite the Act.

Next, the Stoughton Defendants (p. 11) cite *Damon v. Hukowicz*, 964 F. Supp. 2d 120 (D. Mass. 2013), to claim that "[l]aw enforcement officers may be liable for conversion for the retention of personal property." The problem is that the court did not actually uphold this claim. Rather, the court found that the claim failed on its merits because the defendant had not refused

to return the property, but had instead insisted on adhering to its procedures for property returns. *See id.* at 143-44. Certainly, the dicta in this decision indicates that an individual capacity conversion claim could survive M.G.L. c. 258, § 10(c), but this was not essential to the court's resolution of the case. Finally, in *Nelson v. Salem State College*, 446 Mass. 525, 845 N.E.2d 338 (2006), the Supreme Judicial Court did state that "public employees may be personally liable for their *intentionally* tortious conduct under" the invasion-of-privacy statute. *See id.* at 537 (emphasis added). However, even accepting this, it doesn't address the fact that the Stoughton Defendants claim their actions were *accidental*, not intentional.

Moreover, the Stoughton Defendants' motion does nothing to explain why M.G.L. c. 258, § 10(d) does not bar the claim since, on its face, it refuses to waive immunity as to "any claim arising in respect of . . . the lawful detention of any goods or merchandise by any law enforcement officer." In *Vining v. Commonwealth*, 63 Mass. App. Ct. 690, 828 N.E.2d 576 (2005), the Commonwealth argued that this exception was "a broad immunity from any and all claims originating from the lawful detention of property by any law enforcement officer," and the court "f[ou]nd the interpretation urged by the Commonwealth to be persuasive." *See id.* at 692-93. And, in *Laurore v. O'Hearn*, No. 15-P-1455, 2017 WL 657646 (Mass. App. Ct. Feb. 17, 2017), the court relied on *Vining* to find that "under the § 10(d) exception to the Act, a 'law enforcement officer' is immune from [an] action" seeking to recover for detained and destroyed property. *See id.* The first named defendant in that action was the individual defendant that had detained and destroyed the property. *See id.* And, further proof of the insufficiency of state tort remedies is found in *LaPage v. Dennehy*, 27 Mass. L. Rep. 357 (Mass. Sup. Ct. Sept. 9, 2010). There, the court relied on § 2 of the Act to dismiss all negligence-based claims against the individual correction officers who had allegedly deprived the plaintiff of his personal property,

and it also found that § 10(d) of the Act precluded their assertion against the Commonwealth. *See id.* at 357. In other words, to the extent the loss was "accidental" (*i.e.* what the Stoughton Defendants claim here), there was no relief available in a state tort action. And notably, that court there found that the plaintiff's § 1983 claims against the individual defendants survived, not that the existence of state tort claims made it unavailable. *See id.* at 358.

Last, the Stoughton Defendants' argument (p. 14) that Plaintiff Powell "had a sufficient post-deprivation remedy through his criminal case," is in apparent disregard to the fact that his property was not taken in conjunction with that case. Indeed, the decision they cite, *Bumps v. Trasavage*, No. 1:18-cv-11839, 2020 WL 1083425 (D. Mass. Mar. 6, 2020), provides that "[w]hen property is seized *as part of a criminal investigation* and criminal charges are filed, as is the case here, post-deprivation procedural due process for the return of the property is available through the criminal court." *Id.* at *12 (emphasis added). That is simply not the case here

### III) *Monell* Precludes a Claim Against the Town of Stoughton—Not Against Defendants Holmes, O'Connor & McNamara

Put simply, the Stoughton Defendants' *Monell* argument gets everything backwards. *Monell* provides that a governmental body, like the Town of Stoughton, is not liable in a § 1983 action unless a policy, custom or practice of that body causes the plaintiff's injury. It does nothing to shield a government official from being named as an official capacity defendant on account of actions that the government official took.

While it is not at issue here, the application of the Eleventh Amendment, which shields "States" from suit, provides context. *See, e.g., Papasan v. Allain*, 478 U.S. 265, 276 (1986).[1] Notwithstanding the Eleventh Amendment bar, it is well established that "individuals, who, as

---

[1] The Eleventh Amendment does not shield local governments from suit. *See Northern Ins. Co. v. Chatham County*, 547 U.S. 189, 193 (2006).

officers of the State, are clothed with some duty in regard to the enforcement of the laws of the State . . . violating the Federal Constitution, may be enjoined by a Federal court of equity from such action." *Ex Parte Young*, 209 U.S. 123, 155-56 (1908); *see also, e.g., Rosie D. ex rel. John D. v. Swift*, 310 F.3d 230, 234 (1st Cir. 2002). In addition, individuals sued in their personal capacity are liable for damages, subject to the judicially created qualified immunity doctrine (discussed *infra*). *See Hafer v. Melo*, 502 U.S. 21, 30-31 (1991).

Here, the complaint alleges that Defendants Holmes and O'Connor both took actions that resulted in Plaintiff Powell being deprived of property interests.[2] Specifically, Defendant Holmes took custody of Plaintiff Powell's guns and other property on November 29, 2015. *See* Third Amended Complaint (Doc. No. 78) at ¶ 37. After Plaintiff Powell repeatedly contacted Defendant Holmes to attempt to obtain the return of his property, Defendant Holmes told him that he would return the property to a licensed dealer in Rhode Island (where Powell had moved) if Powell obtained a license there. *See id.* at ¶¶ 39-40. Plaintiff Powell then obtained that license, and Defendant Holmes referred him to Defendant O'Connor. *See id.* at ¶¶ 41-42. Defendant O'Connor then told Plaintiff Powell "that his guns and other property had been sent out for 'disposal' and could not be returned." *Id.* at ¶ 43. As it turned out, Defendant O'Connor had turned custody of Plaintiff Powell's property over to Village Gun Shop, Inc. on October 3, 2016, less than one year after Defendant Holmes had taken custody of that property. *See id.* at ¶ 44. As a result, the Defendants acted to conclusively deprive Plaintiff Powell of property interests, and they did so without providing him with notice or an opportunity to be heard. *See id.* at ¶¶ 114-16,

---

[2] While Plaintiffs' § 1983 claim includes Chief McNamara as a Defendant, nothing at the present time indicates that she was personally involved in the deprivation of Plaintiff Powell's property, so a dismissal of these claims as to her, *without prejudice*, would be proper. Had the Plaintiffs been consulted in advance of this motion, we would have assented to this relief.

120. This states a valid claim for prospective relief (*i.e.* a declaratory judgment) against the Defendants in their official capacities, and it states a claim for damages against the Defendants in their personal capacities. *See id.* at Prayer (i)-(ii). The Plaintiffs have sued Defendants Holmes, O'Connor and McNamara in both their official and personal capacities. *See id.* at p. 1 (caption).

The Stoughton Defendants' argument to the contrary relies on a dramatic misreading of *Monell*. There, the Court ruled that "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691 (emphasis in source). Rather, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. This means that Plaintiff Powell cannot assert a § 1983 claim *against the Town of Stoughton* unless there is evidence that a policy, custom or practice of the Town of Stoughton proximately caused his injury. It does not, as Defendants would have it, mean that Plaintiff Powell cannot maintain a § 1983 action against the individual municipal employees who caused his injury. Put simply, the Supreme Court has not overruled *Ex Parte Young* and *Hafer v. Melo*.

The Stoughton Defendants' case citations are not on point. It is generally true (p. 15) that "[a] § 1983 suit brought against a police officer or chief of a municipal police department in his or her official capacity is a suit against the municipality itself." But this argument, and the Stoughton Defendants' case citations, miss the point. *Ex Parte Young* permits suits to proceed against government officials "in their official capacities to compel them to comply with federal law." *Monjitas v. Irizarry*, 587 F.3d 464, 478 (1st Cir. 2009) (*citing Ex Parte Young*, 209 U.S. 123) The rationale is that "since a state could not authorize an official to violate federal law, by

doing so, a state official is stripped of her authority and thus a suit against her does not implicate the state's sovereign immunity." *Monjitas v. Irizarry*, 587 F.3d 464, 478 (1st Cir. 2009) (*citing Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 102-03, 105 (1984); *Ex Parte Young*, 209 U.S. at 159-60); *see also, e.g., Verizon Md. Inc. v. Public Serv. Comm'n*, 535 U.S. 635, 648 (2002) ("the doctrine of *Ex parte Young* permits Verizon's suit to go forward against the state commissioners in their official capacities"); *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985).

### IV) Qualified Immunity Does Not Apply

Qualified immunity does not shield the Stoughton Defendants because "[w]here persons are deprived of property interests, it has long been 'clearly established' that due process safeguards must be afforded." *Amsden v. Moran*, 904 F.2d 748, 752 (1st Cir. 1990) (*citing Paul v. Davis*, 424 U.S. 693, 711 (1976); *Board of Regents v. Roth*, 408 U.S. 564, 569-70 (1972)); *see also, e.g., Maguire v. Municipality of Old Orchard Beach*, 783 F. Supp. 1475, 1483 (D. Me. 1992) (clearly established property rights in car seized by police); *Dragonwood Conservancy, Inc. v. Felician*, No. 16-CV-534, 2019 WL 318400, *24 (E.D. Wis. Jan. 24, 2019) ("a reasonable jury could conclude that the defendants violated their clearly established constitutional rights when they seized the plaintiffs' firearms without a warrant and without any other lawful basis"). Section 129D recognizes an ongoing property interest in favor of the owner by providing that, after surrendering guns and ammunition to police officials, the owner "shall have the *right*, at any time up to 1 year after the delivery or surrender, to transfer the firearms, rifles, shotguns and machine guns and ammunition to any licensed dealer or any other person legally permitted to purchase or take possession." M.G.L. c. 140, § 129D (emphasis added). It is not a situation where the firearms at issue were illegally possessed and contraband. *See, e.g., Baird v. Holton*, 806 F. Supp. 2d 53, 59 (D.D.C. 2011).

The Stoughton Defendants argue (p. 6) that Plaintiffs "cannot show that any alleged right was 'clearly established' at the time of the officers' alleged misconduct," but significantly, they do very little to articulate what the "alleged right" even is. In the only articulation they offer (p. 7), they try to characterize the right at issue as a failure to "follow all of the terms of § 129D." Of course, that's not the claim that Plaintiff Powell has put forward. Rather, his claim is that the Stoughton Defendants "deprived Plaintiff of his property interests in the guns and other items" that they had taken custody of from him. Third Amended Complaint ¶ 114. And as to the existence of that right, the only real pertinence of § 129D is that it reflects the understanding that Plaintiff Powell's property right continued to exist for a period of one year.

Presumably, the Stoughton Defendants intend to argue not that there isn't a clearly established right to have non-contraband chattel property returned, but rather, that issues surrounding the application of the *Parratt-Hudson* doctrine result in the right being unclear. This, however, confuses the issue of whether the right was clearly established with the question of what process was due. The question of whether the *right* was clearly established turns on "(1) 'the clarity of the law at the time of the alleged civil rights violation,' and (2) whether, given the facts of the particular case, 'a reasonable defendant would have understood that his conduct violated the plaintiff['s] constitutional rights.'" *Glik v. Cunniffe*, 655 F.3d 78, 81 (1st Cir. 2011) (*quoting Barton v. Clancy*, 632 F.3d 9, 22 (1st Cir. 2011)). There does not need to be "a case directly on point, but existing precedent must have placed the . . . constitutional question beyond debate." *Id.* (*quoting Ashcroft v. Al-Kidd*, 563 U.S. 731, 739 (2011)) (alteration in source).

As Judge Lipez observed in his concurrence in *San Gerónimo*, "[i]t has been clearly established for more than a half-century that 'a deprivation of life, liberty, or property [ordinarily must] be preceded by notice and opportunity for hearing appropriate to the nature of the case.'"

-13-

*San Gerónimo*, 687 F.3d at 499 (Lipez, J., concurring) (*quoting Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985)) (internal quotations and other citation omitted) (alteration in source). Furthermore, the qualified immunity issue does not "turn on whether it was clear that the circumstances fit the mold of *Zinermon* rather than *Parratt-Hudson*." *Id.* "Uncertainty about the applicability of *Parratt-Hudson* is irrelevant to the qualified immunity analysis because the *Parratt-Hudson* [doctrine] has nothing to do with the rationale for protecting officials from damages liability: to eliminate the risk that, in areas where the law is not clearly established, officials will refrain from independently acting in the public interest for fear of being sued." *Id* at 499-500 (*citing Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982)).

Consider an example. Certainly, it is clearly established that people have an entitlement to not be intentionally shot by police officers acting without justification. *See, e.g., Fernandez v. Leonard*, 784 F.2d 1209, 1216 (1st Cir. 1986) (citations omitted). Yet, *Parratt-Hudson* considerations would likely make it clear that pre-deprivation remedies were impractical, given the nature of the conduct at issue. But, the fact that due process did not require notice or a hearing in advance would not change the fact that right not to be shot was clearly established, and that an aggrieved plaintiff should recover damages.

The right asserted here isn't a claim to something like a government benefit or entitlement, where there might be a serious question about whether or not that entitlement was sufficiently established and definite to be a "property right." *See, e.g., Castle Rock v. Gonzales*, 545 U.S. 748, 755-68 (2005) (finding no property right in a restraining order issued against a former spouse). Rather, the right here is the right to possess chattel property, and the statute at issue expressly recognizes an ongoing "right" in that property, even after its seizure. There is no serious doubt that the Commonwealth of Massachusetts recognizes property rights in chattels,

including guns, and from that premise, it is clearly established that "due process safeguards must be afforded" if a person is to be "deprived" of them. *See Amsden*, 904 F.2d at 752 (citations omitted); *see also San Gerónimo*, 667 F.3d at 499 (Lipez, J., concurring) (citations omitted). Indeed, the entire premise of the Stoughton Defendants' appeal to post-deprivation tort remedies is their claim (p. 11) that "Powell could have brought an action against the individual officers for conversion or replevin." While it appears that this claim might well fail due to sovereign immunity, the entire premise of the argument is that Plaintiff Powell already has a right, recognized under Massachusetts law, to obtain the return of his property. *See In re Hilson*, 448 Mass. 603, 611, 863 N.E.2d 483 (2007) ("The elements of conversion may be established by a showing that one person exercised dominion over the personal property of another, without right, and thereby deprived the rightful owner of its use and enjoyment.") (*citing Spooner v. Holmes*, 102 Mass. 503, 506 (1869)). No objectively reasonable officer would have felt they were free to conclusively deprive an individual of their chattel property without providing any process.

### V) Count III States a Valid Claim for Civil Conspiracy

The "standard" form of civil conspiracy, patterned on section 876 of the Restatement (Second) of Torts, imposes vicarious liability on for an underlying tort. *See Taylor v. Am. Chemistry Council*, 576 F.3d 16, 34 (1st Cir. 2009). But, contrary to the Stoughton Defendants' claims (pp. 16-17), Plaintiffs' civil conspiracy claim is not "merely based on the allegation that O'Connor did not comply with M.G.L. c. 140, § 129D." Rather, Plaintiffs' claim is that two of the Stoughton Defendants—O'Connor and McNamara, who were the ones in charge of the relationship with Defendant Village Gun Shop, Inc. d/b/a Village Vault—provided substantial assistance and encouragement to Village Vault, even though they knew that, under § 129D, Village Vault was not the party that held beneficial title to guns and other items that had been left at the police department for more than a year. *See* Third Amended Complaint at ¶¶ 127-30; *see*

*also id.* at ¶¶ 48, 58 (role of O'Connor and McNamara). This enabled Village Vault to take custody of guns and other property to which Village Vault had no claim. *See id* at ¶ 131. This was part of a longstanding arrangement whereby Village Vault acquired guns owned by the Commonwealth from the Stoughton Defendants in exchange for for "credits" and other consideration, which Village Vault then sold for its own benefit. *See id.* at ¶ 46. "Key to this cause of action is a defendant's substantial assistance, with the knowledge that such assistance is contributing to a common tortious plan." *Kurker v. Hill*, 44 Mass. App. Ct. 184, 189, 689 N.E.2d 833 (1998).

The underlying tort isn't a violation of § 129D, but is instead the violation of the False Claims Act. And, a claim under the False Claims Act is a claim sounding in tort. *See United States v. RePass*, 688 F.2d 154, 157 (2d Cir. 1982); *United States ex rel. Westmoreland v. Amgen, Inc.*, 738 F. Supp. 2d 267, 271-72 (D. Mass. 2010). And, while M.G.L. c. 258, § 10(c) disclaims a waiver of sovereign immunity pursuant to "sections one to eight" of the Massachusetts Tort Claims Act, *see id.*, this is irrelevant if there is otherwise a basis for finding that sovereign immunity does not apply. Of course, that is a key issue that is otherwise pending before the Court right now, with respect to the Massachusetts False Claims Act.

To be fair, the question is likely somewhat academic. The False Claims Act imposes joint and several liability on tortfeasors who act together. *See, e.g., United States v. O'Connell*, 890 F.2d 563, 565 (1st Cir. 1989); *United States v. Aerodex, Inc.*, 469 F.2d 1003, 1013 (5th Cir. 1973); *United States v. Bd. of Educ. of Union City*, 697 F. Supp. 167, 177 (D.N.J. 1988). Just the same, it is difficult to see how the pendency of this claim causes any real prejudice or harm to the Stoughton Defendants. Suffice it to say that if the underlying tort claim can be asserted, then there is no reason that the derivative conspiracy claim cannot also be asserted.

**VI) Conclusion**

The Stoughton Defendants' unexpected and untimely motion does not raise any substantial defense, and indeed, to a substantial extent it raises issues the Court has already addressed. The Court should deny it.

Dated: October 21, 2020

>Respectfully submitted,
>
>THE PLAINTIFFS,
>By their attorneys,
>
> /s/ David D. Jensen
>David D. Jensen
>David Jensen PLLC
>33 Henry Street
>Beacon, New York 12508
>Tel:  212.380.6615
>Fax:  917.591.1318
>david@djensenpllc.com
>
>Margarita Smirnova, Esq.
>BBO No. 680429
>7 Greenbriar Drive, Unit 109
>North Reading, Massachusetts 01864
>Telephone: (617) 875-8663
>margarita.smirnova@gmail.com

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on Oct. 21, 2020.

> /s/ David D. Jensen
>David D. Jensen