## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COMMONWEALTH OF MASSACHUSETTS *ex rel.* MYKEL POWELL, *et al.*, | CIVIL ACTION NO. 1:18-cv-11336-FDS |
| Plaintiffs, | |
| -against- | **PLAINTIFFS' REPLY IN SUPPORT OF LEAVE TO FILE A FOURTH AMENDED COMPLAINT** |
| BRIAN HOLMES, *et al.*, | |
| Defendants. | |

Plaintiffs, in their moving papers, showed that the Court should grant leave because:

1)  The proposed amendment responds to the issues the Court identified in its decision and order, and while it is ostensibly the "fourth" amendment,[1] it is the first one that seeks to address deficiencies in the claims that have been pleaded, *see* Plfs. Br. (Doc. No. 128) pp. 4, 6-8;

2)  The proposed amendment does not expand the claims in this case, for both before and after the amendment this case concerns 30 gun transfers that 15 police departments made between March 2013 and April 2018, *see id.* pp. 1-2;

3)  There is little or no undue prejudice in granting leave because this case will still require the same proof at trial—the particulars of the 30 gun transfers—which will turn on the same evidentiary proof, *see id.* pp. 1-2, 7; and

4)  On the other hand, the denial of leave would be very prejudicial because False Claims Act claims can <u>only</u> be asserted in this action—meaning that if leave is denied, the ability to bring the claims against the defendants will forever be lost, *see id.* pp. 2, 6-7.

In response, the individual police officials who would be impleaded (the "Individual Defendants") respond by alleging procedural slights and prejudice, while relegating the key issue—whether or not the claims are cognizable when stated against the Individual Defendants in

---

[1] While Plaintiffs prepared a "second" amended complaint, the current third amended complaint was filed instead. (Both amendments had sought to implead additional police departments and transctions.)

their individual capacities—to a short section at the end of their brief. But we respectfully submit that this is indeed the key issue. If the claims are cognizable, then the prejudice from allowing amendment is slight (because the same case still has to be put on trial), while the prejudice from denying amendment is huge (because it becomes impossible to hold the police officials who made the unlawful transfers responsible). Thus, we begin by addressing the Individual Defendants' arguments about common law immunity in the context of individual capacity claims, and then return to address their Local Rule 15.1 and prejudice claims.[2]

**I)      The Individual Claims Are Not Futile**

The Individual Defendants argue that amendment would be futile because common law immunity precludes the claims asserted against them in their individual capacities. *See* Opp. Br. pp. 13-15. But contrary to the Individual Defendants' arguments, common law immunity does not apply because the Individual Defendants were not acting within their discretion, and in any event, they were not acting in good faith, but were instead agreeing to act in contravention of their legal obligations in exchange for consideration.

Like the previous complaints, the Fourth Amended Complaint asserts that the various police defendants had a <u>nondiscretionary</u> duty to "turn[] . . . guns over to State Police, for the benefit of the State Treasurer, as the law mandates." *See* Fourth Amended Complaint ¶ 1; *see also id.* ¶¶ 36, 52, 54, 56, 62, 64, 66, 69, 71, 73, 76, 78-79, 81, 83, 85, 87, 89, 91, 93, 95-96, 98-99, 101, 103-04, 106, 108, 110, 112, 123-27; *see also, e.g.,* Complaint (Doc. No. 1) ¶¶ 1, 18, 46-50. The Plaintiffs have never asserted that (for example) the police officials improvidently

---

[2] The Individual Defendants devote several pages to disclaiming official-capacity liability. *See* Opp. Br. pp. 10-13. However, the Fourth Amended Complaint names each Individual Defendant "in his [or her] individual capacity," not in their official capacities, so we ignore the attempted diversion. *See* Fourth Amended Complaint (Doc. No. 128-1).

exercised a discretionary authority to do as they pleased with the guns and ammunition they had

held for more than a year. Rather, with respect to that issue—the disposition of one-year guns—

the statute uses mandatory language to direct that such guns and ammunition "shall be sold at

public auction by the colonel of the state police . . . and the proceeds shall be remitted to the state

treasurer." M.G.L. c. 140, § 129D. Indeed, in its previous decision, this Court correctly observed

that the basis of Plaintiffs' "reverse" false claim is that the MFCA "imposes liability for reverse

false claims when a person avoids an <u>obligation</u> to pay or transfer property to the

Commonwealth." *See* Memorandum and Order (Doc. No. 120) p. 26 (citing M.G.L. c. 12, §

5B(a)(9)) (emphasis added).

      This fact—that § 129D imposes an obligation to remit property to the Commonwealth,

not the discretion to do so—readily and properly distinguishes every single case that the

Individual Defendants cite. *See* Opp. Br. pp. 13-15.

      Specifically, *Nasir v. Town of Foxborough*, No. 19-cv-11196-DJC, 2020 WL 1027780

(D. Mass. Mar. 3, 2020), concerned police officers who assisted a woman in moving out of her

husband's home, and there was no dispute that the officers' decision to assist the woman was an

act of discretion—something they were not required to do, nor prohibited from doing. *See id.* at

*17. Likewise, *Nelson v. Salem State College*, 446 Mass. 525 (2006), concerned campus safety

officers who installed a hidden camera to investigate criminal activity and then unwittingly

recorded the plaintiff changing her clothes. *See id.* at 529-30. The defendants were "act[ing]

within their discretion by implementing an investigatory policy to use a surveillance camera." *Id.*

at 538.

      Many of the decisions the Individual Defendants invoke concern local officials who

exercised discretion to approve or disapprove of permits or approvals, or to manage ongoing

projects—which stand in marked contrast to the issue presented here, where a statute directs local officials to act in a particular manner. For example, *Najas Realty, LLC v. Seekonk Water Dist.*, 821 F.3d 134 (1st Cir. 2016), concerned a water official's decision to oppose approval of a residential development—something that was on its face a discretionary determination. *See id.* at 139. Indeed, the court did not even address the issue of discretion at any significant length. *See id.* at 146. *South Boston Betterment Trust Corp. v. Boston Redevelopment Auth.*, 438 Mass. 57 (2002), concerned a tortious interference claim that arose out of a mayor's decisions and communications in managing and overseeing a redevelopment project. *See id.* at 61-62, 68. Again, the underlying conduct was inherently discretionary. *Foster from Gloucester, Inc. v. City Council of Gloucester*, 10 Mass. App. Ct. 284 (1980), concerned a local government's decision to revoke a business's licenses to sell and store diesel fuel due to the business's violation of local restrictions. *See id.* at 288-89. Once again, this was plainly discretionary; the standard of review was whether the local government had acted arbitrarily and capriciously. *See id.* at 296. *Lee v. Quincy Housing Auth.*, No. 16-11631-RGS, 2017 WL 402972, at *2 (D. Mass. Jan. 30, 2017), contains the statement that a defendant official "cannot be liable for an intentional tort if she 'acted in good faith, without malice, and without corruption,'" *see id.* at *6 (*quoting Nelson v. Salem State College*, 446 Mass. 525, 537 (2006)). However, the context of that case was a decision by a local housing administrator to deny an individual a Section 8 voucher based on a finding that the plaintiff had repeatedly violated lease conditions—a decision that, again, is discretionary on its face. *See id.* at *3.

The remainder of the Individual Defendants' cases likewise concern discretionary determinations, like the decision to adopt a policy, or the decision to withhold exculpatory evidence. Specifically, the decision in *Duarte v. Healy*, 405 Mass. 43 (1989), concerned an

official's decision to adopt a policy requiring drug testing and directing the termination of certain employees who failed it. *See id.* at 50. And, *Echavarria v. Roach*, No. 16-cv-11118-ADB, 2017 WL 3928270 (D. Mass. Sept. 7, 2017), concerned the alleged fabrication of evidence and withholding of exculpatory evidence during a criminal investigation—decisions that would have intrinsically between discretionary—and in any event focused on the issues of malice and corruption. *See id.* at *30-31. The remaining cases do not address discretion at all. *See Brothers v. Town of Millbury*, No. 14-10122-TSH, 2014 WL 4102436, at *20-21 (D. Mass. Aug. 14, 2014) (wrongful termination case that focused on whether the evidence supported a finding of malice); *Spiegel v. Beacon Participations, Inc.*, 297 Mass. 398, 416 (1937), *overruled*, *Donahue v. Rodd Electrotype Co.*, 367 Mass. 578 (1975) (shareholder lawsuit that discussed the meaning of the term "bad faith" in the context of corporate management, but is otherwise oblique); *McGurk v. Cronenwett*, 199 Mass. 457, 461-62 (1908) (malicious interference claim that discussed the meaning of the term "malice" in that context).

Far more on point than any of these cases is *Breault v. Chairman of the Board of Fire Commissioners*, 401 Mass. 26 (1987), where state law required the defendant official to reinstate the plaintiff employee after a period of leave ended. *See id.* at 33-34. The conduct at issue there—like the conduct at issue here—was not discretionary because the statute used mandatory "shall" language to direct the defendant to take a particular course of action. *See id.* & nn.7-8.

Apparently recognizing that the acts at issue were not discretionary, the Individual Defendants instead attempt to deflect attention to the question of whether they acted in bad faith, with malice or corruptly—even though this question arises only in connection with acts that are discretionary. *See Breault*, 401 Mass. at 33, 37-38 (declining to address bad faith issues because the conduct at issue was not discretionary) (citations omitted). But in any event, the Individual

Defendants' argument would fail because this case concerns acts that were corrupt. That is, this case asserts that even though the Individual Defendants were obligated to turn over possession of guns and other items to the State Police, they instead agreed to turn over possession to Village Vault because Village Vault and Dowd offered to give them things of value in return, all in violation of Massachusetts laws that prohibit bribery. *See, e.g.*, Third Amended Complaint (Doc. No. 78) at ¶¶ 137-39. Indeed, this scheme is the "pattern of racketeering activity" that gives rise to Plaintiffs' RICO claim against Dowd. *See id.* at ¶ 140.

And on that point, the Individual Defendants cite various cases that for the most part concern situations where there was simply no indication of bad faith, malice or corruption. *See, e.g., Nasir*, 2020 WL 1027780 at *18; *Nelson*, 446 Mass. at 537-38; *S. Boston Betterment Tr.*, 438 Mass. at 69. *But see Echavarria*, 2017 WL 3928270 at *30-31 (claim that defendants fabricated evidence and withheld exculpatory evidence states claim of malice and corruption). But that is not the situation presented here, where a key part of the scheme at issue is bribery—providing consideration in order to induce an official to take action. None of the decisions that the Individual Defendants invoke concern this situation.

## II)       There is No Undue Prejudice

In their moving papers, the Plaintiffs pointed out that the inclusion of the Individual Defendants will cause little undue prejudice because the case that is already pending will require the same proof from the same witnesses. Indeed, inclusion of the Individual Defendants would be likely to advance judicial economy because it would make it easier to get the evidence in front of the Court. The Plaintiffs pointed out that the municipalities that were recently dismissed as defendants will almost certainly need to indemnify the Individual Defendants, meaning that there is little practical difference between the claims asserted in the Third Amended Complaint and the proposed Fourth Amended Complaint.

The Individual Defendants—all represented by the same attorneys who represented their municipal employers—dispute almost none of this. They do not claim that the municipalities do not need to indemnify them, nor that the evidence needed at trial will not be the same, nor that the actual parties in interest—the underlying localities—are not already on notice of this matter. To the contrary, the Individual Defendants agree with this, describing themselves as "Potemkin villages for the Municipality Defendants." Opp. Br. p. 2.

Rather than disputing any of this, the Individual Defendants assert undue prejudice because: (1) "discovery has already closed with the limited exception of depositions"; (2) other Defendants will allegedly suffer prejudice in that they may have to wait to file summary judgment motions; and (3) the Court may need to decide a motion to dismiss. *See* Opp. Br. pp. 15-16. But to the extent these are even "prejudices," they are not undue.

Plaintiffs already submitted written discovery requests on the other Defendants and served subpoenas on the municipal police departments that employ (or employed) the Individual Defendants. So, there is not a great deal of written discovery that remains—regardless of whether the Individual Defendants are impleaded or not. And, to whatever extent that it is necessary to obtain additional documents from the Individual Defendants to put the current case on trial, this will be necessary regardless of whether leave is granted or denied. The current schedule does not preclude the use of subpoenas to obtain records and testimony (although it would be more efficient to use discovery requests). There is no undue prejudice here; this is simply what will need to be done to put the case that is already pending on trial.

The Individual Defendants' second claim of prejudice is entirely hollow. Rule 56 expressly provides that "[u]nless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment <u>at any time</u> until 30 days after the

close of all discovery." Fed. R. Civ. P. 56(b) (emphasis added). The Individual Defendants do not point to any local rule or court order that would prohibit the Defendants from moving for summary judgment whenever they choose. Thus, contrary to the Individual Defendants' argument, granting leave will not prejudice the current Defendants by preventing them from filing for summary judgment, or mandating that they do so at some point in the future.

Finally, the Individual Defendants' claim about a motion to dismiss is largely empty because the Court's decision on this motion will indicate whether the proposed amendment states a claim or not. That is, if the proposed amendment states a claim, then it is not futile. Certainly, it is possible that the Individual Defendants might ignore the Court's ruling and file a motion to dismiss anyway, but if so, the solution there is to prevent the Individual Defendants from refusing to participate in the remaining discovery in the case pending resolution of their motion. The Individual Defendants cannot simply manufacture prejudice by threatening to bring a Rule 12(b)(6) motion that would already be foreclosed by this Court's decision.

Aside from not showing the existence of any undue prejudice, the Individual Defendants also do nothing to counter the Plaintiffs' showing that the denial of leave would be extremely prejudicial to them—and to the Commonwealth of Massachusetts, which stands to recover as the actual party in interest. This is because (once again) it is impossible for the Plaintiffs to assert the claims at issue in this action in any forum but this action. If the Plaintiffs cannot implead the Individual Defendants, then their ability to recover from most of the responsible parties will disappear.

### III)   The Local Rule 15.1 Claims are Meritless

Local Rule 15.1 directs a party seeking to implead additional parties to "serve, in the manner contemplated by Fed. R. Civ. P. 5(b), the motion to amend upon the proposed new party

at least 14 days in advance of filing the motion, together with a separate document stating the date on which the motion will be filed." Local Rule 15.1(b). As is relevant here, Rule 5(b) provides (first) that "[i]f a party is represented by an attorney, service under this rule must be made on the attorney unless the court orders service on the party." Fed. R. Civ. P. 5(b)(1). Next, Rule 5(b) provides that "[a] paper is served under this rule by . . . mailing it to the person's last known address—in which event service is complete upon mailing." *Id.* 5(b)(2)(C). In light of the explicit direction in Rule 5(b)(1), Plaintiffs served the attorneys representing the municipalities who employ (or employed) the Individual Defendants. *See* Jensen Dec. (Doc. No. 129) ¶¶ 2-3. Those exact same attorneys have now appeared on behalf of those Individual Defendants to oppose this motion. *See* Opp. Br. p. 18 (signature block).[3] Thus, Plaintiffs complied with the direction in Rule 5(b)(1).

The Individual Defendants claim that service was improper because "[w]hile [Rule] 5(b) allows a party to serve by leaving a copy of papers at the person's office, it does not permit simply mailing papers to a person's office." Opp. Br. p. 8. This argument is bizarre and unfounded. Rule 5(b)(2)(C) explicitly authorizes service "by . . . mailing it to the person's last known address." The Individual Defendants' last known addresses are at the respective police departments; the Plaintiffs do not have these individuals' home addresses. Likewise, the last known addresses of the Individual Defendants' attorneys are the ones that are in the appearances filed in this Court.

---

[3] On the issue of relation back under Rule 15—which the Individual Defendants have not raised—the fact that a subsequent party has the same attorney as a previous party is a factor showing constructive notice. *See Nettles v. Hilton Worldwide*, No. 4:18-CV-4102-LLP, 2020 U.S. Dist. LEXIS 223722, at *19 n.4 (D.S.D. Nov. 30, 2020).

The Individual Defendants also assert that the Plaintiffs failed to comply with Local Rule 15.1 because they sent courtesy copies of the papers by email. *See* Opp. Br. pp.7-8. Nothing in Local Rule 15.1 or Rule 5(b) prohibits parties from sending additional courtesy copies by email.

Finally, the Individual Defendants assert that the Plaintiffs failed to comply with Local Rule 15.1 because the attorneys allegedly did not represent the Individual Defendants until a few days ago. Significantly, aside from averring that they were only recently retained, the attorneys for the Individual Defendants do not provide any documentary support or details. They do not provide copies of newly signed retention agreements, nor do they provide dates they were purportedly retained, or any proffer that they were previously terminated. And indeed, for at least one attorney the claim of non-representation is demonstrably false. *See* Jensen Dec. (submitted herewith) ¶¶ 2-3. It was entirely reasonable for the Plaintiffs to send the proposed amendment to the attorneys who represented the municipalities who employ(ed) the Individual Defendants, and who have now formally appeared as their attorneys.

## IV)     The Plaintiffs Have Been Diligent

The Plaintiffs showed that they have been diligent in bringing these claims forward because they sought leave to add the Individual Defendants promptly after the Court concluded that the claims against their employers were not cognizable. *See* Pl. Br. pp. 5-8. Previously, the Court granted the Plaintiffs leave to implead the municipal defendants, which had taken an extended period of time because Village Vault had destroyed its records, and the Plaintiffs had to piece together the various participants in the scheme by serving a series of subpoenas (87) throughout Massachusetts. The only thing that changed since then is that the Court granted a motion to dismiss the municipalities, resulting in the Plaintiffs seeking to cure the deficiency by impleading the municipal employees who are subject to suit.

The Individual Defendants argue that the Plaintiffs have not been diligent because the Plaintiffs knew of the Individual Defendants since last year and "[n]othing prevented Plaintiffs from attempting to add these proposed police officer defendants as part of their Third Amended Complaint." Opp. Br. p. 6. But this argument turns a blind eye to reality. The question of whether the municipalities were "persons" subject to suit under the MFCA was unresolved when the Plaintiffs filed the Third Amended Complaint. Indeed, aside from the decision this Court issued in June, it is still unresolved. Local governments are subject to suit under the federal False Claims Act, and states interpreting state-level false claims acts have resolve the question differently. *See Cook County v. United States ex rel. Chandler*, 538 U.S. 119, 126 (2003) (citations omitted); *Wells v. One2One Learning Found.*, 39 Cal. 4th 1164, 1193 (Cal. 2006); *State v. Bd. of Trs. of Ill. E. Cmty. Colleges*, 2019 IL App (5th) 180333, ¶ 13 (Ill. App. Ct. 5th Dist. 2019). Thus, it was not at all clear that it would be necessary to name the municipal employees in their individual capacities until the Court issued its decision.

In contrast, the decisions the Individual Defendants rely upon all concern situations in which there was no real doubt that it would be necessary to implead the additional parties. *See* Opp. Br. p. 6. In *Tubens v. Columbo*, No. 17-11388-LTS, 2020 WL 759379 (D. Mass. Feb. 14, 2020), the claims concerned alleged civil rights violations in connection with the plaintiff's arrest, and the plaintiff had filed suit against unnamed "John Doe officers." *See id.* at *3. Because of jurisprudence like *Ex Parte Young*, 209 U.S. 123 (1908), it was clearly established law that the plaintiff would need to name the individuals who had effected the arrest. The decision in *Stuart v. Town of Framingham*, No. 16-cv-12559, 2018 WL 11241962 (D. Mass. Nov. 15, 2018), is essentially inapposite, for there the party to be included was known from the outset of the case—literally, the party was named in the complaint. *See Federal Ins. Co. v. Fire*

*Sprinkler Tech.*, No. 1:20-cv-10403-ADB, *16 n.4 (D. Mass. May 10, 2021) (*citing and quoting Stuart*, 2018 WL 11241962). Finally, the reason the court denied leave in *Bean v. Bank of New York Mellon* is that the amendment did not "address[] the pleading deficiencies identified in the subject motion to dismiss" and "the amendments would be futile in light of the findings" the court had already reached. *See* No. 12-10930-JCB, 2012 WL 4103913, *1 n.2 (D. Mass. Sept. 18, 2012). That is just the opposite of the circumstances presented here.

V)      **Conclusion**

The Individual Defendants have failed to rebut the showing in Plaintiffs' moving papers. The claims are not futile because they concern nondiscretionary obligations, and in any event, because they all concern corruption. There is no undue prejudice in granting leave because the same essential case needs to be put on trial, regardless. But, there is a very large prejudice in denying leave because the claims cannot be asserted in another action. Finally, the Individual Defendants' attempt to manufacture a dispute out of Local Rule 15.1 fails. The Plaintiffs have complied with Local Rule 15.1 by its terms, and to whatever extent they have not, the deficiency is technical and not substantive. Thus, leave should be granted.

Dated: October 17, 2021

Respectfully submitted,

THE PLAINTIFFS,
By their attorneys,


 /s/ David D. Jensen
David D. Jensen
David Jensen PLLC
33 Henry Street
Beacon, New York 12508
Tel:  212.380.6615
Fax:  917.591.1318
david@djensenpllc.com

Margarita Smirnova, Esq.
BBO No. 680429
7 Greenbriar Drive, Unit 109
North Reading, Massachusetts 01864
Telephone: (617) 875-8663
margarita.smirnova@gmail.com

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that this document filed through the CM/ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)

and paper copies will be sent to those indicated as non-registered participants on Oct. 17, 2021.

 /s/ David D. Jensen
David D. Jensen