UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COMMONWEALTH OF MASSACHUSETTS *ex rel*. MYKEL POWELL, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>BRIAN HOLMES, *et al.*,<br><br>    Defendants. | Docket No. 1:18-cv-11336-FDS |

### NON-PARTY MUNICIPALITIES' JOINT MOTION TO QUASH PLAINTIFFS' SUBPOENAS

Now come the following municipalities: Andover, Chicopee, Dedham, Foxborough, Gardner, Hudson, Medford, Plymouth, Reading, Saugus, Springfield, Wakefield, Wilmington, and Winchester ("The Municipalities"), non-parties to the above-captioned case, and, indeed, *dismissed* parties to the above-captioned case, and respectfully request that this Honorable Court quash the Plaintiffs' subpoenas captioned, "Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action." Copies of the subpoenas are attached as **Exhibit 1.**

In support of this motion, the Municipalities jointly state that the materials requested in these subpoenas are not relevant to the instant action; are disproportionate to the stakes at issue in the case; that complying with the subpoena would be unduly burdensome and cost prohibitive; that they were issued in order to "discover" new potential claims and circumvent this Court's order dismissing the Municipalities.

On December 7, 2021, counsel participated in a Rule 7.1 conference on this motion. Immediately prior to the conference, defense counsel provided Plaintiffs' counsel with recently discovered material showing, unequivocally, that the allegations upon which the Plaintiffs base their reverse false claim were publicly disclosed as early as 2007, and, for that reason, the Plaintiffs' claims are barred by the public disclosure bar. **Exhibit 2 - December 7, 2021 email from Attorney Brody to Attorney David Jensen and attachments.** Plaintiffs' counsel understandably had not had a chance to review the materials prior to the telephonic 7.1 conference. Nonetheless, during the conference, Plaintiffs' counsel acknowledged that the reverse false claims act claims served as the basis for the subpoenas. After reviewing the material, on December 9, Plaintiffs' counsel indicated that he did not believe the documents provided prevent him from pursuing the reverse false claim and he would not withdraw the subpoenas.[1] **Exhibit 3 - December 9, 2021 email from Attorney Jensen to Attorney Brody.** In an attempt to avoid needless litigation, counsel wrote Attorney Jensen another email, explicitly identifying why Plaintiff cannot be considered an "original source" where the allegations that form the basis for the Plaintiffs' reverse false claims act claim were subject to "public disclosure" as those words are defined by G.L. 5G (c)(3). **Exhibit 4 - December 10, 2021 email from Attorney Brody to Attorney Jensen**. Counsel urged Plaintiffs' counsel to reconsider his position on the matter, and that if defense counsel was forced to litigate this claim, they felt they had no choice but to seek the costs and fees such litigation required. On December 13, 2021, counsel provided Attorney Jensen with the 2010 complaint that she had just received from the Norfolk Superior Court that further strengthened the Municipalities' contention that the Plaintiffs are not "original sources" of the claim on which they base their reverse false claims act claims.

---

[1] Or dismiss the claims, which, based on this material, are no longer viable.

2

**Exhibit 5 – December 13, 2021 email from Attorney Brody to Attorney Jensen.** Nonetheless, on December 14, 2021, Plaintiffs' counsel conveyed his intention to stay the course, and declined to voluntarily withdraw the subpoenas. The Defendants therefore move for expenses (costs and fees) for the Plaintiffs' steadfast refusal to withdraw his subpoenas, which are based entirely on a claim that is no longer viable. Since there is no longer a good faith basis for the requests contained in these subpoenas, the Municipalities ask the court to compensate the Municipalities for the cost of having to draft this motion to quash and litigate the motion.

## FACTS

As the Court knows, the Plaintiffs filed the immediate action in June 2018. (Dkt. #1) They filed a similar and related action in May 2017, which they voluntarily dismissed. (See Powell v. Holmes, et al., Case No. 1:17-cv-10776-FDS.) The purpose of this voluntary dismissal was for the Plaintiffs to reformulate their claims and target additional defendants, which they did, as mentioned, in June 2018. Plaintiffs then amended their complaint in the immediate action in February 2019. (Dkt. #10.) A year later, in the spring of 2020 through October 12, 2020, Plaintiffs served subpoenas on police departments[2] across Massachusetts. All told there were 86 subpoenas.[3] One such example of the subpoenas that were served on the Municipalities, which were functionally identical, is attached hereto as **Exhibit 6.** Between May 6, 2020 and July 16, 2020, the Plaintiff received responses from all of the Municipalities (again, with the exception of

---

[2] With the exception of Springfield, the Plaintiff served subpoenas on all of the Municipalities moving to quash.
[3] The subpoenas were sent to the following departments: Agawam, Andover, Arlington, Ashby, Attleboro, Auburn, Belmont, Beverly, Billerica , Braintree, Bridgewater, Brockton, Burlington, Cambridge, Canton, Chicopee, Concord, Danvers, Dedham, Dracut, Easton, Everett, Fairhaven, Fitchburg, Foxborough, Framingham, Franklin, Gardner, Gloucester, Grafton, Haverhill, Hudson, Lawrence, Leominster, Littleton, Lowell, Lynn, Malden, Marblehead, Medford, Methuen, Middleborough, Milford, Milton, New Bedford, Newbury, Newton, North Andover, North Attleboro, Northborough, North Reading, Norwood, Palmer, Peabody, Plymouth, Quincy, Randolph, Reading, Revere, Royalston, Saugus, Scituate, Shirley, Shrewsbury, Somerset, Somerville, Southborough, Southbridge, Stoneham, Stoughton, Swampscott, Swansea, Tewksbury, Wakefield, Walpole, Waltham, Wellesley, West Bridgewater, Westborough, Westfield, Westford, Wilmington, Winchester, and Woburn.

Springfield, *see* note 2). Based upon the responses to the subpoenas, Plaintiffs sought leave to file a second amended complaint (in this second action) in June 2020. (Dkt. #59 at 2-3.)

Plaintiffs then sought leave to file a *third* amended complaint in July 2020, again based upon subpoena responses from various police departments. (Dkt. #69 at 1-2.) That motion was opposed, in part, due to the futility of Plaintiffs' claims against the new defendants and in part due to the Plaintiffs' own delay. (Dkt. #74-1.) Though the objection was overruled and the Plaintiffs were allowed to file their Third Amended Complaint and assert claims against the Municipalities under the Massachusetts False Claims Act ("MFCA") (Dkt. #78), the Court ultimately dismissed these claims, ruling that the Municipalities could not be sued on the theory the Plaintiffs proposed. (Dkt. #120.).

Although the Court rejected their False Claims Act claims as against the Municipalities, the Plaintiffs, still harboring hope that the Court would allow claims against individual defendants to proceed for the same acts previously alleged and dismissed against the Municipalities, filed *another* motion to amend their complaint for the *fourth time*, which the proposed individual defendants opposed. That motion is currently pending before this court.

The Municipalities have been dismissed from the lawsuit and have *already* responded to voluminous discovery requests made by the Plaintiffs. See Exhibit 6. Nonetheless, in late November, the Plaintiffs served additional burdensome and oppressive subpoenas on the Municipalities. Exhibit 1.

Following service of the subpoenas, on December 6 and 7, the Municipalities discovered articles in the news media as well as two previous court cases showing, unequivocally, that the allegations which form the basis for his reverse false claim contained in both the Plaintiffs' complaint, *and* in the Plaintiffs' proposed complaint were "publicly disclosed" prior to the filing

4

of Plaintiffs' 2018 complaint, and *even* prior to the filing of the Plaintiffs' 2017 voluntarily dismissed complaint. Exhibit 2(b-f).

The Court in its Memorandum and Order (Dkt. 120) summarized the facts which give rise to the Plaintiffs' reverse false claims act claims as follows:

> The complaint alleges that Village Vault and Dowd maintain "arrangements" with several cities and towns in Massachusetts through which police departments transfer to Village Vault certain firearms that have been surrendered under Massachusetts law. (Id. ¶ 46). In exchange, Village Vault either pays the police departments by check or "credits" them an amount that can be used to make purchases from Village Vault. (Id. ¶¶ 46, 48). Village Vault then sells the firearms for its own profit. (Id. ¶ 47). The complaint identifies 15 municipalities—Stoughton and the fourteen named Municipality Defendants— that operate pursuant to such alleged agreements. (Id. ¶ 46).2 It details specific transactions between those municipalities and Village Vault, including the date of each transaction, the number of firearms transferred, and the payment or credit provided to the relevant police department. (Id. ¶¶ 50-112). It further alleges (on information and belief) that Village Vault and Dowd maintain similar arrangements "with police departments and/or police department personnel throughout the Commonwealth of Massachusetts. (Id. ¶ 49).

In the Plaintiffs' proposed fourth amended complaint, the Plaintiffs describe the same arrangement as that outlined above, but this also include additional proposed individual defendants (Plf's Fourth Amended Complaint (Dkt. # 127) ¶¶ 123-128) (describing the basis for his "reverse false claim).

Thus, the reverse false claim is based on the Plaintiffs' contentions that the following facts were *not* publicly disclosed prior to filing a complaint in 2018:

(1)   that firearms seized pursuant to non-criminal offenses were transmitted to Village Vault rather than the state police;

(2)   that individual departments or individual police officers received payments from Village Vault and did not submit them to the state treasurer;

(3)   that Village Vault retained the proceeds of the guns rather than remit payment to the state treasurer.

The material provided to Plaintiffs' counsel demonstrates that the same information the Plaintiffs allege constitute their reverse false claim have been reported in the news media public since 2007.

On August 28 2007, the Lowell Sun published an article that reporting that Tyngsboro was selling 100 firearms to Village Vault, and "[s]ome of the guns were seized after cases of domestic violence which made the owners ineligible to possess firearms." The article states:

> the Town Selectman recently approved the Chief Mulligan's plan to sell firearms and other select items in the evidence room. According to the chief, **the Department does not usually destroy firearms that have resale value**; **these are traded in to a firearms dealer** where they are reconditioned and resold. **This helps offset the cost of new firearms for its officers** (emphasis added).

Exhibit 2(c); *see also* Exhibit 2(b) (summary of the article was published in a "The Evidence Log," a publicly available online magazine).

In May 2013, "Opposing Views" published an article entitled, "Are Massachusetts Police Illegally Seizing and Selling Privately-Owned Guns for Profit? The article states: "According to Lawrence Mirsky, Quincy Police are revoking pistol licenses at the drop of a hat, seizing privately owned firearms, and **illegally selling the guns to fund the department** (emphasis added)." Exhibit 2(f).

In addition, in 2010 and 2013, Lawrence Mirsky filed complaints against certain Quincy Police officers, which made nearly identical allegations as the ones the Plaintiffs now assert.

He claimed:

(1) Mirsky's firearms were transmitted to Village Vault rather than the state police;

(2) Quincy Police Department or the individual Quincy police officers received payments from Village Vault and did not submit them to the state treasurer; and

(3) Village Vault retained the proceeds of the guns rather than remit payment to the state treasurer.

Exhibits 5(a); 2(e).

In at least one of Mirsky's multiple presentment letters,[4] he writes that, "The Quincy police have been…violating the civil rights of firearm owners in order to profit from the illicit sale of their property." Exhibit 2(d). In addition, among the documents Mr. Mirsky sent to the Commonwealth include receipts from Village Vault to the Quincy Police Department that show the Quincy Police had received "credits" from Village Vault in exchange for firearms. Exhibit 2(d).

Furthermore, in his 2010 civil complaint, filed eight years before the Plaintiffs filed the above-captioned complaint, Mirsky addressed the conduct of which the Plaintiffs complain explicitly:

> 44. …**Subsequently Mirsky learned that the Quincy Police have not been handing the firearms that they have seized due to license revocations over to the State Police for auction after the expiration of one year, as required by Massachusetts General Law Chapter l 40 ss l29d,,** [sic] **but are in fact selling them themselves, effectively violating the rights of those whose property was taken and misappropriating state funds** (emphasis added).
> …
> COUNT VIII
> Violation of Massachusetts General law. Chapter 140, section 129D (Against Quincy Police Department/ City of Quincy)
>
> 63.     Mirsky repeats the allegations contained in Paragraphs I through 62 and. by this reference, incorporates them herein.
> 64.     The Quincy Police Department sold or otherwise disposed of nearly $11,000 worth of plaintiff Mirsky's firearms property before the one year period in which they were to hold them, pending transfer to another individual of Mirsky's choice, was up. More than six months have elapsed since the City of Quincy was first presented with the claim and it has in no way shown any intent to cooperate and resolve this claim in accordance with General Law 248. Mirsky is now convinced that the acts of the tortfeasor were intentional and therefore not subject to the requirements of General Law 258 s. 4.

---

[4] The Defendants' became aware of the existence of this case on December 6, 2021, and on December 7, 2021, relayed the information to Plaintiffs' counsel. They currently do not possess all information related to Mr. Mirsky's multiple cases. The Defendants have made public records requests to the Commonwealth for all public information concerning Mr. Mirsky's cases, and that request is still pending. However, the Defendants do possess one of the presentment letters, which is attached hereto as Exhibit 2(d).

> **65.    The one year's requirement for holding said property aside, by not submitting said property to the State Police for auction as prescribed under Massachusetts General Law, Chapter 140, section 129D, whereby the profits were to be directed to the state treasury, the Quincy Police are effectively guilty of defrauding the Commonwealth**

Exhibit (5a) (emphasis added).

Then, in 2013 (five years before the Plaintiffs filed the above-captioned complaint), Mirsky filed another complaint, again explicitly addressing the arrangement that forms the basis for the Plaintiffs' false claims act claim:

> Subsequently Mirsky found from speaking to local gun shops the Quincy police have been profiting by the sale of said weapons, and have not been disposing of them in accordance with MGL chapter 140 § 129d. Proper presentment was submitted as required under G.L.c. 258, § 4 on 2/21/2011, as well as on 12/2/2009, 12/28/2009, 01/13/2010, 2/16/2010, and 5/24/2010.")[5]

Exhibit 2(e).

As will be discussed below, it simply cannot be said that the Plaintiffs were "original sources" where "substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed" *prior* to the Plaintiffs' filing the above-captioned suit. GL. c. 12 § 5A; 5G (c). Since the Plaintiffs base their subpoenas on their reverse false claims act claim, and since the reverse false claims act claims are not viable, the subpoenas are utterly irrelevant and the court should quash them. As will also be discussed below, these subpoenas should also be quashed because they are unreasonable and oppressive. The Plaintiffs further request the Court sanction the Plaintiffs for issuing these subpoenas in order to deter the Plaintiffs from further harassing the Municipalities through frivolous subpoenas, an opposition to which wastes valuable judicial time, resources, and is also costly for the Municipalities.

---

[5] *See* note 4.

8

## ARGUMENT

I. **This Court must quash Plaintiffs' subpoena because Plaintiffs' requests are absolutely irrelevant to the underlying claims.**

Today, despite the elimination of specific references within the amended text of Federal Rule Civil Procedure 45, Rule 26 still governs the scope of discovery. Relation of Rule 45 to the Discovery Rules, 9A Fed. Prac. & Proc. Civ. § 2452 (3d ed.) and cases cited. This means that the court must consider whether the specific discovery sought is "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "Thus, it has been said that the amended rule 'restores the proportionality factors to their original place in defining the scope of discovery.'" *Prime Energy & Chem., LLC v. Tucker Arensberg*, 2020 WL 922918, at *3 (W.D. Pa. Feb. 26, 2020), *reconsideration denied*, No. 2:18-CV-0345, 2021 WL 2401357 (W.D. Pa. June 11, 2021).

    A. *The subpoenas are based on the reverse false claims act claim, and since that claim is not viable, the subpoenas are irrelevant and must be quashed.*

As mentioned, during the parties' Rule 7.1 conference, Plaintiffs' counsel indicated that his subpoenas were based on a viable state false claims act claim. Thus, if that claim is no longer viable, the subpoenas cannot be relevant. Despite reviewing the material and law provided by Defense counsel, the Plaintiffs still believe their claims are viable. They are wrong.

In order to bring a reverse false claim, the Plaintiffs must be the "original source" of the information:

> An "original source" is an individual who: (1) **prior to a public disclosure under paragraph (3) of section 5G,** has voluntarily disclosed to the commonwealth or any political subdivision thereof the information on which allegations or

9

> transactions in a claim are based; **or (2) has knowledge that is independent of and materially adds to the publicly- disclosed allegations or transactions**, and who has voluntarily provided the information to the commonwealth or any political subdivision thereof before filing a false claims action. (emphasis added).

G.L. c. 12 § 5A

Further, G.L. c. 12 § 5G (c) provides the circumstances upon which the so-called public disclosure bar operates:

> The court shall dismiss an action or claim pursuant to sections 5B to 5O, inclusive, unless opposed by the commonwealth or any political subdivision thereof, **if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed**: (1) in a Massachusetts criminal, civil or administrative hearing in which the commonwealth is a party; **(2) in a Massachusetts** legislative, administrative, auditor's or inspector general's report, hearing, audit or **investigation; or (3) from the news media, unless the action is brought by the attorney general, or the relator is an original source of the information** (emphasis added).

The material provided to counsel shows that the very same information upon which the Plaintiffs base their claims were reported in the news media long before they filed their 2018 complaint (indeed, even before they filed their voluntarily dismissed 2017 complaint).

As mentioned, there are three parts to the Plaintiffs' reverse false claims act claim. First, they assert that the Defendants illegally transmitted firearms to Village Vault, rather than the state police. (Complaint at ¶¶ 46-112). They must be the original sources of that information in order to establish a viable claim. However, in 2007, the Lowell Sun reported that firearms seized unrelated to criminal cases were sold to Village Vault, rather than the state police. Exhibit 2(b); see also Exhibit 2(c) at p. 20 (reported in the Evidence Log, a free online publication). The Lowell Sun explicitly stated that Tyngsboro planned to "sell approximately 100 firearms to Village Vault"; that the Department "did not usually destroy firearms that have resale value…"; and that the credit used was used to "offset the cost of new firearms for officers." Exhibit 2(b).

10

The second part of their reverse false claim is that individual departments or individual police officers received payments from Village Vault and did not submit those payments to the state treasurer. The Plaintiffs must also be the original source of that information in order to have a viable reverse false claims act claim. However, as just stated, "substantially the same allegations or transactions as alleged" were "publicly disclosed" as early as 2007. Exhibit 2(b) and 2(c).

Third, the Plaintiffs contend Village Vault retained the proceeds of the guns rather than remit payment to the state treasurer. Again, the Plaintiffs must be the original sources of information, and yet again, they are not. Exhibits 2(b) and (2(c). Lawrence Mirsky's years-long quest to show the same "arrangement" Village Vault had with a police department, which forms the basis for the Plaintiffs' current false claims act claim, vitiates the Plaintiffs' reverse false claims act claims. Mr. Mirsky allegedly[6] made presentment to the Commonwealth seven times for substantially the same allegations (on December 2, 2009, December 28, 2009, December 28, 2009, January 13, 2010, February 16, 2010, May 24, 2010, April 22, 2013). Exhibit 2(d). He filed two civil complaints, both of which were dismissed, where he alleged, *inter alia*:

> 57. As stipulated by Massachusetts General Law Chapter 140 § 129D Mirsky attempted to have the nearly $11,000 worth of property the Quincy Police seized transferred into the possession of a Federally Licensed Firearms dealer within the one year allowed by law. After several attempts throughout November 2009 by the dealer to get a response from the department, a demand letter from was sent from Mirsky's attorney dated November 25, 2009; Mirsky's attorney office was finally informed by captain Anthony DiBona on November 30, 2009 that the Quincy Police had already disposed of his property, allegedly because defendant Barkas, for whatever reason, filled out routine paperwork incorrectly. Mirsky alleges that given the history of the parties, and what Barkas told him, this was no accident. **Subsequently Mirsky found from speaking to local gun shops the Quincy police have been profiting by the sale of said weapons, and have not been disposing of them in accordance with MGL chapter 140 § 129d. Proper presentment was submitted as required under G.L.c. 258, § 4 on**

---

[6] *See* note 4.

11

>**2/21/2011, as well as on 12/2/2009, 12/28/2009, 01/13/2010, 2/16/2010, and 5/24/2010** (emphasis added).

Exhibit 2(e).

In May 2013, "Opposing Views" published an article about the Mirsky case entitled, "Are Massachusetts Police Illegally Seizing and Selling Privately-Owned Guns for Profit? Exhibit 2(f). The article states: "According to Lawrence Mirsky, Quincy Police are revoking pistol licenses at the drop of a hat, seizing privately owned firearms, and **illegally selling the guns to fund the department** (emphasis added)."

In Mr. Mirsky's May 2013 presentment letter (Exhibit 2(d)), he alleges that "The Quincy police have been…violating the civil rights of firearm owners in order to profit from the illicit sale of their property." Furthermore, the materials supplied to the Commonwealth show the receipts Village Vault provided to the Quincy Police Department that specifically state the Quincy Police received "credits" from Village Vault in exchange for firearms.

While the Commonwealth clearly declined to pursue Mirsky's case, they no doubt received the letter and undoubtedly conducted an "investigation" as that word is contemplated by G.L. 5G (c) before so declining; for that reason, too, the allegations the Plaintiffs make relative to the reverse false claims act were already "publicly disclosed" by the time the Plaintiffs filed suit. G.L. 5G (c) (3).

Clearly, the Plaintiffs reverse false claims are no longer viable; because the subpoenas are based *only* on the reverse false claims act claims, the subpoenas must be quashed.

> **B.** *The Plaintiffs' subpoenas seek material relating only to claims that have already been dismissed by this Court.*

The remaining claims against two individual officers from Stoughton do not relate to gun transfers between Village Vault and different municipalities; therefore, none of the information

sought in the subpoenas (see Exhibit 1) is likely to lead to any facts that "flesh out" the remaining claims. *See Micro Motion, Inc. v. Kane Steel Co., Inc.,* 894 F. 2d 1318, 1327 (Fed. Cir. 1990) (purpose of discovery to "flesh out a pattern of facts already known"). Therefore, this Court must quash the subpoena. Furthermore, evidence of transactions between the Municipalities and Village Vault have already been produced (last year, in response to the first subpoenas (again, with the exception of Springfield)). Exhibit 2. How the Municipalities seized a person's firearms (i.e. by suspending someone's license, seizing them pursuant to a restraining order, etc.) simply is not relevant to *any* of the claims at issue in this case and is otherwise duplicative/cumulative of what has already been produced last year. The Plaintiffs now, more than a year later, are looking for entirely irrelevant information regarding how the police departments came into possession of the firearms, apparently in an attempt to somehow discover their way into new claims. This, they cannot do. Fed. R. Civ. P. 26(b)(1).

**II.     This Court must quash Plaintiffs' subpoenas because, even if the subpoenas were relevant to Plaintiffs' claims, Plaintiffs' "schedule," is overly burdensome.**

Pursuant to FRCP 45(d)(iv), the Court "shall" quash a subpoena if the court finds that the subpoena is overly burdensome. Fed. R. Civ. P. 45. Here, this Court must quash the Plaintiffs' subpoenas because they are unduly burdensome. As mentioned, the Plaintiffs seek to obtain information concerning all documentation relating to the transfer of firearms.

Springfield's subpoena is perhaps the most oppressive – 69 pages long and requesting information about *three thousand-three-hundred and eight-one* (3,381) weapons. *See* Exhibit 1, Springfield KOR subpoena. Plymouth is not far behind, seeking information concerning *hundreds* of weapons. *See* Exhibit 1, Plymouth KOR subpoena. Some of the subpoenas request documentation, including communication as far back as 2014. *See* Exhibit 1, Andover, Hudson subpoena. Others simply list the make, model and serial number of the firearm and do not even

13

identify a date of transfer. For example, Chicopee's subpoena is a list of 108 weapons without a single date of transfer. *See* Exhibit 1, Chicopee KOR subpoena; *see also* Exhibit 1, Chicopee, Dedham, Foxborough, Gardner, Hudson, Medford, Plymouth, Reading, Saugus, Wakefield, Wilmington, and Winchester KOR subpoenas. As mentioned, although many of the requests do not identify almost *any* date on which these hundreds of transfers took place, some of the requests go back at least to 2014. The nature of the subpoena requests includes: inventory records, incident reports, emails, letters, policies and procedures regarding selling or transferring guns, record retention with regard to guns, storage of guns, and receipt for payment, confiscation, and/or transfer, for each and every one of these more than *thousands of firearms*. Exhibit 1. A response to these subpoenas would require multiple Municipality employees to pour over tens of thousands of pages of documents (some of which are located at multiple off-site storage locations and require special arrangements for access); the scope of the project is oppressive. *HealthEdge Software, Inc. v. Sharp Health Plan*, No. 19-CV-11020-ADB, 2021 WL 1821358, at *3 (D. Mass. May 6, 2021)("requiring [party] to review hundreds of thousands of documents in this litigation is likely to be unduly burdensome and/or disproportional to the needs of the case. *See generally* Fed. R. Civ. P. 26(b)."). These requests are absolutely *not* proportional to the needs of the case; the burden and expense of the requested discovery, when weighed against the issues at stake in the action, the amount in controversy, the parties' resources, and the expense of the proposed discovery weighs squarely in favor of quashing the subpoenas. Fed. R. Civ. P. 26(b)(1).

**III.     These subpoenas were not served in good faith, and are an attempt to harass the Municipalities who were already dismissed from this case and who have already responded to the Plaintiffs' requests for information.**

The purpose of a subpoena is to "flesh out a pattern of facts already known," not to "find out if it has any basis for a claim." *Micro Motion, Inc.*, 894 F. 2d at 1327 (citation omitted); *MacKnight v. Leonard Morse Hosp.*, 828 F.2d 48, 52 (1st Cir. 1987) (citing 4 Moore's Federal Practice ¶ 26.56[1] at 26–95 n. 3 ("discovery cannot be used as a vehicle for discovering a right of action"); *Bruno & Stillman, Inc. v. Globe Newspaper Co.*, 633 F.2d 583, 597 (1st Cir.1980) ("as a threshold matter, the court should be satisfied that a claim is not frivolous, a pretense for using discovery powers in a fishing expedition")).

The Plaintiffs are using their subpoena power to "flesh out" a pattern of facts that are *not* known, and this an improper use of such power. On November 16, 2021, this Court took Plaintiffs' fourth motion to amend its complaint under advisement and set a status hearing for December 15, 2021. Perhaps anticipating that the Plaintiffs' proposed defendants might prevail on the opposition to Plaintiffs' Fourth Motion to Amend the Complaint, the Plaintiffs' served these subpoena with a return date of less than fourteen days, in an effort to obtain irrelevant discovery from the Municipalities before the Court has ruled on the Motion.

Previously, the Plaintiffs successfully employed discovery to obtain information leading them to add fourteen municipalities as defendants, to amend their complaint to include additional claims, and to fundamentally alter the litigation from one of a so-called deprivation of due process based on an improper transfer of two guns, to an alleged systemic failure of police departments across Massachusetts to dispose of guns pursuant to G.L. c. 140, § 129D. The Plaintiffs' earlier fishing expedition and resulting amendments cost countless hours in attorneys' fees from fourteen municipalities across Massachusetts before the claims were ultimately

15

dismissed by this Court. Now, the Plaintiffs attempt to employ the same method to, perhaps, find a way to justify adding municipal officers in place of the dismissed municipal defendants. This Court must quash Plaintiff's subpoena in order to protect the Municipalities from further frivolous litigation and to enjoin Plaintiffs from fishing for additional claims.

**IV. The Municipalities request attorneys' fees and costs to be assessed against the Plaintiffs to prevent the Plaintiffs from further harassing the Municipalities previously dismissed from case.**

The Federal Rules allow this Court to impose sanctions on a party who serves a subpoena without "tak[ing] reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." F. R. Civ. Pro. 45(d)(1). The Court should sanction the Plaintiffs for issuing these subpoenas, particularly where, as here, Plaintiffs' counsel bases the relevance of his subpoenas on the viability of his reverse false claims act claim, and where defense counsel has clearly and repeatedly identified for him why those claims are no longer viable and indicated if he intends to proceed counsel would seek costs and fees. Furthermore, in reviewing these subpoenas, conferring with multiple individuals from the fourteen Municipalities, and coordinating with multiple counsel, the Municipalities have been required to expend much unnecessary time and energy to oppose an irrelevant, burdensome, oppressive and unduly harassing subpoena. The Court should use its discretion to impose costs and fees.

## CONCLUSION

In conclusion, the Municipalities respectfully request that this Court quash Plaintiffs' subpoenas and grant additional relief as follows:

1. Sanction Plaintiffs and order attorney's fees to Defendants

2.  In the alternative, order Plaintiffs to show good cause for his request for both the type and amount of the information he has requested from the various municipalities.

>Respectfully submitted,
>
>Towns of Andover, Foxborough, Gardner, Hudson, Plymouth, Reading, Winchester, and Wilmington,
>By their attorneys,
>
>/s/ Erica L. Brody
>Thomas R. Donohue, BBO# 643483
>Erica L. Brody, BBO# 681572
>Brody, Hardoon, Perkins & Kesten, LLP
>699 Boylston Street, 12th Floor
>Boston, MA 02116
>(617) 880-7100
>tdonohue@bhpklaw.com
>ebrody@bhpklaw.com
>
>City of Springfield,
>By its attorney,
>
>/s/ Kathryn Foster
>Kathryn Foster, BBO# 676046
>Assistant City Solicitor
>City of Springfield
>1600 East. Columbus Avenue
>Springfield, MA 01103
>(413) 787-2414
>KFoster@springfieldcityhall.com
>
>City of Chicopee,
>By its attorney,
>
>/s/ Mark J. Albano
>Mark J. Albano, BBO# 013860
>Albano Law, LLC
>One Monarch Place
>1414 Main Street, Suite 1330
>Springfield, MA 01144-1330
>(413) 736-3500
>mark@albanolawllc.com

Town of Wakefield and the Town of Dedham,
By their attorneys,

/s/ *Bradford N. Louison*
Bradford N. Louison, BBO# 305755
Douglas I. Louison, BBO# 545191
Louison, Costello, Condon & Pfaff, LLP
101 Summer Street, 4th Floor
Boston, MA 02110
(617) 439-0305
blouison@lccplaw.com
dlouison@lccplaw.com

City of Medford/Medford Police Department,
By its attorney,

/s/ *David S. Monastersky*
David S. Monastersky, BBO# 624961
Howd & Ludorf, LLC
65 Wethersfield Avenue
Hartford, CT 06114-1190
(860) 249-1361
dmonastersky@hl-law.com

Town of Saugus,
By its attorneys,

/s/ *William F. McGonigle*
Raymond P. Austrotas, BBO# 640315
William F. McGonigle, BBO# 569490
Arrowood LLP
10 Post Office Square
7th Floor South
Boston, MA 02109
(617) 849-6200
RAusrotas@arrowoodllp.com
wmcgonigle@arrowoodllp.com

DATED: December 15, 2021

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1(A)(2)

I hereby certify that I have conferred with counsel for the Plaintiffs in a good faith attempt to discuss this matter and we were not able to resolve or narrow the issues raised in this motion.

*/s/ Erica L. Brody*
Erica L. Brody

DATED: December 15, 2021

## CERTIFICATE OF SERVICE

I hereby certify that this document was filed through the ECF system and will therefore be sent electronically to the registered participants as identified on the Notice of Electric Filing (NEF) and paper copies will be sent this day to those participants indicated as non-registered participants.

*/s/ Erica L. Brody*
Erica L. Brody

DATED: December 15, 2021