UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| COMMONWEALTH OF MASSACHUSETTS *ex rel.* MYKEL POWELL, et al., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 18-11336-FDS |
| BRIAN HOLMES, et al., | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM AND ORDER ON COMMONWEALTH'S
MOTION TO DISMISS COUNT 2, DEFENDANTS' MOTION
FOR JUDGMENT ON THE PLEADINGS AS TO COUNT 2, AND
MUNICIPALITIES' MOTION TO QUASH PLAINTIFFS' SUBPOENAS**

**SAYLOR, C.J.**

This case involves the allegedly improper disposal of confiscated firearms by local police departments in Massachusetts. The present dispute concerns Count 2 of the third amended complaint, which alleges violations of the Massachusetts False Claims Act, Mass. Gen. Laws ch. 12, §§ 5A-5O. Specifically, the Commonwealth of Massachusetts has moved to dismiss Count 2 pursuant to the Attorney General's authority to dismiss *qui tam* suits filed in the name of the Commonwealth. Defendants Donna McNamara, Brian Holmes, and James O'Connor, who are members of the Stoughton Police Department, have also moved for judgment on the pleadings as to Count 2, and several municipalities have moved to quash various related subpoenas. For the reasons set forth below, the Commonwealth's motion to dismiss will be granted. The motion for judgment on the pleadings and motion to quash will be denied as moot.

I.   **Background**

    A.   **Factual Background**

The facts are set forth as alleged in the third amended complaint and incorporated from the Court's memorandum and order on defendants' motions to dismiss and motion for judgment on the pleadings, dated June 30, 2021. *See Massachusetts ex rel. Powell v. Holmes*, 546 F. Supp. 3d 58 (D. Mass. 2021).

        1.   **The Parties**

Mykel Powell is a citizen of Rhode Island. (Compl. ¶ 8).

Commonwealth Second Amendment, Inc. ("Comm2A") is a Massachusetts corporation. (*Id.* ¶ 9). The president of Comm2A is Brent Carlton, who is a resident of Oregon. (*Id.* ¶ 10).

Brian Holmes, James O'Connor, and Donna McNamara (collectively, the "Stoughton Defendants") are members of the Stoughton Police Department. (*Id.* ¶¶ 11-13).

Village Gun Shop, Inc., d/b/a Village Vault, is a Massachusetts corporation. (*Id.* ¶ 14). It is owned, at least in part, by Peter Dowd, who is a resident of Massachusetts. (*Id.* ¶ 15).

The Cities of Springfield, Chicopee, Medford, and Gardner, and the Towns of Plymouth, Winchester, Dedham, Reading, Wakefield, Wilmington, Andover, Foxborough, Hudson, and Saugus (collectively, the "Municipality Defendants") are municipalities organized under Massachusetts law. (*Id.* ¶¶ 16-29).

        2.   **Seizure and Sale of Powell's Firearms and Ammunition**

On November 26, 2015, Powell was arrested by the Stoughton Police Department. (*Id.* ¶ 36). He was charged with breaking and entering, assault and battery, and intimidation of a witness. (*Id.*). As a result of that arrest, the Stoughton Police Department suspended his License to Carry ("LTC") a firearm. (*Id.* ¶ 37). After advising Powell of the suspension, Holmes took custody of Powell's LTC as well as his handgun, rifle, rifle ammunition, and rifle carrying bag.

(*Id.*).

The criminal charges against Powell resulted in a continuance without a finding and a period of probation. (*Id.* ¶ 38). The charges were ultimately dismissed on August 3, 2016. (*Id.*).

Over the ensuing two months, Powell, who had since moved to Rhode Island, repeatedly attempted to contact Holmes about his property. (*Id.* ¶¶ 39-40). He eventually made contact on September 29, 2016. (*Id.* ¶ 40). According to the complaint, Holmes informed Powell that he would not reinstate his LTC until he made "lifestyle changes." (*Id.*). He would, however, transfer the property to a licensed firearms dealer in Rhode Island if Powell obtained the appropriate firearms license for that state. (*Id.*).

The complaint alleges that less than one week later, O'Connor instead transferred Powell's property to Village Vault. (*Id.* ¶ 44). Village Vault then sold the handgun but retained custody of the rifle. (*Id.*).[1]

On October 24, 2016, about a month after speaking with Holmes, Powell obtained a Rhode Island Pistol/Revolver Safety Certificate, which authorized him to purchase pistols and revolvers. (*Id.* ¶ 41). According to the complaint, no license is necessary to purchase or possess rifles or shotguns in Rhode Island. (*Id.*). He then again contacted Holmes, who in turn told him to contact O'Connor. (*Id.* ¶ 42). O'Connor told Powell that his property had been sent out for "disposal" and could not be returned to him. (*Id.* ¶ 43).

Powell sued Holmes and O'Connor on May 3, 2017. (*Id.* ¶ 2). The complaint in that action asserted two counts under 42 U.S.C. § 1983, one for the loss of use of his property and one for the loss of value of his property. Holmes and O'Connor filed a motion to dismiss, which

---

[1] It is unclear from the complaint whether the ammunition and carrying bag were sold or retained by Village Vault.

3

the Court denied. *See Powell v. Holmes*, 2018 WL 662482 (D. Mass. Feb. 1, 2018). During discovery, Powell "learned of the factual bases" underlying the present action. (Compl. ¶ 2). He then moved to dismiss the action against Holmes and O'Connor voluntarily under Fed. R. Civ. P. 41(a)(2). The Court granted that motion, and the case was dismissed without prejudice on June 29, 2018.

Shortly thereafter, on July 5, 2018, O'Connor advised Powell that the Stoughton Police Department had "re-acquired" the rifle and that Powell could "sell or transfer the firearm to a person or entity with a valid firearm license (FID, LTC and/or FFL)." (*Id.* ¶ 45). A designee of Powell has since taken possession of the rifle. (*Id.* ¶ 57).

### 3. Arrangements Between Village Vault and Massachusetts Municipalities

The complaint alleges that Village Vault and Dowd maintain "arrangements" with several cities and towns in Massachusetts through which police departments transfer to Village Vault certain firearms that have been surrendered under Massachusetts law. (*Id.* ¶ 46). In exchange, Village Vault either pays the police departments by check or "credits" them an amount that can be used to make purchases from Village Vault. (*Id.* ¶¶ 46, 48). Village Vault then sells the firearms for its own profit. (*Id.* ¶ 47).

The complaint identifies 15 municipalities—Stoughton and the fourteen named Municipality Defendants—that operate pursuant to such alleged agreements. (*Id.* ¶ 46).[2] It details specific transactions between those municipalities and Village Vault, including the date of each transaction, the number of firearms transferred, and the payment or credit provided to the relevant police department. (*Id.* ¶¶ 50-112). It further alleges (on information and belief) that

---

[2] At least one of the agreements (that between Springfield and Village Vault) is alleged to be set out in a written contract. (Compl. ¶¶ 59, 61).

4

Village Vault and Dowd maintain similar arrangements "with police departments and/or police department personnel throughout the Commonwealth of Massachusetts." (*Id.* ¶ 49).

B.      **Procedural Background**

On June 27, 2018, two days before Powell's original action was dismissed, Powell and Comm2A filed this action on behalf of the Commonwealth of Massachusetts. Powell also brought a claim under 42 U.S.C. § 1983 on his own behalf. The Commonwealth declined to intervene.

The complaint has since been amended three times. The third amended complaint asserted four claims. Powell, Comm2A, and Carlton asserted two claims on behalf of the Commonwealth of Massachusetts: one against O'Connor, McNamara, Village Vault, and the Municipality Defendants for violating the Massachusetts False Claims Act ("MFCA"), Mass. Gen. Laws ch. 12, §§ 5A-5O, by failing to transfer surrendered firearms to the Massachusetts State Police for auction (Count 2) and one against O'Connor, McNamara, and Village Vault for civil conspiracy (Count 3). Powell individually asserted two claims on his own behalf: one against the Stoughton Defendants for violating 42 U.S.C. § 1983 for deprivation of property without due process (Count 1) and one against Dowd for violating the civil provisions of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964(c), for engaging in racketeering activity as the owner of Village Vault (Count 4).

The Stoughton Defendants then moved to dismiss Counts 1 and 3 for failure to state a claim under Fed. R. Civ. P. 12(b)(6). O'Connor, McNamara, and twelve of the fourteen Municipality Defendants also moved to dismiss Count 2 for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and for failure to state a claim under Fed. R. Civ. P. 12(b)(6).[3]

---

[3] O'Connor, McNamara, and twelve Municipality Defendants moved to dismiss Count 2 in three filings: a motion by the City of Springfield; a motion by O'Connor, McNamara, and ten Municipality Defendants; and a

The City of Chicopee, which had answered the complaint, moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).

The Court issued a ruling on those motions, granting and denying them in part. As a result of that order, all claims against the Municipality Defendants excluding the Town of Dedham (which had not filed a motion) were dismissed. What remains are the following claims: (1) the claims by Powell under § 1983 against Holmes and O'Connor in their individual capacities (Count 1); (2) the claims by Powell and Carlton under the Massachusetts False Claims Act against O'Connor and McNamara in their individual capacities and against Village Vault and the Town of Dedham (Count 2); the claims by Powell and Carlton for civil conspiracy against Village Vault, which did not move to dismiss (Count 3); and the claim by Powell for civil RICO against Dowd (Count 4).

Plaintiffs then moved for leave to file a fourth amended complaint, in effect seeking to salvage claims against the dismissed Municipality Defendants by adding claims against various individual police officers who work for the Municipality Defendants. The Court denied that motion, essentially on timeliness grounds, as plaintiffs had failed to establish good cause to modify the scheduling order pursuant to Fed. R. Civ. P. 16.

In the interim, plaintiffs served various subpoenas upon the Municipality Defendants relating to Count 2, which led to a motion to quash. The Commonwealth of Massachusetts then moved to dismiss Count 2 pursuant to the Attorney General's authority to dismiss *qui tam* suits filed in the name of the Commonwealth.[4] The Stoughton Defendants moved for judgment on the

---

notice by the Town of Hudson that adopted the arguments made by O'Connor, McNamara, and the ten Municipality Defendants. The City of Springfield subsequently filed a notice that also adopted their arguments. The Town of Dedham did not file or join any motion to dismiss.

[4] Other courts have considered whether the government must first move to intervene and show "good cause" for doing so before filing its motion to dismiss. *See, e.g.*, *U.S. ex rel. CIMZNHCA, LLC v. UCB, Inc.*, 970 F.3d 835, 842-49 (7th Cir. 2020); *U.S. ex rel. Borzilleri v. Bayer Healthcare Pharms., Inc.*, 24 F.4th 32, 38 n.7 (1st

pleadings as to Count 2.  Plaintiffs have opposed the three motions.  A hearing was held on March 2, 2022, at which time plaintiffs received an opportunity to be heard pursuant to Mass. Gen. Laws ch. 12, § 5D(2).

## II.  Analysis

### A.  Standard of Review

The MFCA provides that "[t]he attorney general may dismiss the action notwithstanding the objections of the relator if the relator has been notified by the attorney general of the filing of the motion and the court has provided the relator with an opportunity for a hearing on the motion."  Mass. Gen. Laws ch. 12, § 5D(2).

The text of the MFCA does not specify the appropriate standard of review for a motion to dismiss under § 5D(2), and the Massachusetts Supreme Judicial Court has not yet decided the issue.  The Court will therefore look to other authorities for guidance.

#### 1.  Federal Precedent

Courts often look to cases interpreting the federal False Claims Act ("FCA") for guidance concerning the MFCA.  *See Scannell v. Attorney Gen.*, 70 Mass. App. Ct. 46, 49 n.4 (2007) (noting that "[t]here is little decisional law interpreting the MFCA, and its legislative history is scant.  However, the MFCA was modeled on the similarly worded Federal False Claims Act, 31 U.S.C. §§ 3729 *et seq.*").[5]

---

Cir. 2022).  As the D.C. Circuit has observed, that issue is "largely academic" because if the Commonwealth was required to intervene, the Court "could construe the government's motion to dismiss as including a motion to intervene," which would be granted by the order of dismissal.  *Swift v. U.S.*, 318 F.3d 250, 252 (D.C. Cir. 2003); *see also Polansky v. Exec. Health Res. Inc.*, 17 F.4th 376, 392 (3d Cir. 2021) (construing "the Government's motion to dismiss as including a motion to intervene").  This Court will follow suit.

[5] Cases interpreting the FCA are particularly useful where, as here, the relevant provisions of the FCA and MFCA are nearly identical.  *Compare* 31 U.S.C. § 3730(c)(2)(A) ("The Government may dismiss the action notwithstanding the objections of the person initiating the action if the person has been notified by the Government of the filing of the motion and the court has provided the person with an opportunity for a hearing on the motion.") *with* Mass. Gen. Laws ch. 12, § 5D(2) ("The attorney general may dismiss the action notwithstanding the objections

Federal jurisprudence on the FCA's standard of review has generally taken four different paths. One approach was outlined in *Swift v. U.S.*, 318 F.3d 250, 252-53 (D.C. Cir. 2003). There, the D.C. Circuit took a highly deferential approach, finding that the FCA "give[s] the government an unfettered right to dismiss an action" and that the hearing requirement merely provides "the relator a formal opportunity to convince the government not to end the case." *Id.* at 252-54.[6] The *Swift* rationale is based on "the presumption that decisions not to prosecute . . . are unreviewable." *Id.* at 252.

A second approach was set forth in *U.S. ex rel., Sequoia Orange Co. v. Baird-Neece Packing Corp.*, 151 F.3d 1139, 1145 (9th Cir. 1998). *See also Ridenour v. Kaiser-Hill Co., LLC*, 397 F.3d 925, 940 (10th Cir. 2005) (adopting *Sequoia* standard). In *Sequoia*, the Ninth Circuit created a burden-shifting framework that has engendered much debate.[7] Under that framework, the government must first identify a "valid government purpose" and demonstrate "a rational relation between dismissal and accomplishment of the purpose." *Sequoia*, 151 F.3d at 1145 (internal quotation marks omitted). If the government does so, the burden shifts to the relator "to demonstrate that dismissal is fraudulent, arbitrary and capricious, or illegal." *Id.*

A third approach looks to Fed. R. Civ. P. 41 for guidance, which governs the voluntary dismissal of civil actions. Rule 41(a)(1)(A)(i) provides that a plaintiff may dismiss an action

---

of the relator if the relator has been notified by the attorney general of the filing of the motion and the court has provided the relator with an opportunity for a hearing on the motion.").

[6] *Swift* suggested that there might be an exception to this unfettered government right where, for example, fraud on the court is alleged. 318 F.3d at 253.

[7] For example, the D.C. Circuit criticized *Sequoia* on two grounds: (1) *Sequoia* provided an inaccurate "statement of constitutional law with respect to the government's judgment not to prosecute," and (2) *Sequoia* was premised on a misreading of the FCA's legislative history. *Swift*, 318 F.3d at 253. Other courts have also found the *Sequoia* court's analysis of legislative history problematic. *See, e.g.*, *Borzilleri*, 24 F.4th at 40 n.8 ("We agree with the D.C. Circuit that this portion of the Senate report, which relates to an unenacted Senate version of the 1986 amendment, does not support reading so much into the statutory text.") (internal quotation marks and citations omitted).

without court order by filing "a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment." Otherwise, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). The Seventh Circuit adopted a similar framework for *qui tam* actions, reasoning that if the government seeks dismissal before the defendant files a responsive pleading, all that is required is notice to the relator and an opportunity to be heard. *See U.S. ex rel. CIMZNHCA, LLC v. UCB, Inc.*, 970 F.3d 835, 850-51 (7th Cir. 2020); *see also Polansky v. Exec. Health Res. Inc.*, 17 F.4th 376, 387-90 (3d Cir. 2021) (adopting Rule 41 standard). If, on the other hand, that period of time has passed, a hearing will guide the court in ascertaining what terms of dismissal are "proper." *CIMZNHCA*, 970 F.3d at 851-52.[8]

The fourth and final approach is set forth in the First Circuit's recent decision in *U.S. ex rel. Borzilleri v. Bayer Healthcare Pharms., Inc.*, 24 F.4th 32, 42 (1st Cir. 2022). There, the court debated the approaches of *Swift*, *Sequoia*, and *CIMZNHCA*, but ultimately chose a different standard of review:

> [A]lthough the government does not bear the burden of justifying its motion to the court, the government must provide its reasons for seeking dismissal so that the relator can attempt to convince the government to withdraw its motion at the hearing. . . . [I]f the government does not agree to withdraw its motion, the district court should grant it unless the relator can show that, in seeking dismissal, the government is transgressing constitutional limitations or perpetrating a fraud on the court.

*Id.* at 35. Requiring the government to provide reasons for dismissal is rooted in the text of the FCA, which, like the MFCA, provides relators with an opportunity for a hearing. *See* 31 U.S.C. § 3730(c)(2)(A); Mass. Gen. Laws ch. 12, § 5D(2). The First Circuit noted that a hearing

---

[8] Neither party has advocated for the *CIMZNHCA* approach, which has also been criticized. The First Circuit noted that Rule 41 was "inapt" in the FCA context because the "overriding concern behind the 'proper terms' standard is the potential prejudice to the *defendant* from a voluntary dismissal by the plaintiff." *Borzilleri*, 24 F.4th at 41. In contrast, the *qui tam* relator effectively faces "an objecting co-plaintiff." *Id.*

provides the relator with an opportunity to convince the government not to move for dismissal, and "[t]hat purpose cannot be achieved if the relator is unaware of the government's reasons for dismissal and, thus, is unable to challenge them." *Borzilleri*, 24 F.4th at 42.  In cases where the relator fails to persuade the government to withdraw its motion, district courts should apply "background constraints on executive action." *Id.*  "[T]he burden is always on the relator to demonstrate that the government is transgressing constitutional limits or perpetrating a fraud on the court." *Id.* at 44.

### 2. Massachusetts Precedent

As noted, the Supreme Judicial Court has not yet decided what level of scrutiny courts should impose in evaluating a motion to dismiss brought by the Commonwealth pursuant to Mass. Gen. Laws ch. 12, § 5D.  However, at least two other Massachusetts courts have addressed the issue.

In *Chawla v. Gonzalez*, the Massachusetts Appeals Court reviewed a decision granting the Commonwealth's motion to dismiss a claim under the MFCA.  90 Mass. App. Ct. 1102 (2016).  Plaintiffs contend that *Chawla* endorses the *Sequoia* standard, noting that the court stated that the "*Sequoia* standard is [ ] arguably consistent with our cases holding that 'in the absence of allegations that the Attorney General acted arbitrarily and capriciously, discretionary executive decisions made by the Attorney General are beyond judicial review.'" *Id.* at 2. However, *Chawla* did not hold that *Sequoia* is the proper standard of review; instead, it merely determined that dismissal was warranted on the particular facts even under the more onerous standard.  *See id.* ("[W]e need not decide whether the *Sequoia* or the *Swift* standard is more appropriate.  While the relator's action would have little chance of survival under the *Swift* standard, it ultimately fares no better under *Sequoia*.") (internal citations omitted).  The Appeals Court therefore avoided deciding the question presented here. *See, e.g.*, *U.S. ex rel. Borzilleri v.*

10

*AbbVie, Inc.*, 837 F. App'x 813, 816 (2d Cir. 2020) (summary order) (declining to decide standard of review because relator failed "even the more stringent *Sequoia* standard"); *U.S. ex rel. Health Choice All. v. Eli Lilly & Co., Inc.*, 4 F.4th 255, 267 (5th Cir. 2021) (same).

That raises the question of what weight the Court should give to *Chawla*. "While [a Massachusetts Appeals Court decision] is not indisputably authoritative—the highest court of a state is, after all, the final arbiter of state-law questions—the decision of an intermediate appellate court of the state generally constitutes a reliable piece of evidence." *Noviello v. City of Bos.*, 398 F.3d 76, 91 (1st Cir. 2005) (internal citations omitted). However, state-court opinions that are not binding on the Supreme Judicial Court likewise do not bind the federal courts. *See generally King v. Order of United Com. Travelers of Am.*, 333 U.S. 153, 162 (1948); *O'Connor v. Oakhurst Dairy*, 851 F.3d 69, 72 (1st Cir. 2017). And *Chawla* is an unpublished Rule 1:28 opinion, and therefore not binding even in the state courts.[9] "Although the Appeals Court's unpublished summary decisions issued pursuant to its rule 1:28 have persuasive value, they are not binding precedent." *Gomez v. U.S.*, 2021 WL 38278, at *9 (D. Mass. Jan. 5, 2021).

More recently, a justice of the Superior Court adopted *Borzilleri* in an unpublished decision granting the Commonwealth's motion to dismiss a *qui tam* action concerning teacher salaries at the Department of Youth Services. *See Commonwealth of Mass. ex rel. Nordberg v. Forbes*, No. 2185CV00846-A, slip op. at 3 (Mass. Sup. Ct. Feb. 17, 2022). Of course, a Superior Court decision can only be persuasive, not precedential. Nevertheless, it tends to undermine the value of *Chawla* as precedent.

---

[9] In Massachusetts, Rule 1:28 decisions are "primarily addressed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, Rule 1:28 decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case." *Chase v. Curran*, 71 Mass. App. Ct. 258, 260 n.4 (2008). Massachusetts courts do not consider such opinions to be binding precedent, although they may be cited for "persuasive value." *Id.*

3. **Application**

In light of the foregoing, the Court concludes that the Supreme Judicial Court would likely adopt the First Circuit's standard in *Borzilleri*.[10] That standard is consistent with the principle that the "MFCA [ ] subordinates the interests of a would-be relator to those of the Commonwealth, the real party in interest . . . ." *Scannell*, 70 Mass. App. Ct. at 50. Again, under that standard, "the government must provide its reasons for seeking dismissal so that the relator can attempt to convince the government to withdraw its motion." *Borzilleri*, 24 F.4th at 35. And "if the government does not agree to withdraw its motion, the district court should grant it unless the relator can show that, in seeking dismissal, the government is transgressing constitutional limitations or perpetrating a fraud on the court." *Id.*

Here, the Commonwealth has provided substantial reasons for dismissal. It represents that following its declination, this case has demanded significant resources from the Commonwealth. Plaintiffs later added numerous municipalities as defendants, which resulted in extensive discovery requests. Even after the Municipality Defendants were dismissed, plaintiffs served another round of subpoenas in November 2021. The Commonwealth indicates that following those subpoenas, it reviewed the case again and concluded that dismissal of Count 2 was necessary. It seeks to prevent the "ongoing burden on governmental resources from continuing in its name." (Gov't Mem. at 15). It further asserts that in any event Count 2 fails to

---

[10] Plaintiffs contend that the *Borzilleri* framework is ill-suited under Massachusetts law because the First Circuit rested its decision on "basic principles of federal law to fill in perceived gaps in federal law." (Pls. Opp'n at 6). To the contrary, however, the First Circuit interpreted the significance of the relator's "opportunity for a hearing on the motion" under 31 U.S.C. § 3730(c)(2)(A). That statutory language is nearly identical to the MFCA. *See* Mass. Gen. Laws ch. 12, § 5D(2) ("The attorney general may dismiss the action notwithstanding the objections of the relator if the relator has been notified by the attorney general of the filing of the motion and the court has provided the relator with an opportunity for a hearing on the motion."). The First Circuit held that the government must provide a reason for its decision, as that is implicit in giving the relator an "opportunity" for a hearing on the motion. *Borzilleri*, 24 F.4th at 42. The court then turned to "well-established background constraints on executive action" for the second part of its standard. *Id.* However, many of those same principles are present under Massachusetts law.

state a claim under Fed. R. Civ. P. 12(b)(6).[11]

On March 2, 2022, plaintiffs had an opportunity to convince the Commonwealth to withdraw its motion. They asserted that Count 2 states a valid claim and that the Court should not credit the Commonwealth's appeal to the preservation of government resources.[12] However, it is not enough that the Commonwealth "failed to pursue [the relator's MFCA] claims to the extent or in the manner he would have liked." *Borzilleri*, 24 F.4th at 45. Mere "disagreements with the government's judgment about the contours of the investigation and its potential for success" are also not enough. *Id.* at 46. And the Commonwealth is "not obligated to establish that it had expended a certain amount of investigatory effort before moving to dismiss the *qui tam* suit." *Id.* at 45 n.12. Most critically, plaintiffs do not contend that the Commonwealth was perpetrating a fraud on the Court or violating the Constitution. Thus, under the circumstances, the Commonwealth's motion to dismiss the MFCA claim will be granted.[13]

## III.   Conclusion

For the foregoing reasons, the Commonwealth's motion to dismiss Count 2 [Docket No.

---

[11] In its current form, Count 2 alleges that defendants O'Connor and McNamara (in their individual capacities) and Village Vault and the Town of Dedham violated Mass. Gen. Laws ch. 12, § 5B(9) by failing to remit monies to the State Treasurer in connection with the disposal of certain guns confiscated by Massachusetts police departments.

[12] Plaintiffs also made several arguments that do not depend on the standard applied. They contended that the government's dismissal at this late stage can be explained only by political winds changing. That is not, however, a valid basis for this Court to second-guess the decision of the Commonwealth. They also alleged that a lenient standard effectively reads out the term "the objections of the relator" in Mass. Gen. Laws ch. 12, § 5D(2). However, the text of the MFCA makes clear that the objections of the relator may be overcome in some circumstances. *See id.* ("The attorney general may dismiss the action notwithstanding the objections of the relator if the relator has been notified by the attorney general of the filing of the motion and the court has provided the relator with an opportunity for a hearing on the motion.").

[13] Even if the more stringent standard of *Sequoia* applies, the Commonwealth's interest in avoiding the waste of government resources would appear to meet the rational-relationship test. *See Sequoia*, 151 F.3d at 1146 ("[T]he government can legitimately consider the burden imposed on the taxpayers by its litigation, and that, even if the relators were to litigate the FCA claims, the government would continue to incur enormous internal staff costs."). And plaintiffs have not demonstrated that dismissal would be "fraudulent, arbitrary and capricious, or illegal." *Id.* at 1145.

139] is GRANTED.  The motion of the Stoughton Defendants for judgment on the pleadings as to Count 2 [Docket No. 142] and the motion of the Municipality Defendants to quash [Docket No. 136] are DENIED as moot.

**So Ordered.**

Dated: June 7, 2022

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Chief Judge, United States District Court